# Exhibit 5

Marc Toberoff (MT 4862)
*mtoberoff@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Pacific Coast Hwy, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Patrick S. Ditko, Administrator of the Estate of Stephen J. Ditko*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARVEL CHARACTERS, INC.,<br><br>Plaintiff,<br>v.<br><br>PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>Defendant. | Case No.: 1:21-cv-07957-LAK<br><br>Hon. Lewis A. Kaplan |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>Counterclaimant,<br>v.<br><br>MARVEL CHARACTERS, INC. and DOES 1-10, inclusive,<br><br>Counterclaim-Defendants. | **DEFENDANT DITKO'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINITFF MARVEL CHARACTERS, INC.** |

Pursuant to Rules 34 and 26(b) of the Federal Rules of Civil Procedure, Defendant and Counterclaim-Plaintiff Patrick Ditko hereby propounds the following First Set of Requests for Production of Documents ("Requests") on Plaintiff and Counterclaim-Defendant Marvel Characters, Inc. Plaintiff and Counterclaim-Defendant Marvel Characters, Inc. shall respond under oath and in writing to these Requests, and produce for inspection and copying all documents and tangible things responsive to these Requests within 30 days of the date of service of these Requests at the office of Toberoff & Associates, P.C. at 23823 Malibu Road, Suite 50-363, Malibu, CA 90265.

**<u>INSTRUCTIONS AND DEFINITIONS</u>**

1. "DITKO" as used herein, refers to Stephen J. Ditko also known as Steve Ditko.

2. "MARVEL" as used herein, refers to Plaintiff and Counterclaim-Defendant Marvel Characters, Inc., and <u>any past or present predecessors-in-interest or successors-in-interest</u>, and any other person or persons acting on their behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, both singularly and cumulatively.

3. "DITKO MATERIAL" as used herein, refers to DITKO's written contributions to the following comic book stories as follows:

a. The two-part comic book story created or co-created by DITKO entitled "Spider-Man!," and published and embodied in *Amazing Fantasy* Vol. 1, No. 15, including the issue's cover page, all characters, story elements, and/or indicia appearing therein;

b. The five-page, penciled story (with page/panel scripts) created by DITKO and the comic book story based thereon entitled "Doctor Strange Master of Black Magic!," that was created or co-created by DITKO and was published and embodied in *Strange Tales* Vol. 1, No.

110, including all of the characters, story elements, and/or indicia appearing therein;

c. The comic book stories, featuring the character Spider-Man (a.k.a. Peter Parker), created or co-created by DITKO along with all of the characters, story elements, and/or indicia appearing therein, which stories were published and embodied in: *Amazing Spider-Man* Vol. 1, Nos. 1-38; *The Fantastic Four Annual* Vol. 1, No. 1; *Strange Tales Annual* Vol. 1, No. 2; and *Amazing Spider-Man Annual* Vol. 1, Nos. 1-2; and

d. The comic book stories, featuring the character Dr. Strange (a.k.a. Dr. Stephen Strange), created or co-created by DITKO along with all of the characters, story elements, and/or indicia appearing therein, which stories were published and embodied in *Strange Tales* Vol. 1, Nos. 102-109, 111-147.

4. "WORKS" as used herein, refers to the following, either individually or collectively:

a. The two-part comic book story entitled "Spider-Man!," that was published and embodied in *Amazing Fantasy* Vol. 1, No. 15, including the issue's cover page, all characters, story elements, and/or indicia appearing therein;

b. The five-page, penciled story (with page/panel scripts) created by DITKO and the comic book story based thereon entitled "Doctor Strange Master of Black Magic!," that was published and embodied in *Strange Tales* Vol. 1, No. 110, including all of the characters, story elements, and/or indicia appearing therein;

c. The comic book stories, featuring the character Spider-Man (a.k.a. Peter Parker) along with all of the characters, story elements, and/or indicia appearing therein, that were published and embodied in: *Amazing Spider-Man* Vol. 1, Nos. 1-38; *The Fantastic Four Annual* Vol. 1, No. 1; *Strange Tales Annual* Vol. 1, No. 2; and *Amazing Spider-Man Annual* Vol. 1, Nos.

1-2; and

d. The comic book stories, featuring the character Dr. Strange (a.k.a. Dr. Stephen Strange) along with all of the characters, story elements, and/or indicia appearing therein, that were published and embodied in *Strange Tales* Vol. 1, Nos. 102-109, 111-147.

5. “STAN LEE” as used herein, refers to Stan Lee and any and all present or former agents, employees, representatives, attorneys, accountants, investigators, or any other person, acting or purporting to act on Stan Lee’s behalf.

6. "COPYRIGHT CLAIMANTS” as used herein, refers to Vista Publications, Inc., Non-Pareil Publishing Corp., Atlas Magazines, Inc., and Canam Publishers Sales Corp., both individually and collectively.

7. “COMPLAINT” as used herein, refers to Complaint for Declaratory Relief filed in *Marvel Characters, Inc. v. Ditko,* No. 1:21-cv-07957-LAK (S.D.N.Y.), Dkt. No. 1.

8. The definitions and rules of construction set forth in Local Civil Rules 26.3(c) and (d) of the United States District Court for the Southern District of New York are incorporated by reference into these Requests as follows:

a. The term “COMMUNICATION” means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

b. The term “DOCUMENT” is defined to be synonymous in meaning and equal in scope to the usage of the term “documents or electronically stored information” in Fed. R. Civ P. 34(a)(1)(A). A draft or non-identical copy is a separate DOCUMENT within the meaning of this term.

c. The terms “PLAINTIFF” and “DEFENDANT” as well as a party’s full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its

officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

d. The term "PERSON" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

e. The term "CONCERNING" means relating to, referring to, describing, evidencing or constituting.

9. "AGREEMENT" and "AGREEMENTS" as used herein refer to any contract, whether written or oral, express or implied.

10. "YOU" and "YOUR" mean, collectively and severally, MARVEL and any and all predecessor or successor entities, any and all divisions thereof, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys, accountants, investigators, or any other PERSON, or affiliate acting or purporting to act on any of MARVEL's behalf.

11. "INCLUDING" means "including, but not limited to."

12. The singular form includes the plural form, and vice versa.

13. YOU are instructed to produce all DOCUMENTS that are responsive to these Requests and that are in YOUR possession, custody, or control. A DOCUMENT is in YOUR "possession, custody, or control" if it is in YOUR physical possession, or if, as a practical and legal matter, YOU have the ability, upon request, to obtain possession of the DOCUMENT or a copy thereof from another PERSON that has physical possession of the DOCUMENT.

14. Each Request shall be construed independently and no Request shall be viewed as limiting the scope of any other Request.

15. No part of a Request shall be left unanswered merely because an objection is made

to another part of the Request.

16. If an objection(s) is/are made to any of these Requests in the response thereto, the response shall clearly state whether DOCUMENTS are being withheld from inspection and production on the basis of such objection(s), or whether inspection and production of the responsive DOCUMENTS will occur notwithstanding such objection(s).

17. If any DOCUMENT or category of DOCUMENTS is not produced in full, please state that a diligent search and reasonable inquiry has been made in an effort to locate the items, state with particularity the reason or reasons it is not being produced in full, and describe, to the best of YOUR knowledge, information and belief, and with as much particularity as possible, the DOCUMENT or portions of the DOCUMENT that are not being produced.

18. Please produce all DOCUMENTS in searchable PDF or other searchable electronic format.

19. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

20. The collection and production of DOCUMENTS shall be performed in a manner that ensures that the source of each DOCUMENT may be determined, if necessary.

21. DOCUMENTS attached to each other shall not be separated and the "parent-child" relationship of DOCUMENTS must be kept intact.

22. Each DOCUMENT is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such DOCUMENTS may be organized or separated.

23. Please organize electronic DOCUMENTS or other materials produced for inspection in the same manner that YOU store them (e.g., if a DOCUMENT is maintained by a

custodian, such as an e-mail residing on an e-mail server, please organize it for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize it for production by custodian with path information preserved, etc.).

24. These Requests require production of paper DOCUMENTS in the same form and same order as they are kept in the usual course of business, or organized and labeled to correspond with the Requests set forth below. If you choose the former method, the DOCUMENTS are to be produced in the boxes, file folders, bindings or other containers in which the DOCUMENTS are found. The titles, labels or other descriptions on the boxes, file folders, bindings or other containers are to be left intact. All responsive DOCUMENTS maintained in paper, hard-copy form shall be produced electronically in TIFF format.

25. If YOU withhold any DOCUMENT, or portion of a DOCUMENT, on grounds that it is protected from discovery by the attorney-client privilege, work- product doctrine, or other privilege or immunity from discovery, please set forth, for each DOCUMENT or portion of a DOCUMENT withheld:

a. The place, approximate date, and manner of recording, creating or otherwise preparing the DOCUMENT;

b. The names and organization position, if any, of each author, sender, and recipient of the DOCUMENT;

c. A general description of the subject matter of the DOCUMENT;

d. The basis of any claim of privilege;

e. The general nature of the DOCUMENTS (letter, memo, email, etc.); and

f. If work-product is asserted, the proceeding for which the DOCUMENT was created.

26. For any DOCUMENT or category of DOCUMENTS that was, but no longer is, in YOUR possession, custody or control, please describe each such document as completely as possible and provide the following information:

a. The reason the DOCUMENT is no longer in YOUR possession, custody or control;

b. The PERSON, if any, who has possession, custody or control or, if unknown, so state; and

c. If the DOCUMENT was destroyed or otherwise disposed of, state (i) the manner of disposal (i.e., destruction, loss, discarding or other means of disposal); (ii) the date of disposal; (iii) the reason for disposal; (iv) the PERSON authorizing disposal; (v) the PERSON disposing of the DOCUMENT; and (vi) the name and address of the most recent custodian of the DOCUMENT.

d. These Requests impose a continuing obligation subsequent to YOUR initial production within thirty days of the service date of these Requests, or other date mutually agreed upon by the parties, to timely supplement YOUR response or production if YOU determine or learn that YOUR response or production is incomplete or incorrect. Defendant specifically reserves the right to seek supplementary responses and production of DOCUMENTS before trial.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1.**

All DOCUMENTS that state, memorialize or reflect any AGREEMENT between DITKO and MARVEL.

**REQUEST FOR PRODUCTION NO. 2.**

All DOCUMENTS that memorialize or reflect any negotiations and/or drafts of any AGREEMENT between DITKO and MARVEL.

**REQUEST FOR PRODUCTION NO. 3.**

All of the original and renewal copyright registrations with the United States Copyright

Office for the WORKS.

**REQUEST FOR PRODUCTION NO. 4.**

All drafts of any AGREEMENT between DITKO and MARVEL.

**REQUEST FOR PRODUCTION NO. 5.**

All DOCUMENTS CONCERNING any payment(s) to DITKO for the DITKO MATERIAL.

**REQUEST FOR PRODUCTION NO. 6.**

All DOCUMENTS that evidence or reflect MARVEL's alleged right to exercise control over DITKO's creation of the DITKO MATERIAL.

**REQUEST FOR PRODUCTION NO. 7.**

DOCUMENTS evidencing that STAN LEE was employed by each of the COPYRIGHT CLAIMANTS, including but not limited to, in 1961-1967.

**REQUEST FOR PRODUCTION NO. 8.**

All DOCUMENTS CONCERNING any payment(s) by the COPYRIGHT CLAIMANTS to DITKO for the DITKO MATERIAL.

**REQUEST FOR PRODUCTION NO. 9.**

All DOCUMENTS CONCERNING any payment(s) by the COPYRIGHT CLAIMANTS to STAN LEE in connection with the WORKS.

**REQUEST FOR PRODUCTION NO. 10.**

All DOCUMENTS CONCERNING any payment(s) by the COPYRIGHT CLAIMANTS to STAN LEE in 1961-1967.

**REQUEST FOR PRODUCTION NO. 11.**

All DOCUMENTS CONCERNING any payment(s) by the COPYRIGHT CLAIMANTS

to any writer or artist for the creation of comic book material published by MARVEL in 1961-1967.

**REQUEST FOR PRODUCTION NO. 12.**

DOCUMENTS that evidence the PERSON(S) with any ownership interest in the COPYRIGHT CLAIMANTS, including but not limited to, in 1961-1967.

**REQUEST FOR PRODUCTION NO. 13.**

DOCUMENTS that evidence the relationship between each of the COPYRIGHT CLAIMANTS and Martin Goodman, including but not limited to, in 1961-1967.

**REQUEST FOR PRODUCTION NO. 14.**

DOCUMENTS that evidence the corporate relationship between each of the COPYRIGHT CLAIMANTS and Magazine Management Co., Inc., including but not limited to, in the years 1961-1967.

**REQUEST FOR PRODUCTION NO. 15.**

DOCUMENTS that show the corporate relationship between each of the COPYRIGHT CLAIMANTS and any MARVEL entity, including but not limited to, in the years 1961-1967.

**REQUEST FOR PRODUCTION NO. 16.**

All COMMUNICATIONS, including all e-mails, between YOU and DITKO CONCERNING the DITKO MATERIAL.

**REQUEST FOR PRODUCTION NO. 17.**

All press releases CONCERNING DITKO released by MARVEL.

**REQUEST FOR PRODUCTION NO. 18.**

DOCUMENTS that evidence or reflect that DITKO created the DITKO MATERIAL as an independent contractor or freelancer.

**REQUEST FOR PRODUCTION NO. 19.**

DOCUMENTS that evidence or reflect that DITKO created comic book material published by MARVEL as a freelancer or independent contractor, including but not limited to, in the years 1961-1967.

**REQUEST FOR PRODUCTION NO. 20.**

All DOCUMENTS that evidence or reflect that DITKO was an employee of any MARVEL entity, including but not limited to, in the years 1961-1967.

**REQUEST FOR PRODUCTION NO. 21.**

All DOCUMENTS that evidence any payment(s) to DITKO by MARVEL including copies of all checks (front and back), bank records, pay stubs or accounting records, including but not limited to, in the years 1961-1967.

**REQUEST FOR PRODUCTION NO. 22.**

DOCUMENTS that evidence MARVEL's tax treatment of any compensation paid by MARVEL to DITKO in the years 1960-1967.

**REQUEST FOR PRODUCTION NO. 23.**

All DOCUMENTS CONCERNING DITKO's co-creation of the WORKS.

**REQUEST FOR PRODUCTION NO. 24.**

All DOCUMENTS CONCERNING STAN LEE's co-creation of the WORKS.

**REQUEST FOR PRODUCTION NO. 25.**

All DOCUMENTS that evidence or reflect any treatments, outlines, scripts, plots or storylines written by DITKO for any MARVEL comic book in the years 1960-1967, including but not limited to the WORKS.

**REQUEST FOR PRODUCTION NO. 26.**

All DOCUMENTS that evidence or reflect any treatments, outlines, scripts, plots or storylines written by STAN LEE for the WORKS.

**REQUEST FOR PRODUCTION NO. 27.**

All DOCUMENTS that evidence or reflect that any work DITKO performed for MARVEL was "work-made-for-hire" or done at MARVEL's "instance and expense."

**REQUEST FOR PRODUCTION NO. 28.**

All DOCUMENTS that evidence or reflect that any of the DITKO MATERIAL was created for MARVEL as "work-made-for-hire" or done at MARVEL's "instance and expense."

**REQUEST FOR PRODUCTION NO. 29.**

All DOCUMENTS that evidence or reflect an assignment to Marvel Entertainment Group, Inc. of the copyright in the WORKS before 1994.

**REQUEST FOR PRODUCTION NO. 30.**

All DOCUMENTS that MARVEL intends to use for any purpose in this lawsuit.

**REQUEST FOR PRODUCTION NO. 31.**

All DOCUMENTS that support YOUR allegation in Paragraph 1 of the COMPLAINT that "Marvel assigned Steve Ditko stories to illustrate."

**REQUEST FOR PRODUCTION NO. 32.**

All DOCUMENTS that support YOUR allegation in Paragraph 11 of the COMPLAINT that "[a]ny contributions Steve Ditko made were at Marvel's instance and expense."

**REQUEST FOR PRODUCTION NO. 33.**

All DOCUMENTS that support YOUR allegation in Paragraph 12 of the COMPLAINT that "Marvel editorial staff had the right to exercise creative control over Steve Ditko's

contributions."

**REQUEST FOR PRODUCTION NO. 34.**

All DOCUMENTS that support YOUR allegation in Paragraph 12 of the COMPLAINT that "Marvel paid Steve Ditko a per-page rate for his contributions."

**REQUEST FOR PRODUCTION NO. 35.**

All DOCUMENTS that support YOUR allegation in Paragraph 12 of the COMPLAINT that "[w]hen Steve Ditko worked for Marvel, he did so with the expectation that Marvel would pay him."

**REQUEST FOR PRODUCTION NO. 36.**

All DOCUMENTS that support YOUR allegation in Paragraph 22 of the COMPLAINT that "[t]he Works were . . . created at Marvel's instance and expense."

**REQUEST FOR PRODUCTION NO. 37.**

A full and complete copy of each of the following publications:

a. *Amazing Fantasy* Vol. 1, No. 15;

b. *Strange Tales* Vol. 1, Nos. 102-147;

c. *Amazing Spider-Man* Vol. 1, Nos. 1-38;

d. *The Fantastic Four Annual* Vol. 1, No. 1;

e. *Strange Tales Annual* Vol. 1, No. 2; and

f. *Amazing Spider-Man Annual* Vol. 1, Nos. 1-2.

**REQUEST FOR PRODUCTION NO. 38.**

DOCUMENTS reflecting any of STAN LEE's COMMUNICATIONS with comic book readers and/or fans CONCERNING the WORKS and/or DITKO.

**REQUEST FOR PRODUCTION NO. 39.**

All DOCUMENTS CONCERNING the five-page story entitled "Doctor Strange Master of Black Magic!" that was published and embodied in *Strange Tales* Vol. 1, No. 110.

**REQUEST FOR PRODUCTION NO. 40.**

All DOCUMENTS that evidence or reflect MARVEL's alleged right to exercise control over DITKO's creation of the five-page story entitled "Doctor Strange Master of Black Magic!" that was published and embodied in *Strange Tales* Vol. 1, No. 110.

**REQUEST FOR PRODUCTION NO. 41.**

All DOCUMENTS CONCERNING the reason(s) DITKO stopped illustrating comic books published by MARVEL.

**REQUEST FOR PRODUCTION NO. 42.**

All interviews CONCERNING any of the WORKS or any character(s) included therein.

**REQUEST FOR PRODUCTION NO. 43.**

All DOCUMENTS CONCERNING any royalties MARVEL paid to DITKO.

**REQUEST FOR PRODUCTION NO. 44.**

All DOCUMENTS CONCERNING any payment(s) by MARVEL to DITKO in connection with any film or television program(s) that is based, in whole or in part, on any of the WORKS.

Date: February 8, 2022

By: *\/s/ Marc Toberoff*

Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.
*mtoberoff@toberoffandassociates.com*
23823 Pacific Coast Hwy, Suite 50-363
Malibu, CA 90265
Tel: (310) 246-3333; Fax: (310) 246-3101

*Attorneys for Patrick S. Ditko, Administrator of the Estate of Stephen J. Ditko*

## PROOF OF SERVICE

I, Jaymie Parkkinen, declare:

I am over the age of eighteen years and not a party to the within action. I am a resident of or employed in the county where the service described below occurred. My business address is 23823 Malibu Road, Suite 50-363, Malibu, CA 90265. On February 8, 2022, I caused the following document:

**DEFENDANT DITKO'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINITFF MARVEL CHARACTERS, INC.**

to be served as follows:

[ ] **BY ELECTRONIC MAIL** - I caused the above-described document to be served by electronic mail transmission on the interested parties noted below, where an electronic mail address is indicated.

[x] **BY MAIL** – I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence collected from me would be processed on the same day, with postage thereon fully prepaid and placed for deposit that day with the United States Postal Service. On February 8, 2022, I put a true and correct copy of the above-referenced document in a sealed envelope, with postage fully prepaid, and placed the envelope for collection and mailing today with the United States Postal Service in accordance with the firm's ordinary business practices, addressed as follows:

Daniel M. Petrocelli
dpetrocelli@omm.com
Molly M. Lens
mlens@omm.com
Danielle Feuer
dfeuer@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067

Allen W. Burton
(*admitted pro hac vice*)
aburton@omm.com
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036

Kendall Turner
kendallturner@omm.com
O'MELVENY & MYERS LLP
1625 I Street NW
Washington, DC 20006

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on February 8, 2022, at Malibu, California.

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen