Exhibit 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARVEL CHARACTERS, INC., | Case No.: 1:21-cv-7955-LAK |
| Plaintiff and Counterclaim-Defendant | and consolidated cases |
| | 21-cv-7957-LAK and 21-cv-7959-LAK |
| v. | |
| LAWRENCE D. LIEBER, | |
| Defendant and Counterclaimant. | Hon. Lewis A. Kaplan |
| MARVEL CHARACTERS, INC., | |
| Plaintiff and Counterclaim-Defendant, | **MARVEL CHARACTERS, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT DITKO'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| KEITH A. DETTWILER, in his capacity as Executor of the Estate of Donald L. Heck, | |
| Defendant and Counterclaimant. | |
| MARVEL CHARACTERS, INC., | |
| Plaintiff and Counterclaim-Defendant, | |
| v. | |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko, | |
| Defendant and Counterclaimant. | |

PROPOUNDING PARTY:     PATRICK S. DITKO
RESPONDING PARTY:      MARVEL CHARACTERS, INC.
SET NO.:               ONE

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules"), Plaintiff Marvel Characters, Inc. ("MCI") hereby further responds and objects to Patrick S. Ditko's First Requests for Production of Documents ("Requests" and, individually, "Request"), served on February 8, 2022 via regular mail, as follows:[1]

## **PRELIMINARY STATEMENT**

These responses are made solely for purposes of this action and are subject to all objections as to competence, relevance, materiality, privilege, and admissibility, and any and all objections and grounds that would require exclusion of any statement made herein if such statement were made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

No incidental or implied admissions are intended by these responses. The fact that MCI responds or objects to any of the Requests should not be construed as an admission that it accepts or admits the existence of any facts assumed by such Request, or that such response or objection constitutes admissible evidence as to any such assumed facts. The fact that MCI responds to part or all of any of the Requests is not intended to be and shall not be construed as a waiver of any part of any objection to any Request.

The objections and responses set forth below are preliminary and non-binding, are based solely on such information and documentation as are presently available and specifically known to MCI after having made a diligent search and reasonable and good faith inquiry, and are made without prejudice to MCI's right to: (1) amend, alter, supplement, clarify or otherwise modify

---

[1] MCI's supplemental responses are based on the parties' agreements during the meet-and-confer process. In particular, MCI understands that the compromises represented by these supplemental responses moot any disagreements between the parties as to MCI's responses and MCI's supplemental responses are provided on that basis.

these objections and responses as this matter proceeds; (2) make use of, or introduce at any hearing or trial, any documents, information, facts, evidence, and legal theories which are subsequently discovered or which are now known but whose relevance, significance, or applicability has not yet been ascertained; and (3) offer expert witness opinions on any relevant matter, which opinions may be at variance with these objections and responses or the documents produced in response to Patrick S. Ditko's Requests.

Furthermore, MCI's responses are made without in any way intending to waive, but on the contrary, intending to preserve:

1.      The right to raise—as part of any subsequent proceeding in, or the trial of, this or any other action—all questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility as evidence for any purpose of any documents produced or identified in support of any of the responses to any portion of Patrick S. Ditko's Requests;

2.      The right to object on any ground—as part of any subsequent proceeding in, or the trial of, this or any other action—to the use of any documents produced or identified in support of any of the responses to any portion of Patrick S. Ditko's Requests;

3.      The right to object to introduction into evidence of any of these responses; and

4.      The right to object on any ground at any time to other discovery involving the subject thereof.

## **GENERAL OBJECTIONS**

1.      MCI objects to each and every Request, definition, and instruction that purports to impose obligations beyond those required or permitted by the Federal Rules of Civil Procedure or the Local Rules.  MCI interprets each and every Request, definition, and instruction to be consistent with the Federal Rules of Civil Procedure and Local Rules.

2.      MCI objects to each and every Request, definition, and instruction to the extent it contains inaccurate, incomplete, or misleading descriptions of the facts, persons, relationships, events, and pleadings underlying this action.  The production of any information shall not constitute MCI's agreement with or acquiescence to any such description.

3.      MCI objects to each and every Request, definition, and instruction to the extent it seeks DOCUMENTS that are neither relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence.  MCI will only produce documents consistent with its Responses below.

4.      MCI objects to each and every Request, definition, and instruction to the extent it is vague, ambiguous, unclear, or fails to identify the requested DOCUMENTS with reasonable particularity as required by Federal Rule of Civil Procedure 34.  To the extent that a Request requires subjective judgment on the part of MCI as to what information is requested, MCI will produce responsive, non-privileged DOCUMENTS according to its understanding of the Request.

5.      MCI objects to each and every Request, definition, and instruction to the extent it is overbroad, onerous, and unduly burdensome and, thus, outside the scope of permissible discovery.  MCI will only produce documents consistent with its Responses below.

6.      MCI objects to each and every Request, definition, and instruction to the extent it seeks DOCUMENTS created after September 24, 2021—the date that MCI filed this action—on the grounds that such Requests are overbroad, beyond the scope of the allegations, seek DOCUMENTS protected by the attorney-client privilege and work product doctrines and not reasonably calculated to lead to the discovery of admissible evidence.  MCI further objects to each and every Request, definition, and instruction to the extent it lacks temporal limitation and

is thus unduly burdensome and disproportionate to the needs of the case.  Unless otherwise indicated in the specific responses below, MCI will not produce DOCUMENTS created after September 24, 2021.

7.      MCI objects to each and every Request, definition, and instruction to the extent it seeks to require MCI to log DOCUMENTS protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges after June 1, 2021, when Patrick S. Ditko served the first termination notice at issue in this case, as the burden and expense of logging such DOCUMENTS would outweigh any benefit of logging them.  Unless otherwise indicated in the specific responses below, MCI will not log privileged DOCUMENTS after June 1, 2021.

8.      MCI objects to each and every Request to the extent it seeks DOCUMENTS that are a matter of public record, already in the possession of Patrick S. Ditko, or otherwise equally available to the public and Patrick S. Ditko.  That said, without committing to undertake a search specifically for documents in the public record, MCI will not withhold any responsive documents that it identifies in its files through a reasonably diligent search because the documents may also be available in the public record.

9.      MCI objects to each and every Request to the extent that it seeks disclosure of DOCUMENTS that are unreasonably cumulative or duplicative of other discovery served in this action, or are obtainable from sources that are more convenient, less burdensome, or less expensive.

10.     MCI objects to each and every Request to the extent that it seeks to require MCI to use more than reasonable diligence to locate and identify responsive DOCUMENTS or information.  Consistent with its obligations, MCI will conduct a reasonably diligent inquiry for responsive documents.

11.    MCI objects to each and every Request to the extent it seeks the production of DOCUMENTS restored from backup tapes or archived data sources that are not reasonably accessible.  MCI will not search backup tapes or archived data sources.

12.    MCI objects to each and every Request, definition, and instruction to the extent it seeks the production of DOCUMENTS other than those in MCI's possession, custody, or control.  MCI will produce documents within its files.

13.    MCI objects to each and every Request to the extent it seeks the production of DOCUMENTS protected by the attorney-client privilege, the attorney-work product doctrine, the common interest or joint defense privileges, rules and agreements governing privacy or confidentiality, or any other applicable privilege or protection recognized under statute or applicable case law.  Inadvertent production by MCI of any DOCUMENTS protected by any applicable privilege or protection shall not constitute a waiver of the privilege or protection.

14.    MCI objects to each and every Request, definition, and instruction to the extent it calls for a response that would infringe upon the legitimate privacy rights of current or former employees, officers, or directors of MCI, current or former affiliates, related companies, subsidiaries, or other individuals, to the full extent such privacy rights and expectations are protected by constitution, statute, contract, court order, or public policy.  MCI reserves the right to redact or exclude information from DOCUMENTS to protect unnecessary disclosure of nonresponsive or irrelevant sensitive, confidential, or proprietary business information.

15.    MCI objects to each and every Request to the extent it seeks MCI's sensitive, confidential, or proprietary business information.  To the extent such DOCUMENTS are responsive, relevant, and not privileged, MCI will disclose such confidential business

DOCUMENTS pursuant to a Protective Order, and any subsequent revisions to that Protective Order upon which the Parties may agree.

16.    MCI objects to each and every Request to the extent it seeks the production of "all" DOCUMENTS in MCI's possession.  To the extent that MCI undertakes to produce DOCUMENTS, MCI will conduct a reasonable search of custodians reasonably likely to have non-cumulative, non-privileged responsive DOCUMENTS as qualified by MCI's objections and responses and, in the case of electronic DOCUMENTS, if any, MCI will use search terms reasonably expected to yield non-privileged, responsive DOCUMENTS.

17.    MCI objects to each Request, definition, and instruction to the extent that it prematurely requests discovery of expert materials and information in advance of their respective deadlines under the Scheduling Order governing this case and/or the Federal Rules of Civil Procedure.  MCI will not produce any expert materials or information before such deadlines.

18.    MCI objects to each and every Request to the extent it seeks information or the production of DOCUMENTS whose disclosure would otherwise be prohibited by applicable law, rule, regulation, or contract obligation. In particular, MCI objects to each and every Request to the extent it seeks DOCUMENTS subject to confidentiality obligations (such as settlement agreements with third-parties) or protective orders, such as the documents produced by parties other than MCI or another Marvel entity in prior litigations.  MCI cannot, and will not, produce any such DOCUMENTS unless and until it is relieved of its confidentiality obligations with respect to such DOCUMENTS, and nothing contained in any response to any Request should be considered an agreement to produce such DOCUMENTS.  In addition, MCI notes that any confidentiality obligations greatly increase the burden associated with the production of such documents.  Accordingly, MCI does not agree to produce any documents protected by

confidentiality restrictions and/ or protective orders.  MCI, however, is willing to continue to

meet and confer with Patrick S. Ditko about the relevance of any such documents and who

should bear the burden associated with obtaining relief from prior protective orders and/or

producing such documents.  Relatedly, MCI notes that Patrick S. Ditko indicated that he would

be moving to modify the protective orders in *Gary Friedrich Enters., LLC v. Marvel Enters.*, No.

08-cv-1533 (S.D.N.Y. 2008) and *Marvel Characters, Inc. v. Simon*, No. 00-cv-1393 (S.D.N.Y.

2002) back in March but has not yet done so.

19.    Nothing contained in any response herein shall be deemed an admission,

concession, or waiver by MCI as to the validity of any claim or defense asserted by Patrick S.

Ditko.

20.    All objections as to the relevance, authenticity, or admissibility of any

DOCUMENTS produced are expressly reserved by MCI.

21.    To the extent that MCI responds to any of the Requests, it reserves the right to

object on any grounds, at any time, to other discovery Requests involving or relating to the

subject matter of the Requests that MCI has responded to herein.

22.    An objection or an undertaking to produce DOCUMENTS pursuant to a particular

Request should not be construed to indicate that responsive DOCUMENTS actually exist.

23.    MCI reserves all objections to the use of these responses.  All such objections

may be interposed by MCI at the time of trial or as otherwise required by the rules or order of the

Court.

24.    MCI's responses herein shall not in any way constitute an adoption of Patrick S.

Ditko's purported "Definitions" of words or phrases or "Instructions" contained in the Requests.

MCI objects to the Definitions, Instructions, and Requests to the extent they: (i) are vague,

ambiguous, compound, overbroad, unduly burdensome, and not reasonably tailored to avoid imposing undue burden and expense on MCI; (ii) seek DOCUMENTS or information for an undefined period of time or, if defined, cover and span an unreasonably long or burdensome time period, and therefore are burdensome and oppressive; (iii) are inconsistent with the ordinary and customary meaning of the words or phrases they purport to define; (iv) seek to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure or local rule; (v) include assertions of purported fact that are inaccurate or disputed by the parties to this action; and/or (vi) incorporate other purported defined terms that suffer from such defects. In responding to the Requests, MCI has, where possible, employed what it regards as the reasonable, common-sense interpretation of the Request in light of the relevant issues in the case.

25.    MCI objects to the definition of "AGREEMENT" and "AGREEMENTS" as overbroad and unduly burdensome, as the definition includes "any contract, whether written or oral, express or implied" and is unbounded in time or by persons party to the agreement.  MCI cannot feasibly conduct a search for documents relating to oral or implied agreements.  That said, to the extent that MCI identifies any documents memorializing any oral or implied agreements, MCI will produce such documents.

26.    MCI further confirms that the parties have met and conferred about MCI's obligation to produce Agreements and payment-related documents in response to the Requests. During these conversations, MCI confirmed that it does not have any "vouchers" prior to 1987. MCI has agreed to produce all responsive signed agreements with Don Rico, Larry Lieber, Steve Ditko, Don Heck, and Eugene Colan, with the exception of vouchers that are stored in hard-copy or not otherwise scanned and searchable by contributor.  MCI has further agreed to produce any responsive agreements in the 1960s or 1970s with the approximately fifty contributors identified

during the parties' meet-and-confer discussions.[2]  Further, MCI has confirmed that MCI maintains certain payment records from the 1980s and 1990s in an offsite facility and such records are not electronically searchable.  Accordingly, as with the vouchers above, MCI has not agreed to a search for these documents, given that any limited probative value is significantly outweighed by the burden on MCI.  In addition, while MCI confirms that its search for responsive documents is not limited to electronic documents, as MCI has explained, it is not aware of any physical payment-related files for the relevant time period.

27.    MCI objects to the definition of "DITKO MATERIAL" insofar as it assumes that Ditko "created" or "co-created" certain comic book stories, which implies unfound legal conclusions, is argumentative, and inconsistent with the facts.

28.    MCI objects to the definition of "MARVEL" as overbroad and unduly burdensome to the extent it includes "<u>any past or present predecessors-in-interest or successors-in-interest</u>, and any other person or persons acting on their behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, both singularly and cumulatively." (emphasis in original).  Consistent with the Local Rules, MCI will produce responsive, non-privileged DOCUMENTS from individuals at MCI reasonably anticipated to have responsive, non-duplicative, non-privileged DOCUMENTS.  In addition, without conceding that it has any obligation to do so, to the extent that MCI determines through a reasonably diligent inquiry that another Marvel entity, such as Marvel Entertainment, LLC, has responsive documents, MCI will similarly produce such documents.

---

[2]    MCI also agreed to produce any agreements with contributors that it produced in *Kirby*.

29.     MCI objects to the definition of "STAN LEE" as overbroad and unduly burdensome to the extent this definition includes "any and all present or former agents, employees, representatives, attorneys, accountants, investigators, or any other person, acting or purporting to act on Stan Lee's behalf."  MCI interprets "Stan Lee" as Stan Lee himself.

30.     MCI objects to the definition of "YOU" and "YOUR" as overbroad and unduly burdensome to the extent this definition includes "MARVEL and any and all predecessor or successor entities, any and all divisions thereof, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys, accountants, investigators, or any other PERSON, or affiliate acting or purporting to act on any of MARVEL's behalf." Consistent with the Local Rules, MCI will produce responsive, non-privileged DOCUMENTS from individuals at MCI reasonably anticipated to have responsive, non-duplicative, non-privileged DOCUMENTS.

31.     MCI objects to Instruction No. 13 as overbroad and unduly burdensome to the extent it purports to require MCI to obtain possession of DOCUMENTS from public sources equally available to Patrick S. Ditko.  MCI construes Instruction No. 13 to only oblige MCI to request possession of DOCUMENTS from non-public sources.

32.     MCI objects to Instruction No. 18 as overbroad and unduly burdensome to the extent it requires MCI to produce "all" DOCUMENTS in searchable electronic format.  MCI will undertake reasonable efforts to produce all DOCUMENTS in such format but reserves rights to deviate as circumstances require, for example, with respect to DOCUMENTS collected and/or produced in prior litigations.

33.     MCI objects to Instruction No. 19 as overbroad and unduly burdensome to the extent it requires MCI to, without exception, harvest DOCUMENTS "in a manner that maintains

the integrity and readability of all data, including all metadata."  MCI will undertake reasonable

efforts to protect all data and metadata where practicable but reserves rights to deviate as

circumstances require, for example, with respect to DOCUMENTS collected and/or produced in

prior litigations.

  34. MCI objects to Instruction No. 20 as overbroad and unduly burdensome to the

extent it requires MCI to, without exception, "ensure[] that the source of each DOCUMENT may

be determined, if necessary."  MCI will undertake reasonable efforts to ensure as such but

reserves rights to deviate as circumstances require, for example, with respect to DOCUMENTS

collected and/or produced in prior litigations where sources may be impracticable to ascertain.

  35. MCI objects to Instruction No. 21 as overbroad and unduly burdensome to the

extent it requires MCI to, without exception, not separate attached DOCUMENTS and to

maintain the "parent-child" relationship of DOCUMENTS.  MCI will undertake reasonable

efforts to follow Instruction No. 21 but reserves rights to deviate as circumstances require, for

example, with respect to DOCUMENTS collected and/or produced in prior litigations where

DOCUMENTS may have previously been detached or "parent-child" relationships severed.

  36. MCI objects to Instructions No. 22 and 23 as overbroad and unduly burdensome

to the extent they purport to require that MCI trace back and reconfigure the storage structure of

DOCUMENTS collected in, produced in, or pertaining to prior litigations.  MCI will produce

such DOCUMENTS as they are currently stored, kept and/or organized (unless doing so would

reveal attorney-work product and/or privileged information).

  37. MCI objects to Instruction No. 24 as premature, as the Parties have not met and

conferred regarding a stipulation for discovery and production of electronically-stored

information.  MCI is available to meet and confer about a mutually agreeable protocol for the production of electronically-stored information.

38.    MCI objects to Instruction No. 25 to the extent that it purports to require MCI to log DOCUMENTS on an individual, as opposed to categorical basis.  In addition, MCI objects to Instruction No. 25 to the extent that it purports to require MCI to re-review and/or re-log DOCUMENTS previously determined to be privileged and/or protected, in whole or in part, in a prior litigation. MCI does not agree to re-review or re-log such DOCUMENTS.  Per the parties' reciprocal agreement, MCI will (1) log categorically documents withheld on the basis of a protective order in a prior matter; (2) log on a document-by-document basis documents withheld on the basis of attorney-client privilege, the work product doctrine, or similar privileges or doctrines;[3] and (3) produce such privilege log(s) within 30 days after any production corresponding to such withheld documents.

39.    MCI objects to the use of the term "reflect[ing]" with respect to agreements, negotiations, and/or drafts in the Requests as vague and ambiguous.  MCI interprets "reflect" as having the same meaning as "state," "memorialize," or "evidence" depending upon the specific Request.

40.    MCI objects to the use of the terms "freelancer," "freelance artist," "freelance writer," "independent contractor," "creat[ion]," and "co-creat[ion]" in the Requests, which assume unfound legal conclusions, are argumentative, and/or assume facts.  MCI interprets such terms to request DOCUMENTS pertaining to the nature of the working relationship between Ditko and MCI.

---

[3]    To confirm, the parties reserve the right to revisit the logging of documents on a document-by-document basis for good cause.

41.     MCI objects to the time and place identified in the Requests.  MCI will produce DOCUMENTS on a rolling basis commencing within a reasonable time after service of these responses and objections.

42.     MCI notes that this action is one of five actions currently pending, which not only all relate to the work-made-for-hire status of works published by MCI during the time period 1961 to 1976, but have significant and extensive factual overlap.  Accordingly, these five cases involve much of the same evidence.  Indeed, the very same works and characters across the actions overlap in many instances.  MCI further notes that the defendants in these five actions – who are all represented by the same counsel – have served overlapping and duplicative requests across all five cases.  Three of these cases have already been consolidated for pre-trial purposes. MCI intends to produce one set of documents in response to all requests.  As agreed, where not unduly burdensome, however, MCI will provide information to identify documents associated with particular defendants, such as comics, copyright registrations and renewals, and termination notices.  MCI reserves all rights with respect to the accuracy of such information, as it is being manually added to the documents.  In addition, MCI does not waive any privileges or protections, including, but not limited to, the attorney-client privilege and/or work product doctrines through the provision of such information.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS that state, memorialize or reflect any AGREEMENT between DITKO and MARVEL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and—insofar as it calls for the production of "any" agreement—seeks documents that are not

relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence.  MCI further objects to this Request on the grounds that "reflect[ing]" an agreement is vague and ambiguous, and MCI interprets "reflect" as having the same meaning as "state" and "memorialize" as to this Request.  Further responding, MCI objects to this Request on the grounds that it calls for the production of privileged documents or documents protected by the attorney work-product privilege.  Based on the parties' meet-and-confer discussions, MCI understands that Agreements are distinct from payment(s), which were separately requested and discussed by the parties.  Subject to and without waiving these specific objections and the General Objections, with the exception of vouchers that are stored in hard-copy or not otherwise scanned and searchable by contributor, MCI will produce non-privileged documents in its possession, custody, or control that state, memorialize, or reflect any Agreement between Ditko and Marvel relating to work performed by Steve Ditko, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS that memorialize or reflect any negotiations and/or drafts of any AGREEMENT between DITKO and MARVEL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and—insofar as it calls for the production of "all" documents pertaining to "any" negotiations and/or drafts of "any" agreement—seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence.  MCI further objects to this Request on the grounds that "reflect[ing]" a negotiation and/or draft is

-15-

vague and ambiguous, and MCI interprets "reflect" as having the same meaning as "memorialize" as to this Request.  Further responding, MCI objects to this Request on the grounds that it calls for the production of privileged documents or documents protected by the attorney work-product privilege.  Based on the parties' meet-and-confer discussions, MCI understands that Agreements are distinct from payment(s), which were separately requested and discussed by the parties.  Subject to and without waiving these specific objections and the General Objections, with the exception of vouchers that are stored in hard-copy or not otherwise scanned and searchable by contributor, MCI will produce non-privileged documents in its possession, custody, or control that memorialize or reflect any negotiations and/or drafts of Agreements between Ditko and Marvel relating to work performed by Steve Ditko, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 3:**

All of the original and renewal copyright registrations with the United States Copyright Office for the WORKS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

MCI objects to this Request as seeking documents equally within the defendant's possession, custody, and control.  Subject to and without waiving this specific objection and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 4:**

All drafts of any AGREEMENT between DITKO and MARVEL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and—insofar as it calls for the production of "all" drafts of "any" agreement—seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence.  Further responding, MCI objects to this Request on the grounds that it calls for the production of privileged documents or documents protected by the attorney work-product privilege.  Based on the parties' meet-and-confer discussions, MCI understands that Agreements are distinct from payment(s), which were separately requested and discussed by the parties.  Subject to and without waiving these specific objections and the General Objections, with the exception of vouchers that are stored in hard-copy or not otherwise scanned and searchable by contributor, MCI will produce non-privileged drafts of Agreements between Ditko and Marvel relating to work performed by Steve Ditko in MCI's possession, custody, or control, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS CONCERNING any payment(s) to DITKO for the DITKO MATERIAL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

MCI objects to the definition of "DITKO MATERIAL" insofar as it assumes that Ditko "created" or "co-created" certain comic book stories, which implies unfound legal conclusions. Subject to and without waiving this specific objection and the General Objections, with the exception of offsite, hard-copy financial documents from 1980s and 1990s discussed between the parties, MCI will produce non-privileged documents in its possession, custody, or control that

are responsive to this Request, if any, that are identified through a reasonably diligent inquiry of electronic searches identified with Steve Ditko's name and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS that evidence or reflect MARVEL's alleged right to exercise control over DITKO's creation of the DITKO MATERIAL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

MCI objects to the definition of "DITKO MATERIAL" insofar as it assumes that Ditko "created" or "co-created" certain comic book stories, which implies unfound legal conclusions. Subject to and without waiving this specific objection and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that evidence or reflect its right to exercise control over Ditko's contributions to the Ditko Material, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 7:**

DOCUMENTS evidencing that STAN LEE was employed by each of the COPYRIGHT CLAIMANTS, including but not limited to, in 1961-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence.  Further responding, MCI objects to the Request as imposing a burden grossly disproportionate to the needs of this case insofar as it requires searching for documents from approximately sixty years ago, unconstrained by a specific date

range.  MCI further objects to the definition of "STAN LEE" as overbroad and burdensome insofar as it includes "any and all present or former agents, employees, representatives, attorneys, accountants, investigators, or any other person, acting or purporting to act on Stan Lee's behalf."  MCI interprets "Stan Lee" to mean Stan Lee himself. MCI also objects to this Request on the grounds that "evidenc[ing] that STAN LEE was employed by each of the COPYRIGHT CLAIMANTS" is vague and ambiguous.  Based on the parties' meet-and-confer discussions, MCI understands this Request to be seeking any employment Agreements (or any other Agreements with Lee relating to the future provision of services), hiring records, and letters and/or communications referring to Lee as an employee, freelancer, or independent contractor that are identified through a reasonably diligent search.  MCI notes that it does not have any documents reflecting the tax treatment of payments to Stan Lee for the provision of services during the relevant time period, as MCI only has such documents beginning in approximately 1998.  MCI will not produce those documents, given that privacy concerns significantly outweigh their probative value, in addition to the other objections MCI has raised with respect to this Request.  With this understanding, and subject to these specific objections and the General Objections, MCI will produce responsive non-privileged documents in its possession, custody, or control, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS CONCERNING any payment(s) by the COPYRIGHT CLAIMANTS to DITKO for the DITKO MATERIAL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

MCI objects to the definition of "DITKO MATERIAL" insofar as it assumes that Ditko "created" or "co-created" certain comic book stories, which implies unfound legal conclusions. Subject to and without waiving this specific objection and the General Objections, with the exception of offsite, hard-copy financial documents from 1980s and 1990s discussed between the parties, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry of electronic searches identified with Steve Ditko's name and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS CONCERNING any payment(s) by the COPYRIGHT CLAIMANTS to STAN LEE in connection with the WORKS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

MCI objects to the definition of "STAN LEE" as overbroad and burdensome insofar as it includes "any and all present or former agents, employees, representatives, attorneys, accountants, investigators, or any other person, acting or purporting to act on Stan Lee's behalf." MCI interprets "Stan Lee" to mean Stan Lee himself. Subject to and without waiving this specific objection and the General Objections, with the exception of offsite, hard-copy financial documents from 1980s and 1990s discussed between the parties, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry of electronic searches identified with Stan Lee's name and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS CONCERNING any payment(s) by the COPYRIGHT CLAIMANTS to STAN LEE in 1961-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence. MCI further objects to the definition of "STAN LEE" as overbroad and burdensome insofar as it includes "any and all present or former agents, employees, representatives, attorneys, accountants, investigators, or any other person, acting or purporting to act on Stan Lee's behalf." MCI interprets "Stan Lee" to mean Stan Lee himself. Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control concerning payments by the Copyright Claimants to Stan Lee in the years 1961 to 1967, if any, that are identified through a reasonably diligent inquiry of electronic searches identified with Stan Lee's name and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS CONCERNING any payment(s) by the COPYRIGHT CLAIMANTS to any writer or artist for the creation of comic book material published by MARVEL in 1961-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence. Further responding, MCI objects to the Request

as imposing a burden grossly disproportionate to the needs of this case insofar as it requires

searching for documents from approximately sixty years ago, unconstrained by specific persons

or works.  Subject to and without waiving these specific objections and the General Objections,

MCI agrees to produce the documents it produced in *Kirby*.  In addition, again subject to and

without waiving these specific objections and the General Objections, MCI will produce any

non-privileged agreements with, and payments to, Stan Lee, Steve Ditko, Larry Lieber, Don

Heck, Gene Colan, Dick Ayers, Sam Rosen, Art Simek, Joe Sinnott, John Romita, Gary

Friedrich, Bill Everett, Joe Maneely, Joe Simon, Jim Steranko, Neal Adams, Gaspar Saladino,

Vince Colletta, Len Wein, Jack Abel, Glynis Oliver, Gerry Conway, Ross Andru, Frank Giacoia,

John Costanza, Marv Wolfman, Mike Ploog, Archie Goodwin, Steve Englehart, Jim Starlin, Al

Milgrom, Larry Hama, Doug Moench, Tony Isabella, Bill Mantlo, Ed Hannigan, Gray Morrow,

Steve Gan, Dan Adkins, Roy Thomas, Alan Weiss, Tom Orzechowski, Mike Friedrich, and Mike

Esposito during the 1960s and 1970s, if any, that are identified through a reasonably diligent

inquiry of electronic searches identified with the names above and not otherwise subject to a

protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 12:**

DOCUMENTS that evidence the PERSON(S) with any ownership interest in the

COPYRIGHT CLAIMANTS, including but not limited to, in 1961-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and

seeks documents that are not relevant to any issue in this action and are not reasonably calculated

to lead to the discovery of admissible evidence.  Subject to these specific objections and the

General Objections, MCI will produce non-privileged documents in its possession, custody, or

control sufficient to show the relationship between the Copyright Claimants and Martin Goodman, as well as documents sufficient to show the corporate relationship between the Copyright Claimants and any other Marvel entity, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 13:**

DOCUMENTS that evidence the relationship between each of the COPYRIGHT CLAIMANTS and Martin Goodman, including but not limited to, in 1961-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence. Further responding, MCI objects to the Request as imposing a burden grossly disproportionate to the needs of this case insofar as it requires searching for documents from approximately sixty years ago, unconstrained by a specific date range. MCI further objects to this Request on the grounds that "evidenc[ing] the relationship" is vague and ambiguous, and MCI interprets this Request as seeking any documents between each of the Copyright Claimants and Goodman relating to the provision of services and/or any ownership interest by Goodman of the Copyright Claimants. Subject to these specific objections and the General Objections, MCI will produce any non-privileged documents identified through a reasonably diligent search evidencing Goodman's ownership, in whole or in part, or employment by, the Copyright Claimants, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 14:**

DOCUMENTS that evidence the corporate relationship between each of the COPYRIGHT CLAIMANTS and Magazine Management Co., Inc., including but not limited to, in the years 1961-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence.  Subject to these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control sufficient to show the corporate relationship between the Copyright Claimants and Magazine Management Co., if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 15:**

DOCUMENTS that show the corporate relationship between each of the COPYRIGHT CLAIMANTS and any MARVEL entity, including but not limited to, in the years 1961-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence.  Subject to these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control sufficient to show the corporate relationship between the Copyright Claimants and any other Marvel entity, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 16:**

All COMMUNICATIONS, including all e-mails, between YOU and DITKO CONCERNING the DITKO MATERIAL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

MCI objects to the definition of "DITKO MATERIAL" insofar as it assumes that Ditko "created" or "co-created" certain comic book stories, which implies unfound legal conclusions. MCI further objects to this Request as seeking documents equally within the defendant's possession, custody, and control.  Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 17:**

All press releases CONCERNING DITKO released by MARVEL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

MCI objects to this Request as seeking documents equally within the defendant's possession, custody, and control.  Subject to and without waiving this specific objection and the General Objections, MCI will produce responsive, non-privileged documents that it intends to rely on in this lawsuit and which are not otherwise subject to a protective order or confidentiality requirement.  In addition, again subject to and without waiving these specific objections and the General Objections, while there is no central repository for press releases, to the extent that MCI identifies any press releases relating or referring to Ditko during its search for documents in response to the other Requests, MCI agrees to produce any such press releases.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS that evidence or reflect that DITKO created the DITKO MATERIAL as an independent contractor or freelancer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

MCI objects to the definition of "DITKO MATERIAL" insofar as it assumes that Ditko "created" or "co-created" certain comic book stories, which implies unfound legal conclusions. MCI further objects to the Request on the grounds that it is overbroad, unduly burdensome, and implies an unfound legal conclusion through the use of the term "independent contractor or freelancer." Subject to these specific objections and the General Objections, MCI will produce non-privileged, responsive documents in its possession, custody, or control that evidence or reflect whether Marvel was Ditko's employer when the Ditko Material was created, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS that evidence or reflect that DITKO created comic book material published by MARVEL as a freelancer or independent contractor, including but not limited to, in the years 1961-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

MCI objects to the Request on the grounds that it is overbroad, unduly burdensome, and implies an unfound legal conclusion through the use of the term "freelancer or independent contractor." Based on the parties' meet-and-confer discussions, MCI understands this Request to be seeking any employment Agreements (or any other Agreements with Steve Ditko relating to the future provision of services), hiring records, W-2s, documents reflecting the tax treatment of

any such payments, and letters and/or communications referring to Steve Ditko as an employee, freelancer, or independent contractor during the time period from 1955 to 1985.  With this understanding and the exception of offsite, hard-copy financial documents from 1980s and 1990s discussed between the parties, subject to these specific objections and the General Objections, MCI will produce non-privileged, responsive documents in its possession, custody, or control that evidence or reflect whether Marvel was Ditko's employer when comic book material published by Marvel was created by Ditko, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS that evidence or reflect that DITKO was an employee of any MARVEL entity, including but not limited to, in the years 1961-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

MCI objects to the Request on the grounds that it is overbroad, unduly burdensome, and implies an unfound legal conclusion through the use of the term "employee."  Based on the parties' meet-and-confer discussions, MCI understands this Request to be seeking any employment Agreements (or any other Agreements with Steve Ditko relating to the future provision of services), hiring records, W-2s, documents reflecting the tax treatment of any such payments, and letters and/or communications referring to Steve Ditko as an employee, freelancer, or independent contractor during the time period from 1955 to 1985.  With this understanding and the exception of offsite, hard-copy financial documents from 1980s discussed between the parties, subject to these specific objections and the General Objections, MCI will produce non-privileged, responsive documents in its possession, custody, or control that evidence or reflect whether Marvel was Ditko's employer when comic book material published

by Marvel was created by Steve Ditko, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS that evidence any payment(s) to DITKO by MARVEL including copies of all checks (front and back), bank records, pay stubs or accounting records, including but not limited to, in the years 1961-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this specific objection and the General Objections, with the exception of offsite, hard-copy financial documents from 1980s and 1990s discussed between the parties, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry of electronic searches identified with Steve Ditko's name and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS that evidence MARVEL's tax treatment of any compensation paid by MARVEL to DITKO in the years 1960-1967.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Subject to and without waiving the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that

are identified through a reasonably diligent inquiry of electronic searches identified with Steve

Ditko's name and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS CONCERNING DITKO's co-creation of the WORKS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

MCI objects to the Request on the grounds that it is overbroad, unduly burdensome, and

implies an unfound legal conclusion through the use of the term "co-creation."  Subject to and

without waiving these specific objections and the General Objections, MCI will produce non-

privileged documents in its possession, custody, or control that concern Ditko's contributions to

the Works, if any, that are identified through a reasonably diligent inquiry and not otherwise

subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS CONCERNING STAN LEE's co-creation of the WORKS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

MCI objects to the Request on the grounds that it is overbroad, unduly burdensome, and

implies an unfound legal conclusion through the use of the term "co-creation."  MCI further

objects to the definition of "STAN LEE" as overbroad and burdensome insofar as it includes

"any and all present or former agents, employees, representatives, attorneys, accountants,

investigators, or any other person, acting or purporting to act on Stan Lee's behalf."  MCI

interprets "Stan Lee" to mean Stan Lee himself.  Subject to and without waiving these specific

objections and the General Objections, MCI will produce non-privileged documents in its

possession, custody, or control that concern contributions made by Stan Lee to the Works, if any,

that are identified through a reasonably diligent inquiry and not otherwise subject to a protective

order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS that evidence or reflect any treatments, outlines, scripts, plots or

storylines written by DITKO for any MARVEL comic book in the years 1960-1967, including

but not limited to the WORKS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and

seeks documents that are not relevant to any issue in this action by seeking documents that are

unrelated to the Works.  Subject to and without waiving these specific objections and the General

Objections, MCI will produce non-privileged documents in its possession, custody, or control

that evidence or reflect any treatments, outlines, scripts, plots or storylines written by Ditko

during the years 1960 to 1967, if any, that are identified through a reasonably diligent inquiry

and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS that evidence or reflect any treatments, outlines, scripts, plots or

storylines written by STAN LEE for the WORKS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

MCI objects to the definition of "STAN LEE" as overbroad and burdensome insofar as it

includes "any and all present or former agents, employees, representatives, attorneys,

accountants, investigators, or any other person, acting or purporting to act on Stan Lee's behalf."

MCI interprets "Stan Lee" to mean Stan Lee himself.  Subject to and without waiving this

specific objection and the General Objections, MCI will produce non-privileged documents in its

possession, custody, or control that are responsive to this Request, if any, that are identified

through a reasonably diligent inquiry and not otherwise subject to a protective order or

confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 27:**

      All DOCUMENTS that evidence or reflect that any work DITKO performed for

MARVEL was "work-made-for-hire" or done at MARVEL's "instance and expense."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

      MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and

calls for a legal conclusion.  Subject to and without waiving these specific objections and the

General Objections, MCI will produce non-privileged documents in its possession, custody, or

control evidencing that work Ditko performed during the years 1960 to 1967 was "work-made-

for-hire" or done at Marvel's "instance and expense," if any, that are identified through a

reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality

requirement.

**REQUEST FOR PRODUCTION NO. 28:**

      All DOCUMENTS that evidence or reflect that any of the DITKO MATERIAL was

created for MARVEL as "work-made-for-hire" or done at MARVEL's "instance and expense."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

      MCI objects to the definition of "DITKO MATERIAL" insofar as it assumes that Ditko

"created" or "co-created" certain comic book stories, which implies unfound legal conclusions.

MCI further objects to this Request on the grounds that it is overbroad, unduly burdensome, and

calls for a legal conclusion.  Subject to and without waiving these specific objections and

General Objections, MCI will produce non-privileged documents in its possession, custody, or

control that are responsive to this Request, if any, that are identified through a reasonably

diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS that evidence or reflect an assignment to Marvel Entertainment

Group, Inc. of the copyright in the WORKS before 1994.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

MCI objects to this Request on the grounds that "reflect[ing]" an assignment is vague and

ambiguous, and MCI interprets "reflect" as having the same meaning as "evidence" as to this

Request.  Subject to and without waiving this specific objection and the General Objections,

MCI will produce non-privileged Agreements in its possession, custody, or control that are

responsive to this Request, if any, that are identified through a reasonably diligent inquiry and

not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS that MARVEL intends to use for any purpose in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

MCI objects to this Request on the ground that it is vague and ambiguous, overbroad,

unduly burdensome and calls for the production of documents protected by the attorney work-

product privilege.  MCI further states that it has not yet determined which documents it intends

to use for any purpose in this action, and reserves the right to supplement its production.  Subject

to and without waiving these specific objections and the General Objections, MCI will produce

responsive, non-privileged documents that it intends to rely on in this lawsuit which are not

otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS that support YOUR allegation in Paragraph 1 of the COMPLAINT that "Marvel assigned Steve Ditko stories to illustrate."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

MCI objects to the Request on the grounds that it is overbroad, unduly burdensome and calls for the production of documents protected by the attorney work-product privilege. MCI further states that it has not yet determined which documents on which it intends to rely to prove all the allegations in the complaint. Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS that support YOUR allegation in Paragraph 11 of the COMPLAINT that "[a]ny contributions Steve Ditko made were at Marvel's instance and expense."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

MCI objects to the Request on the grounds that it is overbroad, unduly burdensome and calls for the production of documents protected by the attorney work-product privilege. MCI further states that it has not yet determined which documents on which it intends to rely to prove all the allegations in the complaint. Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS that support YOUR allegation in Paragraph 12 of the COMPLAINT that "Marvel editorial staff had the right to exercise creative control over Steve Ditko's contributions."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

MCI objects to the Request on the grounds that it is overbroad, unduly burdensome and calls for the production of documents protected by the attorney work-product privilege. MCI further states that it has not yet determined which documents on which it intends to rely to prove all the allegations in the complaint. Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS that support YOUR allegation in Paragraph 12 of the COMPLAINT that "Marvel paid Steve Ditko a per-page rate for his contributions."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

MCI objects to the Request on the grounds that it is overbroad, unduly burdensome and calls for the production of documents protected by the attorney work-product privilege. MCI further states that it has not yet determined which documents on which it intends to rely to prove all the allegations in the complaint. Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS that support YOUR allegation in Paragraph 12 of the COMPLAINT that "[w]hen Steve Ditko worked for Marvel, he did so with the expectation that Marvel would pay him."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

MCI objects to the Request on the grounds that it is overbroad, unduly burdensome and calls for the production of documents protected by the attorney work-product privilege. MCI further states that it has not yet determined which documents on which it intends to rely to prove all the allegations in the complaint. Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS that support YOUR allegation in Paragraph 22 of the COMPLAINT that "[t]he Works were . . . created at Marvel's instance and expense."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

MCI objects to the Request on the grounds that it is overbroad, unduly burdensome and calls for the production of documents protected by the attorney work-product privilege. MCI further states that it has not yet determined which documents on which it intends to rely to prove all the allegations in the complaint. Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that are responsive to this Request, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 37:**

A full and complete copy of each of the following publications:

a.    *Amazing Fantasy* Vol. 1, No. 15;

b.    *Strange Tales* Vol. 1, Nos. 102-147;

c.    *Amazing Spider-Man* Vol. 1, Nos. 1-38;

d.    *The Fantastic Four Annual* Vol. 1, No. 1;

e.    *Strange Tales Annual* Vol. 1, No. 2; and

f.    *Amazing Spider-Man Annual* Vol. 1, Nos. 1-2.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

MCI objects to this Request as seeking documents equally within the defendant's

possession, custody, and control.  Subject to and without waiving this specific objection and the

General Objections, MCI will produce non-privileged documents in its possession, custody, or

control that are responsive to this Request, if any, that are identified through a reasonably

diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 38:**

DOCUMENTS reflecting any of STAN LEE's COMMUNICATIONS with comic book

readers and/or fans CONCERNING the WORKS and/or DITKO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and

seeks documents that are not relevant to any issue in this action and are not reasonably calculated

to lead to the discovery of admissible evidence.  Further responding, MCI objects to the

definition of "STAN LEE" as overbroad and burdensome insofar as it includes "any and all

present or former agents, employees, representatives, attorneys, accountants, investigators, or

any other person, acting or purporting to act on Stan Lee's behalf." MCI interprets "Stan Lee" to mean Stan Lee himself. MCI further objects insofar as the Request seeks publicly available "Bullpen Bulletins," responses to letters to the Editor, or similarly published communications equally within the defendant's possession, custody, and control. MCI does not agree to search for and produce these publicly available documents. Subject to these specific objections and the General Objections, MCI states that it will produce any non-privileged, responsive documents reflecting communications from Stan Lee to comic book readers and/or fans in its possession, custody, or control that relate to the Works and/or Ditko's work for MCI from 1961 to 1976, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS CONCERNING the five-page story entitled "Doctor Strange Master of Black Magic!" that was published and embodied in *Strange Tales* Vol. 1, No. 110.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and—insofar as it calls for the production of "all" documents—seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence. Further responding, MCI objects to the Request as imposing a burden grossly disproportionate to the needs of this case insofar as it requires searching for documents from approximately sixty years ago. Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that relate to the creation of "Doctor Strange Master of Black Magic!," if any,

that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS that evidence or reflect MARVEL's alleged right to exercise control over DITKO's creation of the five-page story entitled "Doctor Strange Master of Black Magic!" that was published and embodied in *Strange Tales* Vol. 1, No. 110.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Subject to and without waiving the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that evidence or reflect its right to exercise control over Ditko's contributions to the story "Doctor Strange Master of Black Magic!", if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS CONCERNING the reason(s) DITKO stopped illustrating comic books published by MARVEL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

MCI objects to this Request on the grounds that it seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged documents in its possession, custody, or control that purport to relate to the reason(s) Ditko stopped working for MCI, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 42:**

All interviews CONCERNING any of the WORKS or any character(s) included therein.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

MCI objects to this Request on the ground that it is vague and ambiguous, overbroad, and unduly burdensome to the extent it requires production of documents involving "any character(s)" included in the WORKS. MCI also objects to this Request as seeking documents equally within the defendant's possession, custody, and control. MCI further objects to this Request on the ground that it calls for the production of documents protected by the attorney work-product privilege. Subject to and without waiving these specific objections and the General Objections, MCI will produce responsive, non-privileged documents that it intends to rely on in this lawsuit and which are not otherwise subject to a protective order or confidentiality requirement. In addition, again subject to and without waiving these specific objections and the General Objections, MCI has identified a number of introductions to books published by Marvel that either were written by Steve Ditko, Gene Colan, Don Heck, Don Rico, or Larry Lieber and/or contain interviews from such individuals and MCI will produce these introductions.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS CONCERNING any royalties MARVEL paid to DITKO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

MCI objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any issue in this action by seeking documents that are unrelated to the Works. MCI further objects to the term "royalties" as vague and ambiguous. Subject to and without waiving these specific objections and the General Objections, MCI will produce non-privileged responsive documents in its possession, custody, or control that reflect

any payments to Ditko, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS CONCERNING any payment(s) by MARVEL to DITKO in connection with any film or television program(s) that is based, in whole or in part, on any of the WORKS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Subject to and without waiving the General Objections, MCI will produce non-privileged responsive documents in its possession, custody, or control that reflect any payments to Ditko, if any, that are identified through a reasonably diligent inquiry and not otherwise subject to a protective order or confidentiality requirement.

Dated:    May 5, 2022                    **O'MELVENY & MYERS LLP**


By: */s/ Daniel M. Petrocelli*
                    Daniel M. Petrocelli

Daniel M. Petrocelli*
dpetrocelli@omm.com
Molly M. Lens
mlens@omm.com
Danielle Feuer*
dfeuer@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Allen Burton
aburton@omm.com
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Kendall Turner*
kendallturner@omm.com
1625 I Street NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

* Pro hac vice pending

*Attorneys for Marvel Characters, Inc.*