# Exhibit 28

Marc Toberoff (MT 4862)
*mtoberoff@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Pacific Coast Hwy, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Patrick S. Ditko, Administrator of the*
*Estate of Stephen J. Ditko*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARVEL CHARACTERS, INC., | Case No.: 1:21-cv-07957-LAK |
| Plaintiff, | Hon. Lewis A. Kaplan |
| v. | |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko, | **DEFENDANT'S ANSWER & COUNTERCLAIM** |
| Defendant. | <u>DEMAND FOR JURY TRIAL</u> |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko, | |
| Counterclaimant, | |
| v. | |
| MARVEL CHARACTERS, INC. and DOES 1-10, inclusive, | |
| Counterclaim-Defendants. | |

## NATURE OF THE ACTION

1.      Defendant Patrick S. Ditko ("Patrick Ditko" or "Defendant"), as the Administrator of the estate of Stephen J. Ditko ("Steve Ditko"), admits only that he has exercised Steve Ditko's termination rights under the United States Copyright Act (the "1976 Act") by serving notices of termination on plaintiff Marvel Characters, Inc. ("MCI" or "Plaintiff") regarding comic book characters and stories created or co-created by Steve Ditko, and that MCI has brought this civil action for declaratory relief as set forth in its Complaint, but Defendant otherwise denies the allegations in paragraph 1.

2.      Defendant admits only that the district court in *Marvel Worldwide, Inc. v. Kirby*, granted Marvel Worldwide, Inc. summary judgment against the statutory heirs of Jack Kirby, 777 F. Supp. 2d 720 (S.D.N.Y. 2011), *aff'd in part*, 726 F.3d 119 (2d Cir. 2013), and to the extent relevant, if any, respectfully refers the Court to these decisions for their contents, but Defendant otherwise denies the allegations in paragraph 2.

3.      Defendant respectfully refers the Court to *In re Marvel Entertainment Grp.*, 254 B.R. 817 (D. Del. 2000) for its contents, to the extent relevant, if any, but Defendant otherwise denies the allegations in paragraph 3.

4.      Defendant admits only that that MCI has brought this civil action for declaratory relief pursuant to 28 U.S.C. § 2201, as set forth in its Complaint, but Defendant otherwise denies the allegations in paragraph 4.

## PARTIES

5.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5, and on that basis denies the same.

6.      Admitted.

1

## JURISDICTION AND VENUE

7.      Defendant admits only that Plaintiff purports to bring an action for declaratory relief under 28 U.S.C. §§ 2201, *et seq*., and under the 1976 Act, 17 U.S.C. §§ 101, *et seq*. Paragraph 7 otherwise contains conclusions of law as to which no responsive pleading is required.

8.      Defendant admits only that Patrick Ditko holds the statutory termination rights of Steve Ditko under the 1976 Act. Paragraph 8 otherwise contains conclusions of law as to which no responsive pleading is required.

9.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 9, and on that basis denies the same. Paragraph 9 otherwise contains conclusions of law as to which no responsive pleading is required.

## ALLEGATIONS

10.     Denied.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 and on that basis denies the same. Defendant respectfully refers the Court to all documents referred to in paragraph 14 for evidence of the contents thereof.

15.     Defendant admits that between approximately June 1 and July 16, 2021, Patrick Ditko, as the Administrator of the estate of Steve Ditko, duly served four notices of termination

on MCI and related entities, pursuant to 17 U.S.C. § 304 (c) and the regulations promulgated thereunder. Defendant otherwise respectfully refers the Court to the documents referred to in paragraph 15 for evidence of the contents thereof.

16. Defendant admits the allegations in paragraph 16 only to the extent such allegations accurately reflect the contents of documents, and respectfully refers the Court to such documents for evidence of the contents thereof.

17. Defendant admits the allegations in paragraph 17 only to the extent such allegations accurately reflect the contents of documents, and respectfully refers the Court to such documents for evidence of the contents thereof.

18. Admitted.

## COUNT I: ACTION FOR DECLARATORY RELIEF

### [As to the Validity of All Notices]

19. Defendant re-alleges and incorporates by reference paragraphs 1-18 inclusive of his Answer, as though fully set forth herein.

20. Admitted.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25, and on that basis denies the same.

26. Admitted.

27. Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the factual allegations contained in paragraph 27, and on that basis denies the same.

28.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 28, and on that basis denies the same. Paragraph 28 otherwise contains conclusions of law as to which no responsive pleading is required.

29.     Defendant denies the allegations contained in paragraph 29, except admits that MCI purports to seek a declaratory judgment pursuant to 28 U.S.C.§ 2201.

## PRAYER FOR RELIEF

A.     With respect to the relief requested in paragraph A. of the Prayer for Relief, Defendant specifically and generally denies that MCI is entitled to any of the relief requested in said paragraph.

B.     With respect to the relief requested in paragraph B. of the Prayer for Relief, Defendant specifically and generally denies that MCI is entitled to any of the relief requested in said paragraph.

C.     With respect to the relief requested in paragraph C. of the Prayer for Relief, Defendant specifically and generally denies that MCI is entitled to any of the relief requested in said paragraph.

## AFFIRMATIVE DEFENSES

Defendant hereby additionally alleges the following as affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1.     The Complaint fails to state a claim upon which the relief sought or any relief could be granted.

4

**SECOND AFFIRMATIVE DEFENSE**

**(Laches)**

2.      Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

**THIRD AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

3.      Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**

**(Unjust Enrichment)**

4.      The Complaint and each purported claim therein is barred, in whole or in part, by the equitable doctrine of unjust enrichment.

**FIFTH AFFIRMATIVE DEFENSE**

**(Claim Preclusion)**

5.      The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of *res judicata* or claim preclusion.

**SIXTH AFFIRMATIVE DEFENSE**

**(Issue Preclusion)**

6.      The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of collateral estoppel or issue preclusion.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Duress)**

7.      Plaintiff's claims are barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or

void because of duress.

## EIGHTH AFFIRMATIVE DEFENSE

### (Statute of Frauds)

8.      Plaintiff's claims are barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because of the Statute of Frauds.

## NINTH AFFIRMATIVE DEFENSE

### (Failure of Consideration)

9.      Plaintiff's claims are barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because the contract(s) lacked consideration.

## TENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

10.      The Complaint and each purported claim therein is barred, in whole or in part, by Plaintiff's failure to bring such claims within the governing statute of limitations.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Waiver)

11.      The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of waiver.

## TWELFTH AFFIRMATIVE DEFENSE

### (Acquiescence)

12.      The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of acquiescence.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Judicial Estoppel)

13.     The Complaint and each purported claim therein is barred, in whole or in part, by the equitable doctrine of judicial estoppel.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Equitable Estoppel)

14.     The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of equitable estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Defendant's Termination Notices Not Invalidated by Technical Errors)

15.     Under 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, Defendant's Termination Notices are not invalidated or curtailed due to technical errors or omissions, if any, since Defendant's intent to terminate all prior grants by Stephen J. Ditko of his copyright interests in all works listed in the Notices is made clear to Plaintiff in the Termination Notices timely served on Plaintiff.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Against Public Policy)

16.     Any contract alleged in the Complaint which is contrary to public policy is unenforceable, and any relief requested in the Complaint which is contrary to public policy should not be granted.

_____

17.     The Complaint fails to state the claims for relief therein with sufficient particularity to permit Defendant to discern and raise all appropriate defenses. Defendant may

have additional affirmative defenses available to him, which are not now fully known or of which Defendant is not fully aware. Defendant accordingly reserves the right to amend or supplement this answer with additional affirmative defenses after the same have been ascertained.

FOR THESE REASONS, Defendant prays that the Court dismiss all of Plaintiff's claim(s) and find for Defendant on Plaintiff's Count One, and that Defendant be awarded costs, including reasonable attorneys' fees under Section 505 of the United States Copyright Act, and pray for such other and further relief as this Court deems just and proper.

## COUNTERCLAIM

Counterclaimant Patrick S. Ditko, as the Administrator of the estate of Stephen J. Ditko (the "Ditko Estate" or "Counterclaimant"), for his Counterclaim against Marvel Characters, Inc. ("MCI" or "Counterclaim-Defendant") alleges as follows:

## NATURE OF THE ACTION

1.     Stephen J. Ditko ("Steve Ditko") was a renowned comic book author and artist best known for creating "Dr. Strange," co-creating "Spider-Man," and creating or co-creating numerous other iconic characters in various original comic book stories (the "Stories"), published in the 1960s by MCI's alleged predecessors. The United States Copyright Act of 1976, 17 U.S.C. §304 (c) ("Section 304(c)"), provides authors such as Steve Ditko and their estates with the right to recover their fair share of the U.S. copyright to the author's creative work, after a lengthy period, by statutorily terminating *without cause* prior transfer(s) of copyright within delineated time "windows."

2.     On June 1, 2021, June 8, 2021, and July 16, 2021, respectively, the Ditko Estate properly availed itself of its termination rights under Section 304(c) by serving MCI and their

affiliates, within the prescribed window, with four notices of termination ("Termination Notices") regarding Steve Ditko's author or co-author share of the Stories based on his creative material (the "Ditko Material"). The Termination Notices become effective in June – July 2023. This Counterclaim principally seeks a declaratory judgment that the Ditko Estate's Termination Notices are valid and effective under the Copyright Act.

3. The Supreme Court clearly elucidated the objective of the Copyright Act's termination provisions:

> The principal purpose of the [termination right] was to provide added benefits to authors ... to make the rewards for the creativity of authors more substantial. More particularly, the termination right was expressly intended to relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product. That general purpose is plainly defined in the legislative history and, indeed, is fairly inferable from the text of § 304 itself.

*Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985).

4. Congress recognized that publishers held far greater bargaining power and that, consequently, authors commonly agreed to one-sided grants, precluding them from sharing in their works' success. *Id.* The results were often supremely unfair, as when a work proved to have enduring commercial value but enriched *only* the publisher. Congress thus created termination rights to "safeguard[] authors against unremunerative transfers" made before their works were commercially exploited, and to give them a second chance to obtain a more equitable portion of their works' value when it is no longer conjectural. H.R. Rep. No. 94-1476, at 124; *see also N.Y. Times v. Tasini,* 533 U.S. 483, 496 n.1 (2001) (recognizing Congress' intent to adjust "the author/publisher balance" by an "inalienable authorial right to revoke a copyright transfer").

## JURISDICTION AND VENUE

5. This is an action for declaratory relief brought under 28 U.S.C. §§ 2201, *et seq.*,

and under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq*. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has personal jurisdiction over the Counterclaim-Defendant MCI because MCI is regularly doing business in the State of New York and in this district and maintains contacts within the State of New York and this district.

7.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a), because MCI is conducting business in this district and is subject to personal jurisdiction in this district.

## PARTIES

8.     Counterclaimant Patrick S. Ditko is an individual and a citizen of and resides in the State of New York, in the County of New York, and is and at all times has been a citizen of the United States. Counterclaimant is the brother of Steve Ditko and the Administrator of his estate.

9.     Counterclaimant is informed and believes and based thereon alleges that Counterclaim-Defendant MCI is a Delaware corporation, which has its principal place of business in Burbank, California, and which regularly conducts significant business in the State of New York.

10.     Counterclaimant is informed and believes and based thereon alleges that the fictitiously named Counterclaim-Defendants captioned hereinabove as Does 1 through 10, inclusive, and each of them, were in some manner responsible or legally liable for the actions, damages, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously named Counterclaim-Defendants, whether individual, corporate, associate, or otherwise are presently unknown to Counterclaimant, and Counterclaimant will amend this

Counterclaim to assert the true names and capacities of such fictitiously named Counterclaim-Defendants when the same have been ascertained. For convenience, each reference herein to MCI shall also refer to the Doe Counterclaim-Defendants and each of them.

11.     Counterclaimant is informed and believes and based thereon allege that each of the Counterclaim-Defendant and the Doe Counterclaim-Defendants was the agent, partner, servant, employee, or employer of each other, and that at all times herein mentioned, each of the Counterclaim-Defendant and the Doe Counterclaim-Defendants was acting within the course and scope of such employment, partnership and/or agency and that each is jointly and severally responsible for the damages hereinafter alleged.

## STATUTORY BACKGROUND

12.     The United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (the "Copyright Act"), provides an author with the inalienable right to recapture the copyright to the author's creative material, after a lengthy waiting period, by statutorily terminating without cause any prior express or implied transfer of such copyright. Termination is easily carried out by serving advance notice of termination on the original grantee or its successors and filing the notice with the U.S. Copyright Office, within delineated time "windows." 17 U.S.C. § 304(c).

13.     Section 304(c) provides for the termination of a pre-1978 transfer of rights under copyright by the author during a five (5) year period commencing fifty-six (56) years after the date the author's work first secured a statutory copyright (by registration or publication, whichever is earlier). *Id*. §§ 304(c)(3). The requisite notice of termination sets forth the "effective date" of termination, within the five-year termination "window," when the previously transferred rights under U.S. copyright will be recaptured by the author. Notice of termination may be served by the author, or if the author is deceased, by the author's statutorily defined heirs

or estate, at any time between ten (10) and two (2) years before the effective termination date. *Id*. § 304(c)(4)(A).

14.     True "works made for hire" are the sole exemption from the Copyrights Act's termination provisions. *Id*. § 304(c). Whether a work, created and published prior to January 1, 1978, is a "work made for hire," is determined under and is defined in Section 26 of the 1909 Copyright Act. Pub.L. 60-349.

15.     The termination right is the most important authorial right provided by the Copyright Act, short of copyright itself. Congress was therefore very protective of this right and, to that end, enacted a number of provisions to prevent any waiver or encumbrance of an author's termination interest. For instance, "[t]ermination of the [prior copyright] grant may be effected notwithstanding any agreement to the contrary [.]" *Id*. § 304(c)(5).

16.     Furthermore, "[h]armless errors in a [termination] notice that do not materially affect the adequacy of the information required to serve the purposes of . . . section [304(c)] of title 17, U.S.C. . . . . shall not render the notice invalid."  37 CFR § 201.10(e)(1).

17.     Congress also anticipated that the exercise of an author's termination right would usually result in a new license by the author or author's estate to the terminated grantee (here, MCI). To that end, Congress provided that "grantee" with the exclusive opportunity to re-license an author's recaptured copyright "after the notice or termination has been served," but before "the effective date of the termination." 17 U.S.C. § 304(c)(6)(D). The termination provisions thus reflect a deliberate balance of competing interests by Congress.

18.     Under the termination provisions, all "derivative works" created prior to a termination notice's effective termination date "may continue to be" distributed and exploited by the grantee or grantee's successor, just as before. 17 U.S.C. § 304(c)(6)(A). The Ditko Estate's

recovery of Steve Ditko's author or co-author share of the U.S. copyright to the Stories therefore does not prevent MCI and/or its licensees from continuing to freely exploit prior derivative works, including films, television series and merchandising.

19.     In addition, as to the Stories that were *co-authored* by Steve Ditko, MCI and/or its licensees can continue to freely exploit such Stories, including in new derivative works, even *after* the effective termination date(s), subject only to a duty to account to the Ditko Estate for an equitable share of proceeds therefrom, and this only in the unlikely event MCI does not enter into a preemptive new license with the estate regarding such works.

20.     Lastly, because the Copyright Act has *no extra-territorial application*, all rights to the Stories in all foreign territories, remain with MCI, notwithstanding the Termination Notices, providing additional incentives for the parties to cooperatively work together in the future.

21.     As a result, the Termination Notices, if held effective, will likely result in a new license from the Ditko Estate to MCI, but one which more fairly reflects the time-tested market value of Steve Ditko's creative material. Accordingly, the exercise of statutory termination rights does not prevent the further exploitation of these works by MCI; it simply allows the Ditko Estate to fairly participate in the financial benefits of Steve Ditko's creative efforts, just as Congress intended. H.R. Rep. No. 94-1476, at 124 (1976).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

22.     Steve Ditko is considered one of the great comic book creators, and throughout his career he authored or co-authored numerous original comic book stories that were published by a variety of different publishers.

### Steve Ditko's Creation of the Stories in 1962-1966

23.     Between 1962 and 1966 (the applicable "Period"), Steve Ditko created or co-

13

created a number of superhero characters, including but not limited to "Spider-Man" and "Doctor Strange," in the original illustrated comic book Stories, authored or co-authored by him, which are the subjects of the Ditko Estate's Termination Notices.

24. Because "work for hire" is the *only* exception to the Copyright Act's remedial termination provisions, MCI attempts to rewrite history in asserting that the Ditko Material was "work made for hire," owned at inception by MCI's alleged predecessors. This bears no relation, however, to the facts or realities of comic book publishing in the relevant Period.

25. By 1959, comic book publishing was on the brink of bankruptcy, due in large part to criticism in Fredric Wertham's book, "Seduction of the Innocent," the ensuing 1954 hearings before the Senate Subcommittee on Juvenile Delinquency, and the resulting censorship imposed by the "Comics Code Authority." Subsequently, the market for comic books underwent a severe contraction which endured well into the 1960s.

26. As such, the purported comic book publishing entities which MCI alleges are its predecessor(s) from this Period (individually and collectively, "MCIPP") were largely shell companies, of no resemblance to the structured, established company Marvel is today.

27. In 1962-63, for instance, the MCIPP did not even have their own office and consisted of one alleged employee with a small desk behind a partition in a room occupied by others. By 1964, the MCIPP had at best a tiny one or two-room office, and very few or no employees (depending on the MCIPP). The impecunious MCIPP fed the printing presses of other entities with inexpensive comic book material *purchased* for publication from a variety of "freelancers," like Steve Ditko, working from home on their own steam.

28. The Ditko Estate is informed and believes and based thereon alleges that after the Ditko Material was purchased by one such entity, it was published by a different entity in

14

varying periodicals (e.g., *Amazing Fantasy*, Vol. 1, No. 15; *Strange Tales*, Vol. 1, Nos. 102-147; *Amazing Spider-Man*, Vol. 1, Nos. 1-38; *The Fantastic Four Annual*, Vol. 1, No. 2; *Strange Tales Annual*, Vol. 1, No. 2; and *Amazing Spider-Man Annual*, Vol. 1, Nos. 1-2).

29.     The Ditko Estate is further informed and believes and based thereon alleges that the copyrights in these periodicals, containing the Stories, were registered with the United States Copyright Office by and in the name of still different entities (e.g., Atlas Magazines, Inc., Non-Pareil Publishing Corporation, and Vista Publications, Inc.). As such, there was little continuity or substance to the use or participation of these revolving entities or MCIPP to support MCI's conclusion that the Ditko Material qualified as "work made for hire" under and as defined in the 1909 Copyright Act.

30.     Notably, even the MCIPP's contemporaneous copyright registrations by these assorted shell companies did not list or describe their copyrighted periodicals or the Stories therein, as "works made for hire," as was common legal practice for copyright registrations of actual "works for hire."

31.     As a freelancer, Steve Ditko created the Ditko Material, used in the stories he authored or co-authored, largely on his own and at his own expense. The MCIPP conspicuously never entered into any employment or any other engagement agreement with Steve Ditko.

32.     Steve Ditko was *not* employed by any MCIPP, either as a traditional employee *or* even as an independent contractor.

33.     Steve Ditko was thus not guaranteed a salary, wage or compensation for his time or services by any MCIPP, which purposefully avoided such legally binding financial obligations. And because the MCIPP had no employment agreement with Steve Ditko, the MCIPP also had no legal right to control his *creation* of the Ditko Material, at his home, on his

15

own time, and at his own expense.

34.     The MCIPP, by design, was also under no legal obligation to accept for publication and pay for the material created by Steve Ditko, or by any other freelancer. Accordingly, like many comic book writers and artists during this time of economic uncertainty, Steve Ditko worked hand to mouth, at his own premises, using his own instruments and materials, and he thereby bore the entire financial risk of *creating* the Ditko Material in question.

35.     Upon completion, Steve Ditko submitted his material to the MCIPP. If the MCIPP chose, in its sole discretion, to accept it for publication, it purchased the Ditko Material by the page. The MCIPP did *not* pay for submitted pages that it rejected, in its sole discretion, nor did it own such rejected material, underscoring that the nature of this was a purchase, as a matter of law, subsequent to creation, and that the Ditko Material was not "work made for hire," owned at inception by an MCIPP.

36.     The Ditko Estate is informed and believes and based thereon alleges that accordingly, the back of MCIPP checks issued to buy the Ditko Material contained a printed legend, which stated that by endorsement of the check, the payee acknowledges his *assignment* of the copyright in his material—the legal opposite of a "work for hire."

37.     Once the MCIPP purchased the Ditko Material, it, of course, was free to do with it what it pleased, including any alteration or additions thereto, and the copyright registration of the periodicals, containing the Stories authored or co-authored by Steve Ditko.

38.     One MCIPP allegedly employed Stan Lee. However, Lee's creative contributions, including to the Ditko Works, if any, were made by Lee as a freelance writer, not as an MCIPP employee. Thus, separate and apart from Lee's employee salary, the MCIPP always paid Lee by the page for his creative contributions, just like it did Steve Ditko and the other freelancers that

16

sold their material to the MCIPP.

39.    The MCIPP did not assign Steve Ditko stories to illustrate.

40.    For instance, *Dr. Strange* originated with a complete illustrated five-page story with a panel/page script, solely authored by Steve Ditko "on spec" and on his own. Accordingly, in a letter published in The Comic Reader #16 (February 23, 1963), Stan Lee wrote:

> "Well, we have a new character in the works for Strange Tales, just a 5-page filler named Dr. Strange …'Twas Steve [Ditko]'s idea."

41.    This was likewise confirmed by Steve Ditko in a 2007 essay:

> "On my own, I brought in to Lee a five-page, penciled story with a page/panel script of my idea of a new, different kind of character for variety … My character wound up being named Dr. Strange because he would appear in Strange Tales."

42.    Steve Ditko would both author and plot the stories of the Ditko Works and illustrate the Ditko Works. Thereafter, Stan Lee would add dialogue and captions. In fact, under the so-called "Marvel Method" at the time, an illustrator was looked upon to originate and plot his own stories.

43.    Of Steve Ditko's work in general, Stan Lee, wrote in his published book <u>Doctor Strange Master of the Universe</u> (Fireside Press, 1979):

> "Steve Ditko is one of the best plot men in the business. After Steve did the hard part — after he dreamed up the story and illustrated it … I then got to do the fun part. I wrote … the dialog balloons …".

44.    With respect to *Spiderman*, Stan Lee similarly stated in an interview, published in the New York Herald Tribune (January 9, 1966):

> "Steve Ditko, the artist, has been doing the stories . . . making up his own stories. He won't let anyone else ink his drawings either. He just drops off the finished pages with notes at the margins and I fill in the dialogue. I never know what he'll come up with next, but it's interesting to work that way."

45.    Notwithstanding that Steve Ditko created and plotted his own stories, the MCIPP

did not bother to pay him anything for this. Instead, Stan Lee habitually took the writing credit such that the MCIPP paid him the "writer's share" of money paid to purchase such freelance stories.

46.    Given the above facts and circumstances, the Ditko Material was not "work made for hire" for any MCIPP under the 1909 Copyright Act.

**Steve Ditko's Estate Exercises His Termination Rights Under the Copyright Act**

47.    On June 1, 2021, June 8, 2021, and July 16, 2021, respectively, the Ditko Estate served by first class mail, postage prepaid, the Termination Notices, pursuant to the Copyright Act, 17 U.S.C. § 304(c) on MCI and its affiliates, duly terminating all express or implied grants or transfers by Steve Ditko to the MCIPP of his copyright interests in the Stories. Copies of these Termination Notices are attached hereto as Exhibit "A."

48.    The copyrights to the periodicals containing the Stories were renewed by MCI or its alleged predecessor(s) with the United States Copyright Office, and such renewal registrations served to renew the copyrights to the constituent Stories.

49.    The Termination Notices were drafted and served on MCI and related entities, and submitted to the United States Copyright Office for recordation, all in full compliance with the Copyright Act, 17 U.S.C. § 304(c), and the regulations promulgated thereunder by the Register of Copyrights, 37 C.F.R. § 201.10.

50.    The Termination Notices will terminate, on the respective effective termination dates set forth therein, all operative prior grants or transfers by Steve Ditko to an MCIPP of his copyright interest as an author or co-author of the Stories.

51.    On the effective termination dates, the Ditko Estate will duly recover ownership of Steve Ditko's copyright interest as an author or co-author of the Stories for their extended

renewal terms.

## COUNT ONE

(Declaratory Relief: Termination Notices Are Valid and Effective Under 17 U.S.C. § 304(c))

52.     The Ditko Estate re-alleges and incorporates by reference paragraphs 1 through 51 of this Counterclaim inclusive, as though fully set forth herein.

53.     By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between the parties under federal copyright law, concerning the validity and effect of the Termination Notices.

54.     The Ditko Estate contends and MCI denies that the Termination Notices are valid and effective under the Copyright Act, 17 U.S.C. § 304(c).

55.     Steve Ditko was never employed by MCI's alleged predecessor(s) as either an employee or as an independent contractor.

56.     MCI's alleged predecessor(s) therefore had no legal right to control Steve Ditko's creation of the Ditko Material, and once completed, it had no legal obligation to pay Steve Ditko for his material unless it was accepted, in its sole discretion, for publication.

57.     The Ditko Material was therefore not created by Steve Ditko at the "instance and expense" of MCI's alleged predecessor(s), and instead was purchased subsequent to Steve Ditko's creation of the material on a freelance basis at his own expense.

58.     The Ditko Material, comprising his contribution to the Stories, was therefore by no means "work made for hire" under and as defined in Section 26 of the 1909 Copyright Act. Pub.L. 60-349.

59.     A declaration of the Court is necessary and appropriate at this time so that the parties may know their respective rights and obligations regarding the Termination Notices and

19

Stories.

60.    Accordingly, the Ditko Estate seeks pursuant to 28 U.S.C. § 2201 a declaratory judgment from this Court that its Termination Notices are valid and effective under the Copyright Act.

## PRAYER FOR RELIEF

WHEREFORE, the Ditko Estate prays for a judgment against MCI as follows:

1.    For a declaration that its Termination Notices are valid under the Copyright Act, and as to the parties' rights and obligations regarding the Stories;

2.    For reasonable attorney's fees and costs of suit; and

3.    For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Date: December 7, 2021                By: _____ */s/ Marc Toberoff* _____
                                              Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
*mtoberoff@toberoffandassociates.com*
23823 Pacific Coast Hwy, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Patrick S. Ditko*,
Administrator of the Estate of Stephen J. Ditko

20

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendant and

Counterclaimant Patrick S. Ditko hereby demands a trial by jury on each claim for relief and/or

issue that is triable by a jury.

Respectfully submitted,

Date: December 7, 2021

By: _____ */s/ Marc Toberoff* _____
                    Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
*mtoberoff@toberoffandassociates.com*
23823 Pacific Coast Hwy, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Patrick S. Ditko*,
Administrator of the Estate of Stephen J. Ditko

# EXHIBIT A

## NOTICE OF TERMINATION

## "SPIDER-MAN!"

To:  Marvel Entertainment, LLC
     Marvel Worldwide, Inc.
     Marvel Property, Inc.
     Marvel Characters, Inc.
     1290 Avenue of the Americas
     New York, NY 10104
     Attn: John Turitzin, Chief Counsel
           Eli Bard, Deputy Chief Counsel

     Marvel Studios, LLC
     MVL Rights, LLC
     MVL Development, LLC
     Marvel Characters, Inc.
     500 South Buena Vista Street
     Burbank, CA 91521
     Attn: David Galluzzi, Chief Counsel

     The Walt Disney Company
     500 South Buena Vista Street
     Burbank, CA 91521
     Attn: Alan Braverman, General Counsel

     Marvel Animation Inc.
     623 Circle Seven Drive
     Glendale, CA 91201
     Attn: Legal Department

PLEASE TAKE NOTICE that pursuant to Section 304(c) of the United States Copyright Act (17 U.S.C. § 304(c)) and the regulations issued thereunder by the Register of Copyrights, 37 C.F.R. § 201.10, Patrick S. Ditko, Administrator of the Estate of Stephen J. Ditko, being the person entitled to terminate copyright transfers pursuant to said statutory provisions, hereby terminates all pre-January 1, 1978 exclusive or non-exclusive grants of the transfer or license of the renewal copyright(s) in and to the illustrated comic book story entitled "Spider-Man!," which was authored or co-authored by Stephen J. Ditko (a.k.a. Steve Ditko) and published in *Amazing Fantasy* Vol. 1, No. 15, and sets forth in connection therewith the following:

1.      The names and addresses of the grantees and/or successors in title whose rights are being terminated are as follows: Marvel Entertainment, LLC, Marvel Worldwide, Inc., Marvel Property, Inc., Marvel Characters, Inc., 1290 Avenue of the Americas, New York, NY 10104; Marvel Studios, LLC, MVL Rights, LLC, MVL Development, LLC, Marvel Characters, Inc., 500 South Buena Vista Street, Burbank, CA 91521; The Walt Disney Company, 500 South Buena

Vista Street, Burbank, CA 91521; and Marvel Animation Inc., 623 Circle Seven Drive, Glendale, CA 91201. Pursuant to 37 C.F.R. Section 201.10(d), service of this notice is being made by First Class Mail, postage pre-paid to the above grantees or successors at the addresses shown.

2.  The copyrighted work (the "Work") to which this Notice of Termination applies is the illustrated two-part comic book story entitled "Spider-Man!," authored or co-authored by Stephen J. Ditko (a.k.a. Steve Ditko)[1] and published and embodied in *Amazing Fantasy* Vol. 1, No. 15, (and includes this issue's cover page), which issue was registered with the U.S. Copyright Office by Atlas Magazines, Inc. on June 5, 1962 under Copyright Registration No. B976775, renewed on November 20, 1990 under Copyright Renewal Registration No. RE0000497761, and includes all the characters, story elements, and/or indicia appearing therein.[2]

3.  The grant and/or transfer to which this Notice of Termination applies is made in that certain copyright assignment(s) on the back of the check(s) issued by Marvel Entertainment, LLC's predecessor company to Stephen J. Ditko with respect to the above-listed Work, which was

---

[1] This Notice of Termination also applies to all material authored or co-authored by Stephen J. Ditko (in any and all medium(s), whenever created) that was reasonably associated with the Work and was registered with the United States Copyright Office and/or published within the termination time window, as defined by 17 U.S.C. § 304(c) and the effective date of this Notice of Termination. This Notice of Termination likewise includes any character, story element, or indicia reasonably associated with the Work, including, without limitation, Spider-Man (a.k.a. Peter Parker), Bluebird (a.k.a. Sally Avril), Uncle Ben (Parker), The Burglar, Aunt May (Parker), Liz Allan, Raymond Warren, Bernard O'Brien, Seymour O'Reilly, Jessica Jones, Eric Schwinner, Crusher Hogan, Max Shiffman, Chet Huntley, Baxter Bigelow, and Flash Thompson. Every reasonable effort has been made to find and list herein all such material. Nevertheless, if any such material has been omitted, such omission is unintentional and involuntary, and this Notice also applies to each and every such omitted material.

[2] Pursuant to 37 C.F.R. § 201.10(b)(1)(iii), this Notice of Termination includes the name of at least one author of the Work to which this Notice of Termination applies. The listing herein of any corporation as copyright claimant is done per Copyright Office records, and is not to be construed as an admission that any given work is or was a "work made for hire," nor is anything else herein to be construed as any such admission. Nothing contained in this Notice of Termination shall be construed to in any way limit or waive any right or remedy that Patrick S. Ditko, as Administrator of the Estate of Stephen J. Ditko, might have, at law or in equity, with respect to the subject matter hereof, all of which is hereby expressly reserved.

2

dated on or about the time of the respective publication of such Work.[3]

    4.      The effective date of termination shall be June 2, 2023.

    5.      Stephen J. Ditko died on June 29, 2018, with no surviving spouse, children or grandchildren. As such, Patrick S. Ditko, as Administrator of the Estate of Stephen J. Ditko, owns the termination interest of Stephen J. Ditko pursuant to 17 U.S.C. § 304(c)(2)(D), and is the person entitled to exercise the termination right as to the grant(s) identified herein. This Notice has been signed by all persons needed to terminate said grant(s) under 17 U.S.C. § 304(c).

Dated: June 1, 2021                  TOBEROFF & ASSOCIATES, P.C.

                                       Marc Toberoff

                                       23823 Malibu Road, Suite 50-363
                                       Malibu, California 90265
                                       Tel: (310) 246-3333

                                       As counsel for and on behalf of Patrick S. Ditko,
                                       Administrator of the Estate of Stephen J. Ditko

---

[3] This Notice of Termination also applies to each and every grant or alleged grant by Stephen J. Ditko of rights under copyright in and to the Work that falls within the applicable termination time window (defined by 17 U.S.C. § 304(c) and the effective date of this Notice of Termination). Every reasonable effort has been made to find and list herein every such grant and/or transfer. Nevertheless, if any such grant and/or transfer has been omitted, such omission is unintentional and involuntary, and this Notice of Termination applies as well to each and every such omitted grant and/or transfer.

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document described as

NOTICE OF TERMINATION to be served this 1st day of June, 2021, by First Class Mail,

postage prepaid, upon each of the following:

Marvel Entertainment, LLC
Marvel Worldwide, Inc.
Marvel Property, Inc.
Marvel Characters, Inc.
1290 Avenue of the Americas
New York, NY 10104
Attn: John Turitzin, Chief Counsel
 Eli Bard, Deputy Chief Counsel

Marvel Studios, LLC
MVL Rights, LLC
MVL Development, LLC
Marvel Characters, Inc.
500 South Buena Vista Street
Burbank, CA 91521
Attn: David Galluzzi, Chief Counsel

The Walt Disney Company
500 South Buena Vista Street
Burbank, CA 91521
Attn: Alan Braverman, General Counsel

Marvel Animation Inc.
623 Circle Seven Drive
Glendale, CA 91201
Attn: Legal Department

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st

day of June, 2021, at Malibu, California.

Breck Kadaba
Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Counsel for Patrick S. Ditko,
Administrator of the Estate of Stephen J. Ditko

# NOTICE OF TERMINATION

## "DOCTOR STRANGE"

To: Marvel Entertainment, LLC      Marvel Studios, LLC
Marvel Worldwide, Inc.      MVL Rights, LLC
Marvel Property, Inc.      MVL Development, LLC
Marvel Characters, Inc.      Marvel Characters, Inc.
1290 Avenue of the Americas      500 South Buena Vista Street
New York, NY 10104      Burbank, CA 91521
Attn: John Turitzin, Chief Counsel      Attn: David Galluzzi, Chief Counsel
       Eli Bard, Deputy Chief Counsel

The Walt Disney Company      Marvel Animation Inc.
500 South Buena Vista Street      623 Circle Seven Drive
Burbank, CA 91521      Glendale, CA 91201
Attn: Alan Braverman, General Counsel      Attn: Legal Department

PLEASE TAKE NOTICE that pursuant to Section 304(c) of the United States Copyright Act (17 U.S.C. § 304(c)) and the regulations issued thereunder by the Register of Copyrights, 37 C.F.R. § 201.10, Patrick S. Ditko, Administrator of the Estate of Stephen J. Ditko, being the person entitled to terminate copyright transfers pursuant to said statutory provisions, hereby terminates all pre-January 1, 1978 exclusive or non-exclusive grants of the transfer or license of the renewal copyright(s) in and to the five-page, penciled story (with a page/panel script), authored by Stephen J. Ditko, and the illustrated comic book story based thereon entitled "Doctor Strange Master of Black Magic!," authored or co-authored by Stephen J. Ditko (a.k.a. Steve Ditko), and published in *Strange Tales* Vol. 1, No. 110, and sets forth in connection therewith the following:

1.      The names and addresses of the grantees and/or successors in title whose rights are being terminated are as follows: Marvel Entertainment, LLC, Marvel Worldwide, Inc., Marvel Property, Inc., Marvel Characters, Inc., 1290 Avenue of the Americas, New York, NY 10104; Marvel Studios, LLC, MVL Rights, LLC, MVL Development, LLC, Marvel Characters, Inc., 500

South Buena Vista Street, Burbank, CA 91521; The Walt Disney Company, 500 South Buena

Vista Street, Burbank, CA 91521; and Marvel Animation Inc., 623 Circle Seven Drive, Glendale,

CA 91201. Pursuant to 37 C.F.R. § 201.10(d), service of this notice is being made by First Class

Mail, postage pre-paid to the above grantees or successors at the addresses shown.

  2.  The copyrighted work(s) (the "Work(s)") to which this Notice of Termination

applies are the five-page, penciled story (with a page/panel script), authored by Stephen J. Ditko,

and the illustrated comic book story based thereon entitled "Doctor Strange Master of Black

Magic!," which was authored or co-authored by Stephen J. Ditko (a.k.a. Steve Ditko),[1] and the

Work(s) include all of the characters, story elements, and/or indicia appearing therein.[2] The

Work(s) were published and embodied in *Strange Tales* Vol. 1, No. 110, which was registered

with the U.S. Copyright Office by Vista Publications, Inc. on April 9, 1963, under Copyright

Registration No. B34036, and renewed on December 27, 1991, under Copyright Renewal

Registration No. RE0000559192.

  3.  The grant(s) and/or transfer(s) to which this Notice of Termination applies is (are)

made in that/those certain copyright assignment(s) on the back of the check(s) issued by Marvel

---

[1] This Notice of Termination also applies to all material authored or co-authored by Stephen J. Ditko (in any and all medium(s), whenever created) that was reasonably associated with the Work(s) and was registered with the United States Copyright Office and/or published within the termination time window, as defined by 17 U.S.C. § 304(c), and the effective date of this Notice of Termination. This Notice of Termination likewise includes any character, story element, or indicia reasonably associated with the Work(s) including, without limitation, Doctor Strange (a.k.a. Stephen Strange), Wong, the Ancient One (a.k.a. the Master, a.k.a. Yao), Nightmare, Crang and Dreamstalker. Every reasonable effort has been made to find and list herein all such material. Nevertheless, if any such material has been omitted, such omission is unintentional and involuntary, and this Notice also applies to each and every such omitted material.

[2] Pursuant to 37 C.F.R. § 201.10(b)(1)(iii), this Notice of Termination includes the name of at least one author of the Work(s) to which this Notice of Termination applies. The listing herein of any corporation as copyright claimant is done per Copyright Office records, and is not to be construed as an admission that any given work is or was a "work made for hire," nor is anything else herein to be construed as any such admission. Nothing contained in this Notice of Termination shall be construed to in any way limit or waive any right or remedy that Patrick S. Ditko, as Administrator of the Estate of Stephen J. Ditko, may have, at law or in equity, with respect to the subject matter hereof, all of which is hereby expressly reserved.

Entertainment, LLC's predecessor company to Stephen J. Ditko, regarding the above-listed Work(s), which was (were) dated on or about the time of the publication of such Work(s).[3]

    4.      The effective date of termination shall be June 9, 2023.

    5.      Stephen J. Ditko died on June 29, 2018, with no surviving spouse, children or grandchildren. Patrick S. Ditko, as Administrator of the Estate of Stephen J. Ditko, owns the termination interest of Stephen J. Ditko pursuant to 17 U.S.C. § 304(c)(2)(D), and is the person entitled to exercise the termination right as to the grant(s) identified herein. This Notice has been signed by all persons needed to terminate said grant(s) under 17 U.S.C. § 304(c).

Dated: June 8, 2021                        TOBEROFF & ASSOCIATES, P.C.

                                      Marc Toberoff

                                      23823 Malibu Road, Suite 50-363
                                      Malibu, California 90265
                                      Tel: (310) 246-3333

                                      As counsel for and on behalf of Patrick S. Ditko,
                                      Administrator of the Estate of Stephen J. Ditko

---

[3] This Notice of Termination also applies to each and every grant or alleged grant by Stephen J. Ditko of rights under copyright in and to the Work(s) that falls within the applicable termination time window (defined by 17 U.S.C. § 304(c) and the effective date of this Notice of Termination). Every reasonable effort has been made to find and list herein every such grant and/or transfer. Nevertheless, if any such grant and/or transfer has been omitted, such omission is unintentional and involuntary, and this Notice of Termination applies as well to each and every such omitted grant and/or transfer.

3

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document described as

NOTICE OF TERMINATION to be served this 8th day of June, 2021, by First Class Mail,

postage prepaid, upon each of the following:

To:   Marvel Entertainment, LLC            Marvel Studios, LLC
      Marvel Worldwide, Inc.               MVL Rights, LLC
      Marvel Property, Inc.                MVL Development, LLC
      Marvel Characters, Inc.              Marvel Characters, Inc.
      1290 Avenue of the Americas          500 South Buena Vista Street
      New York, NY 10104                   Burbank, CA 91521
      Attn: John Turitzin, Chief Counsel   Attn: David Galluzzi, Chief Counsel
           Eli Bard, Deputy Chief Counsel

      The Walt Disney Company              Marvel Animation Inc.
      500 South Buena Vista Street         623 Circle Seven Drive
      Burbank, CA 91521                    Glendale, CA 91201
      Attn: Alan Braverman, General Counsel  Attn: Legal Department


I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th

day of June, 2021, at Malibu, California.



Breck Kadaba
Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Counsel for Patrick S. Ditko,
Administrator of the Estate of Stephen J. Ditko

# NOTICE OF TERMINATION

## "SPIDER-MAN"

To:  Marvel Entertainment, LLC          Marvel Studios, LLC
Marvel Worldwide, Inc.            MVL Rights, LLC
Marvel Property, Inc.               MVL Development, LLC
Marvel Characters, Inc.            Marvel Characters, Inc.
1290 Avenue of the Americas     500 South Buena Vista Street
New York, NY 10104             Burbank, CA 91521
Attn: John Turitzin, Chief Counsel   Attn: David Galluzzi, Chief Counsel
      Eli Bard, Deputy Chief Counsel

The Walt Disney Company      Marvel Animation Inc.
500 South Buena Vista Street     623 Circle Seven Drive
Burbank, CA 91521              Glendale, CA 91201
Attn: Alan Braverman, General Counsel  Attn: Legal Department

PLEASE TAKE NOTICE that pursuant to Section 304(c) of the United States Copyright Act (17 U.S.C. § 304(c)) and the regulations issued thereunder by the Register of Copyrights, 37 C.F.R. § 201.10, Patrick S. Ditko, Administrator of the Estate of author Stephen J. Ditko, being the person entitled to terminate copyright transfers by the author pursuant to said statutory provisions, hereby terminates all pre-January 1, 1978 exclusive or non-exclusive grants of the transfer or license of the renewal copyright(s) in and to the illustrated comic book stories, featuring the character Spider-Man (a.k.a. Peter Parker), authored or co-authored by Stephen J. Ditko (a.k.a. Steve Ditko), and published in the respective comic book issues listed in paragraph 2 of this Notice, all as set forth below:

1.      The names and addresses of the grantees and/or successors in title whose rights are being terminated are as follows: Marvel Entertainment, LLC, Marvel Worldwide, Inc., Marvel Property, Inc., Marvel Characters, Inc., 1290 Avenue of the Americas, New York, NY 10104; Marvel Studios, LLC, MVL Rights, LLC, MVL Development, LLC, Marvel Characters, Inc., 500

South Buena Vista Street, Burbank, CA 91521; The Walt Disney Company, 500 South Buena

Vista Street, Burbank, CA 91521; and Marvel Animation Inc., 623 Circle Seven Drive, Glendale,

CA 91201. Pursuant to 37 C.F.R. Section 201.10(d), service of this Notice is being made by First

Class Mail, postage pre-paid to the above grantees or successors at the addresses shown.

      2.      The copyrighted work(s) to which this Notice of Termination applies (individually,

"Work"; collectively, the "Works") are the illustrated comic book stor(ies), featuring the character

Spider-Man (a.k.a. Peter Parker), authored or co-authored by Stephen J. Ditko (a.k.a. Steve Ditko)[1]

along with all the characters, story elements, and/or indicia appearing therein, which stories were

published and embodied in the comic book issues identified as follows:

---

[1] This Notice of Termination also applies to all material authored or co-authored by Stephen J. Ditko (in any and all medium(s), whenever created) that was reasonably associated with these Works and was registered with the United States Copyright Office and/or published within the termination time window, as defined by 17 U.S.C. § 304(c) and the effective date of this Notice of Termination. This Notice of Termination likewise includes any character, story element, or indicia reasonably associated with these Works, including, without limitation, Spider-Man (a.k.a. Peter Parker), Aunt May (Parker, née Reilly), J. Jonah Jameson, The Burglar, John Jameson, Maxie Shiffman, Liz Allan, Sally Avril, Vulture (a.k.a. Adrian Toomes), Eleonore Brant, Flash Thompson (a.k.a. Eugene Thompson, Raymond Warren, Human Torch (a.k.a. Johnny Storm), Doctor Octopus (a.k.a. Otto Octavius), Charles Buchanan, Betty Brant, Sandman (a.k.a. William Baker), Principal Davis, Seymour O'Reilly, Jessica Jones, Doctor Doom (a.k.a. Victor von Doom), Mister Fantastic (a.k.a. Reed Richards), Invisible Girl (a.k.a. Sue Storm), Thing (a.k.a. Ben Grimm), Martha Connors, Billy Connors, The Lizard (a.k.a. Curt Connors), The Living Brain, Charlie Murphy, Dr. Nicholas Bromwell, Electro (a.k.a. Maxwell Dillon), Big Man (a.k.a. Frederick Foswell), Montana (a.k.a. Jackson Brice), Fancy Dan (a.k.a. Daniel Brito), Ox (a.k.a. Raymond Bloch), Blackie Gaxton, Bennett Brant, Mysterio (a.k.a. Quentin Beck), Green Goblin (a.k.a. Norman Osborn), Hulk (a.k.a. Bruce Banner), B.J. Kosmojian, Kraven the Hunter (a.k.a. Sergei Kravinoff), Chameleon (a.k.a. Dmitri Smerdyakov), Anna May Watson, Daredevil (a.k.a. Matt Murdock), Foggy Nelson, Karen Page, Ringmaster, Human Cannonball, the Great Gambonnos, Eliot Franklin (Clown), Bruto the Strongman, Dorrie Evans, Wilson Allan, Ned Leeds, Rocky Roberts, Iron Man (a.k.a. Tony Stark), Captain America (a.k.a. Steve Rogers), Thor, Giant-Man (a.k.a. Hank Pym), Wasp (a.k.a. Janet Van Dyne), Richard Wormly, Scorpion (a.k.a. Mac Gargan), Doctor Farley Stillwell, Beetle (a.k.a. Abner Jenkins), Princess Python (a.k.a. Zelda DuBois), Precious, Lucky Lobo (a.k.a. Francisco Lobo), Spencer Smythe, Spider Slayer (Mark I), Crime Master (a.k.a. Nicholas Lewis, Sr.), Barney Bushkin, Molten Man (a.k.a. Mark Raxton), Cat Burglar, Gwen Stacy, Harry Osborn, Foxy Briggs, Dean Corliss, Prof. Miles Warren, Looter (a.k.a. Norman Fester), Sally Green, Mendel Stromm, Max Young, Joe Smith, Tommy Tomkins, Mary Jane Watson, The Fox (a.k.a. Reynard Slinker), Angel, Beast, Cyclops, Thor, Doctor Strange (a.k.a. Dr. Stephen Strange), Iceman, Professor Charles Xavier, and Xandu. Every reasonable effort has been made to find and list herein all such material. Nevertheless, if any such material has been omitted, such omission is unintentional and involuntary, and this Notice also applies to each and every such omitted material.

| Title | Copyright Claimant[2] | Date Copyright Secured | Copyright Reg. No. |
|---|---|---|---|
| *Amazing Spider-Man* Vol. 1, No. 1 | Non-Pareil Publishing Corporation | 12/10/1962 | B12112 |
| *Amazing Spider-Man* Vol. 1, No. 2 | Non-Pareil Publishing Corporation | 2/12/1963 | B22020 |
| *Amazing Spider-Man* Vol. 1, No. 3 | Non-Pareil Publishing Corporation | 4/9/1963 | B32700 |
| *Amazing Spider-Man* Vol. 1, No. 4 | Non-Pareil Publishing Corporation | 6/11/1963 | B45564 |
| *Amazing Spider-Man* Vol. 1, No. 5 | Non-Pareil Publishing Corporation | 7/9/1963 | B50165 |
| *Amazing Spider-Man* Vol. 1, No. 6 | Non-Pareil Publishing Corporation | 8/8/1963 | B57887 |
| *Amazing Spider-Man* Vol. 1, No. 7 | Non-Pareil Publishing Corporation | 9/10/1963 | B63121 |
| *Amazing Spider-Man* Vol. 1, No. 8 | Non-Pareil Publishing Corporation | 10/8/1963 | B72284 |
| *Amazing Spider-Man* Vol. 1, No. 9 | Non-Pareil Publishing Corporation | 11/12/1963 | B72337 |
| *Amazing Spider-Man* Vol. 1, No. 10 | Non-Pareil Publishing Corporation | 12/9/1963 | B79629 |
| *Amazing Spider-Man* Vol. 1, No. 11 | Non-Pareil Publishing Corporation | 1/10/1964 | B86108 |
| *Amazing Spider-Man* Vol. 1, No. 12 | Non-Pareil Publishing Corporation | 2/11/1964 | B93262 |
| *Amazing Spider-Man* Vol. 1, No. 13 | Non-Pareil Publishing Corporation | 3/10/1964 | B96821 |
| *Amazing Spider-Man* Vol. 1, No. 14 | Non-Pareil Publishing Corporation | 4/9/1964 | B102930 |
| *Amazing Spider-Man* Vol. 1, No. 15 | Non-Pareil Publishing Corporation | 5/12/1964 | B112138 |
| *Amazing Spider-Man* Vol. 1, No. 16 | Non-Pareil Publishing Corporation | 6/9/1964 | B127533 |
| *Amazing Spider-Man* Vol. 1, No. 17 | Non-Pareil Publishing Corporation | 7/9/1964 | B121808 |
| *Amazing Spider-Man* Vol. 1, No. 18 | Non-Pareil Publishing | 8/11/1964 | B129017 |

---

[2] Pursuant to 37 C.F.R. § 201.10(b)(1)(iii), this Notice of Termination includes the name of at least one author of each Work to which this Notice of Termination applies. The listing herein of any corporation as copyright claimant is done per Copyright Office records, and is not to be construed as an admission that any given work is or was a "work made for hire," nor is anything else herein to be construed as any such admission. Nothing contained in this Notice of Termination shall be construed to in any way limit or waive any right or remedy that Patrick S. Ditko, as Administrator of the Estate of Stephen J. Ditko, may have, at law or in equity, with respect to the subject matter hereof, all of which is hereby expressly reserved.

| | Corporation | | |
|---|---|---|---|
| *Amazing Spider-Man* Vol. 1, No. 19 | Non-Pareil Publishing Corporation | 9/8/1964 | B136435 |
| *Amazing Spider-Man* Vol. 1, No. 20 | Non-Pareil Publishing Corporation | 10/8/1964 | B140632 |
| *Amazing Spider-Man* Vol. 1, No. 21 | Non-Pareil Publishing Corporation | 11/10/1964 | B147192 |
| *Amazing Spider-Man* Vol. 1, No. 22 | Non-Pareil Publishing Corporation | 12/10/1964 | B157768 |
| *Amazing Spider-Man* Vol. 1, No. 23 | Non-Pareil Publishing Corporation | 1/12/1965 | B162019 |
| *Amazing Spider-Man* Vol. 1, No. 24 | Non-Pareil Publishing Corporation | 2/11/1965 | B167575 |
| *Amazing Spider-Man* Vol. 1, No. 25 | Non-Pareil Publishing Corporation | 3/11/1965 | B173323 |
| *Amazing Spider-Man* Vol. 1, No. 26 | Non-Pareil Publishing Corporation | 4/8/1965 | B179808 |
| *Amazing Spider-Man* Vol. 1, No. 27 | Non-Pareil Publishing Corporation | 5/11/1965 | B190434 |
| *Amazing Spider-Man* Vol. 1, No. 28 | Non-Pareil Publishing Corporation | 6/8/1965 | B196230 |
| *Amazing Spider-Man* Vol. 1, No. 29 | Non-Pareil Publishing Corporation | 7/8/1965 | B200698 |
| *Amazing Spider-Man* Vol. 1, No. 30 | Non-Pareil Publishing Corporation | 8/10/1965 | B208267 |
| *Amazing Spider-Man* Vol. 1, No. 31 | Non-Pareil Publishing Corporation | 9/9/1965 | B215968 |
| *Amazing Spider-Man* Vol. 1, No. 32 | Non-Pareil Publishing Corporation | 10/12/1965 | B229417 |
| *Amazing Spider-Man* Vol. 1, No. 33 | Non-Pareil Publishing Corporation | 11/11/1965 | B229427 |
| *Amazing Spider-Man* Vol. 1, No. 34 | Non-Pareil Publishing Corporation | 12/9/1965 | B238351 |
| *Amazing Spider-Man* Vol. 1, No. 35 | Non-Pareil Publishing Corporation | 1/11/1966 | B241516 |
| *Amazing Spider-Man* Vol. 1, No. 36 | Non-Pareil Publishing Corporation | 2/10/1966 | B248224 |
| *Amazing Spider-Man* Vol. 1, No. 37 | Non-Pareil Publishing Corporation | 3/10/1966 | B251737 |
| *Amazing Spider-Man* Vol. 1, No. 38 | Non-Pareil Publishing Corporation | 4/12/1966 | B257745 |
| *The Fantastic Four Annual* Vol. 1, No. 1 | Canam Publishers Sales Corporation | 7/2/1963 | A645698 |
| *Strange Tales Annual* Vol. 1, No. 2 | Vista Publications, Inc. | 6/11/1963 | A640416 |
| *Amazing Spider-Man Annual* Vol. 1, No. 1 | Non-Pareil Publishing Corporation | 6/11/1964 | A713458 |

4

| *Amazing Spider-Man Annual* Vol. 1, No. 2 | Non-Pareil Publishing Corporation | 6/1/1965 | A772745 |
|---|---|---|---|

3. The express or implied grant(s) and/or transfer(s) to which this Notice of Termination applies was (were) made in that (those) certain copyright assignment(s) on the back of the check(s) issued by Marvel Entertainment, LLC's ("Marvel") predecessor company(ies) to Stephen J. Ditko, with respect to the above-listed Works, which was (were) dated on or about the time of the respective publication of such Works, as well as any other grant(s) regarding the Works by Stephen J. Ditko to Marvel's predecessor(s).[3]

4. The effective date of termination for each respective Work shall be July 17, 2023.

5. Stephen J. Ditko died on June 29, 2018, with no surviving spouse, children or grandchildren. Patrick S. Ditko, as Administrator of the Estate of Stephen J. Ditko, owns the termination interest of Stephen J. Ditko pursuant to 17 U.S.C. § 304(c)(2)(D), and is the person entitled to exercise the termination right as to the grant(s) identified herein. This Notice has been signed by all persons needed to terminate said grant(s) under 17 U.S.C. § 304(c).

Dated: July 16, 2021

TOBEROFF & ASSOCIATES, P.C.

Marc Toberoff

23823 Malibu Road, Suite 50-363
Malibu, California 90265
Tel: (310) 246-3333

As counsel for and on behalf of Patrick S. Ditko,
Administrator of the Estate of Stephen J. Ditko

---

[3] This Notice of Termination also applies to each and every grant or alleged grant by Stephen J. Ditko of rights under copyright in and to the Works that falls within the applicable termination time window (defined by 17 U.S.C. § 304(c) and the effective date of this Notice of Termination). Every reasonable effort has been made to find and list herein every such grant and/or transfer. Nevertheless, if any such grant and/or transfer has been omitted, such omission is unintentional and involuntary, and this Notice of Termination applies as well to each and every such omitted grant and/or transfer.

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document described as

NOTICE OF TERMINATION to be served this 16th day of July, 2021, by First Class Mail,

postage prepaid, upon each of the following:

Marvel Entertainment, LLC
Marvel Worldwide, Inc.
Marvel Property, Inc.
Marvel Characters, Inc.
1290 Avenue of the Americas
New York, NY 10104
Attn: John Turitzin, Chief Counsel
     Eli Bard, Deputy Chief Counsel

Marvel Studios, LLC
MVL Rights, LLC
MVL Development, LLC
Marvel Characters, Inc.
500 South Buena Vista Street
Burbank, CA 91521
Attn: David Galluzzi, Chief Counsel

The Walt Disney Company
500 South Buena Vista Street
Burbank, CA 91521
Attn: Alan Braverman, General Counsel

Marvel Animation Inc.
623 Circle Seven Drive
Glendale, CA 91201
Attn: Legal Department

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th

day of July, 2021, at Malibu, California.

Breck Kadaba
Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Counsel for Patrick S. Ditko,
Administrator of the Estate of Stephen J. Ditko

6

## NOTICE OF TERMINATION

## "DOCTOR STRANGE"

To:  Marvel Entertainment, LLC          Marvel Studios, LLC
     Marvel Worldwide, Inc.              MVL Rights, LLC
     Marvel Property, Inc.               MVL Development, LLC
     Marvel Characters, Inc.             Marvel Characters, Inc.
     1290 Avenue of the Americas         500 South Buena Vista Street
     New York, NY 10104                  Burbank, CA 91521
     Attn: John Turitzin, Chief Counsel  Attn: David Galluzzi, Chief Counsel
         Eli Bard, Deputy Chief Counsel

     The Walt Disney Company             Marvel Animation Inc.
     500 South Buena Vista Street        623 Circle Seven Drive
     Burbank, CA 91521                   Glendale, CA 91201
     Attn: Alan Braverman, General Counsel  Attn: Legal Department

PLEASE TAKE NOTICE that pursuant to Section 304(c) of the United States Copyright Act (17 U.S.C. § 304(c)) and the regulations issued thereunder by the Register of Copyrights, 37 C.F.R. § 201.10, Patrick S. Ditko, Administrator of the Estate of author Stephen J. Ditko, being the person entitled to terminate copyright transfers by the author pursuant to said statutory provisions, hereby terminates all pre-January 1, 1978 exclusive or non-exclusive grants of the transfer or license of the renewal copyright(s) in and to the illustrated comic book stories, many of which feature the character Doctor Strange (a.k.a. Dr. Stephen Strange), authored or co-authored by Stephen J. Ditko (a.k.a. Steve Ditko), and published in the STRANGE TALES comic book issues, all as set forth below:

1.     The names and addresses of the grantees and/or successors in title whose rights are being terminated are as follows: Marvel Entertainment, LLC, Marvel Worldwide, Inc., Marvel Property, Inc., Marvel Characters, Inc., 1290 Avenue of the Americas, New York, NY 10104; Marvel Studios, LLC, MVL Rights, LLC, MVL Development, LLC, Marvel Characters, Inc., 500

South Buena Vista Street, Burbank, CA 91521; The Walt Disney Company, 500 South Buena

Vista Street, Burbank, CA 91521; and Marvel Animation Inc., 623 Circle Seven Drive, Glendale,

CA 91201. Pursuant to 37 C.F.R. Section 201.10(d), service of this Notice is being made by First

Class Mail, postage pre-paid to the above grantees or successors at the addresses shown.

    2.    The copyrighted work(s) to which this Notice of Termination applies (individually,

"Work"; collectively, the "Works") are the illustrated comic book stor(ies), many of which feature

the character Doctor Strange (a.k.a. Dr. Stephen Strange), authored or co-authored by Stephen J.

Ditko (a.k.a. Steve Ditko)[1] along with all the characters, story elements, and/or indicia appearing

therein, which stories were published and embodied in the comic book issues identified as follows:

| Title | Copyright Claimant[2] | Date Copyright Secured | Copyright Reg. No. |
|---|---|---|---|
| *Strange Tales* Vol. 1, No. 102 | Vista Publications, Inc. | 8/9/1962 | B988507 |
| *Strange Tales* Vol. 1, No. 103 | Vista Publications, Inc. | 9/11/1962 | B992202 |
| *Strange Tales* Vol. 1, No. 104 | Vista Publications, Inc. | 10/9/1962 | B999792 |

---

[1] This Notice of Termination also applies to all material authored or co-authored by Stephen J. Ditko (in any and all medium(s), whenever created) that was reasonably associated with these Works and was registered with the United States Copyright Office and/or published within the termination time window, as defined by 17 U.S.C. § 304(c) and the effective date of this Notice of Termination. This Notice of Termination likewise includes any character, story element, or indicia reasonably associated with these Works, including, without limitation, Zakkim, Doctor Strange (a.k.a. Dr. Stephen Strange), Ancient One (a.k.a. Yao), Baron Mordo (a.k.a. Karl Mordo), Hamir, Karl King, Harry Hook, Victoria Bentley, Sir Clive Bentley, Wong, Nightmare, Dreamstalker, Spinybeast, Aggamon, Bill Brinkly, Allan Stevens, Gulgol, Thor, Loki, Odin, Zota of Pergamum, Hamir the Hermit, Baron Mordo's Minions, Clea, G'uranthic Guardian, Dormammu, Orini, Demonicus, Tiboro, Sen-Yu, Kaecilius, Nazaka, Shazana, Ubbu, Sir Anthony Baskerville, Aged Genghis, The Demon of the Mask, Rama Kaliph, Abu Ben Hakim, Eternity, the Mindless Ones, Adria (a.k.a. The Witch), Tazza, Asti the All-Seeing, Mister Rasputin (a.k.a. Pavel Plotnick), Kaluu, and Hiram Barney. Every reasonable effort has been made to find and list herein all such material. Nevertheless, if any such material has been omitted, such omission is unintentional and involuntary, and this Notice also applies to each and every such omitted material.

[2] Pursuant to 37 C.F.R. § 201.10(b)(1)(iii), this Notice of Termination includes the name of at least one author of each Work to which this Notice of Termination applies. The listing herein of any corporation as copyright claimant is done per Copyright Office records, and is not to be construed as an admission that any given work is or was a "work made for hire," nor is anything else herein to be construed as any such admission. Nothing contained in this Notice of Termination shall be construed to in any way limit or waive any right or remedy that Patrick S. Ditko, as Administrator of the Estate of Stephen J. Ditko, may have, at law or in equity, with respect to the subject matter hereof, all of which is hereby expressly reserved.

| *Strange Tales* Vol. 1, No. 105 | Vista Publications, Inc. | 11/8/1962 | B6037 |
| *Strange Tales* Vol. 1, No. 106 | Vista Publications, Inc. | 12/10/1962 | B12120 |
| *Strange Tales* Vol. 1, No. 107 | Vista Publications, Inc. | 1/10/1963 | B17484 |
| *Strange Tales* Vol. 1, No. 108 | Vista Publications, Inc. | 2/12/1963 | B22022 |
| *Strange Tales* Vol. 1, No. 109 | Vista Publications, Inc. | 3/12/1963 | B28143 |
| *Strange Tales* Vol. 1, No. 111 | Vista Publications, Inc. | 5/9/1963 | B38264 |
| *Strange Tales* Vol. 1, No. 112 | Vista Publications, Inc. | 6/11/1963 | B45565 |
| *Strange Tales* Vol. 1, No. 113 | Vista Publications, Inc. | 7/9/1963 | B51854 |
| *Strange Tales* Vol. 1, No. 114 | Vista Publications, Inc. | 8/8/1963 | B57888 |
| *Strange Tales* Vol. 1, No. 115 | Vista Publications, Inc. | 9/10/1963 | B66036 |
| *Strange Tales* Vol. 1, No. 116 | Vista Publications, Inc. | 10/8/1963 | B66782 |
| *Strange Tales* Vol. 1, No. 117 | Vista Publications, Inc. | 11/12/1963 | B72341 |
| *Strange Tales* Vol. 1, No. 118 | Vista Publications, Inc. | 12/9/1963 | B79628 |
| *Strange Tales* Vol. 1, No. 119 | Vista Publications, Inc. | 1/10/1964 | B86103 |
| *Strange Tales* Vol. 1, No. 120 | Vista Publications, Inc. | 2/11/1964 | B93261 |
| *Strange Tales* Vol. 1, No. 121 | Vista Publications, Inc. | 3/10/1964 | B96828 |
| *Strange Tales* Vol. 1, No. 122 | Vista Publications, Inc. | 4/9/1964 | B102931 |
| *Strange Tales* Vol. 1, No. 123 | Vista Publications, Inc. | 5/12/1964 | B112132 |
| *Strange Tales* Vol. 1, No. 124 | Vista Publications, Inc. | 6/9/1964 | B127512 |
| *Strange Tales* Vol. 1, No. 125 | Vista Publications, Inc. | 7/9/1964 | B121798 |
| *Strange Tales* Vol. 1, No. 126 | Vista Publications, Inc. | 8/11/1964 | B129014 |
| *Strange Tales* Vol. 1, No. 127 | Vista Publications, Inc. | 9/8/1964 | B136445 |
| *Strange Tales* Vol. 1, No. 128 | Vista Publications, Inc. | 10/8/1964 | B140634 |
| *Strange Tales* Vol. 1, No. 129 | Vista Publications, Inc. | 11/10/1964 | B147181 |
| *Strange Tales* Vol. 1, No. 130 | Vista Publications, Inc. | 12/10/1964 | B157772 |
| *Strange Tales* Vol. 1, No. 131 | Vista Publications, Inc. | 1/12/1965 | B162016 |
| *Strange Tales* Vol. 1, No. 132 | Vista Publications, Inc. | 2/11/1965 | B167564 |
| *Strange Tales* Vol. 1, No. 133 | Vista Publications, Inc. | 3/11/1965 | B173315 |
| *Strange Tales* Vol. 1, No. 134 | Vista Publications, Inc. | 4/8/1965 | B179809 |
| *Strange Tales* Vol. 1, No. 135 | Vista Publications, Inc. | 5/4/1965 | B190436 |
| *Strange Tales* Vol. 1, No. 136 | Vista Publications, Inc. | 6/8/1965 | B196229 |
| *Strange Tales* Vol. 1, No. 137 | Vista Publications, Inc. | 7/8/1965 | B200686 |
| *Strange Tales* Vol. 1, No. 138 | Vista Publications, Inc. | 8/10/1965 | B208272 |
| *Strange Tales* Vol. 1, No. 139 | Vista Publications, Inc. | 9/9/1965 | B215981 |
| *Strange Tales* Vol. 1, No. 140 | Vista Publications, Inc. | 10/12/1965 | B229414 |
| *Strange Tales* Vol. 1, No. 141 | Vista Publications, Inc. | 11/11/1965 | B229431 |
| *Strange Tales* Vol. 1, No. 142 | Vista Publications, Inc. | 12/9/1965 | B238352 |
| *Strange Tales* Vol. 1, No. 143 | Vista Publications, Inc. | 1/11/1966 | B241519 |
| *Strange Tales* Vol. 1, No. 144 | Vista Publications, Inc. | 2/10/1966 | B248225 |
| *Strange Tales* Vol. 1, No. 145 | Vista Publications, Inc. | 3/10/1966 | B251650 |
| *Strange Tales* Vol. 1, No. 146 | Vista Publications, Inc. | 4/12/1966 | B257744 |
| *Strange Tales* Vol. 1, No. 147 | Vista Publications, Inc. | 5/10/1966 | B277438 |

3.     The express or implied grant(s) and/or transfer(s) to which this Notice of

Termination applies was (were) made in that (those) certain copyright assignment(s) on the back of the check(s) issued by Marvel Entertainment, LLC's ("Marvel") predecessor company(ies) to Stephen J. Ditko, with respect to the above-listed Works, which was (were) dated on or about the time of the respective publication of such Works, as well as any other grant(s) regarding the Works by Stephen J. Ditko to Marvel's predecessor(s).[3]

4.  The effective date of termination for each respective Work shall be July 17, 2023.

5.  Stephen J. Ditko died on June 29, 2018, with no surviving spouse, children or grandchildren. Patrick S. Ditko, as Administrator of the Estate of Stephen J. Ditko, owns the termination interest of Stephen J. Ditko pursuant to 17 U.S.C. § 304(c)(2)(D), and is the person entitled to exercise the termination right as to the grant(s) identified herein. This Notice has been signed by all persons needed to terminate said grant(s) under 17 U.S.C. § 304(c).

Dated:  July 16, 2021               TOBEROFF & ASSOCIATES, P.C.

                                    Marc Toberoff

                                    23823 Malibu Road, Suite 50-363
                                    Malibu, California 90265
                                    Tel: (310) 246-3333

                                    As counsel for and on behalf of Patrick S. Ditko,
                                    Administrator of the Estate of Stephen J. Ditko

---

[3] This Notice of Termination also applies to each and every grant or alleged grant by Stephen J. Ditko of rights under copyright in and to the Works that falls within the applicable termination time window (defined by 17 U.S.C. § 304(c) and the effective date of this Notice of Termination). Every reasonable effort has been made to find and list herein every such grant and/or transfer. Nevertheless, if any such grant and/or transfer has been omitted, such omission is unintentional and involuntary, and this Notice of Termination applies as well to each and every such omitted grant and/or transfer.

4

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document described as

NOTICE OF TERMINATION to be served this 16th day of July, 2021, by First Class Mail,

postage prepaid, upon each of the following:

Marvel Entertainment, LLC
Marvel Worldwide, Inc.
Marvel Property, Inc.
Marvel Characters, Inc.
1290 Avenue of the Americas
New York, NY 10104
Attn: John Turitzin, Chief Counsel
     Eli Bard, Deputy Chief Counsel

Marvel Studios, LLC
MVL Rights, LLC
MVL Development, LLC
Marvel Characters, Inc.
500 South Buena Vista Street
Burbank, CA 91521
Attn: David Galluzzi, Chief Counsel

The Walt Disney Company
500 South Buena Vista Street
Burbank, CA 91521
Attn: Alan Braverman, General Counsel

Marvel Animation Inc.
623 Circle Seven Drive
Glendale, CA 91201
Attn: Legal Department

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th

day of July, 2021, at Malibu, California.

Breck Kadaba
Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Counsel for Patrick S. Ditko,
Administrator of the Estate of Stephen J. Ditko