# EXHIBIT 64

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARVEL CHARACTERS, INC., | Case No.: 1:21-cv-7955-LAK |
|     Plaintiff and Counterclaim-Defendant, | and consolidated cases |
| | 21-cv-7957-LAK and 21-cv-7959-LAK |
|     v. | |
| LAWRENCE D. LIEBER, | Hon. Lewis A. Kaplan |
|     Defendant and Counterclaimant. | |
| MARVEL CHARACTERS, INC., | **DEFENDANT DITKO'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S THIRD SET OF INTERROGATORIES TO PATRICK S. DITKO** |
|     Plaintiff and Counterclaim-Defendant, | |
|     v. | |
| KEITH A. DETTWILER, in his capacity as Executor of the Estate of Donald L. Heck, | |
|     Defendant and Counterclaimant. | |
| MARVEL CHARACTERS, INC., | |
|     Plaintiff and Counterclaim-Defendant, | |
|     v. | |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko, | |
|     Defendant and Counterclaimant. | |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern and Eastern Districts of New York ("Local Rules"), Defendant and Counterclaim-Plaintiff Patrick Ditko ("Defendant") hereby submits his supplemental responses and objections to Plaintiff's Third Set of Interrogatories to Defendant and Counterclaimant Patrick S. Ditko ("Interrogatories" and, individually, "Interrogatory"), served by Marvel Characters, Inc. ("Marvel"), as follows:

## PRELIMINARY STATEMENT

These responses are made solely for purposes of this action and are subject to all objections as to competence, relevance, materiality, privilege, and admissibility, and any and all objections and grounds that would require exclusion of any statement made herein if such statement were made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial. These responses shall not be used in connection with any other proceeding.

No incidental or implied admissions are intended by these responses. The fact that Defendant responds or objects to any of the Interrogatories should not be construed as an admission that Defendant accepts or admits the existence of any facts assumed by such Interrogatory, or that such response or objection constitutes admissible evidence as to any such assumed facts. The fact that Defendant responds to part or all of any of the Interrogatories is not intended to be and shall not be construed as a waiver of any part of any objection to any Interrogatory.

Defendant is still in the process of investigating the facts of this case and searching for responsive information and Documents, which is a particularly burdensome and expensive undertaking given that many of the relevant events took place decades ago. Nor has Defendant completed discovery or concluded preparation for summary judgment or, if necessary, trial. As a

result, Defendant's objections and responses herein are preliminary and based on information and Documents that are presently available and specifically known to Defendant after having made a diligent search and reasonable and good faith inquiry, and are made without prejudice to Defendant's right to: (1) amend, alter, supplement, clarify or otherwise modify these objections and responses as this matter proceeds; (2) make use of, or introduce at any hearing or trial, any Documents, information, facts, evidence, and legal theories which are subsequently discovered or which are now known but whose relevance, significance, or applicability has not yet been ascertained; and (3) offer expert witness opinions on any relevant matter, which opinions may be at variance with these objections and responses or the information and Documents referenced in response to Marvel's Interrogatories

Furthermore, Defendant's responses are made without in any way intending to waive, but on the contrary, intending to preserve:

1.      The right to raise—as part of any subsequent proceeding in, or the trial of, this or any other action—all questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility as evidence for any purpose of any information or Documents produced or identified in support of any of the responses to any portion of Marvel's Interrogatories;

2.      The right to object on any ground—as part of any subsequent proceeding in, or the trial of, this or any other action—to the use of any information or Documents produced or identified in support of any of the responses to any portion of Marvel's Interrogatories;

3.      The right to object to introduction into evidence of any of these responses; and

4.      The right to object on any ground at any time to other discovery involving the subject thereof.

## **GENERAL OBJECTIONS**

Defendant objects to each particular Interrogatory on the following grounds, which are hereby incorporated within each response set forth below:

1.      Defendant objects to each and every Interrogatory, definition, and instruction that purports to impose obligations beyond those required or permitted by the Federal Rules of Civil Procedure or the Local Rules. Defendant interprets each and every Interrogatory, definition, and instruction to be consistent with the Federal Rules of Civil Procedure and Local Rules.

2.      Defendant objects to each and every Interrogatory, definition, and instruction to the extent it contains argumentative, inaccurate, incomplete, or misleading descriptions of the facts, persons, relationships, events, and pleadings underlying this action. Any response to any Interrogatory shall not constitute Defendant's agreement with or acquiescence to any such description.

3.      Defendant objects to each and every Interrogatory, definition, and instruction to the extent it seeks information that is neither relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Defendant will only disclose information consistent with Defendant's responses below.

4.      Defendant objects to each and every Interrogatory, definition, and instruction to the extent it is vague, ambiguous, unclear, or fails to identify the requested information with reasonable particularity. To the extent that an Interrogatory requires subjective judgment on the part of Defendant as to what information is requested, Defendant will disclose responsive, non-privileged information according to Defendant's understanding of the Interrogatory.

5.      Defendant objects to each and every Interrogatory, definition, and instruction to the extent it is overbroad, onerous, and unduly burdensome and, thus, outside the scope of permissible

discovery. Defendant will only disclose information consistent with Defendant's responses below.

6.     Defendant objects to each and every Interrogatory to the extent it seeks information that is a matter of public record, already in the possession of Marvel, or otherwise equally available to the public and Marvel. Defendant objects to Marvel's Instructions on this same basis. That said, without committing to undertake a search specifically for information in the public record, Defendant will not withhold any responsive information of which Defendant is aware because it may also be available in the public record. Defendant will not undertake a search of the public record for Marvel.

7.     Defendant objects to each and every Interrogatory to the extent that it seeks disclosure of information that is unreasonably cumulative or duplicative of other discovery served in this action, or is obtainable from sources that are more convenient, less burdensome, or less expensive.

8.     Defendant objects to each and every Interrogatory to the extent that it seeks to require Defendant to use more than reasonable diligence to locate and identify responsive information. Consistent with Defendant's obligations, Defendant will conduct a reasonably diligent inquiry for responsive information and Documents.

9.     Defendant objects to the Interrogatories, including, but not limited to, the "Definitions" and "Instructions," including without limitation Instruction No. 1, to the extent they purport to impose any obligations upon Defendant that exceed those imposed by the Federal and Local Rules. Defendant's responses are based on Defendant's personal knowledge, the knowledge of Defendant's agents, and *reliable* information found in documents in Defendant's possession, custody, or control.

10.     Defendant objects to each and every Interrogatory, definition, and instruction to the

extent it seeks information that is not within Defendant's possession, custody, or control.

11.     Defendant objects to each and every Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work product doctrine, the common interest or joint defense privileges, rules and agreements governing privacy or confidentiality, or any other applicable privilege or protection recognized under statute or applicable case law. Inadvertent disclosure by Defendant of any information protected by any applicable privilege or protection shall not constitute a waiver, in whole or in part, of the privilege or protection.

12.     Defendant objects to each and every Interrogatory to the extent it seeks Defendant's sensitive, confidential, or proprietary business information. To the extent such information is responsive, relevant, and not privileged, Defendant will disclose such confidential information pursuant to the Protective Order, and any subsequent revisions to that Protective Order upon which the Parties may agree.

13.     Defendant objects to each Interrogatory, definition, and instruction to the extent that it prematurely requests discovery of expert materials and information in advance of their respective deadlines under the Scheduling Order governing this case and/or the Federal Rules of Civil Procedure. Defendant will not disclose any expert materials or information before such deadlines.

14.     Defendant objects to each and every Interrogatory to the extent it seeks information the disclosure of which would be prohibited by applicable law, rule, regulation, or contractual obligation. In particular, Defendant objects to each and every Interrogatory to the extent it seeks information subject to confidentiality obligations (such as settlement agreements with third-parties) or protective orders, such as the Documents produced by parties other than Defendant in prior litigations. Defendant cannot, and will not, identify any such information unless and until Defendant is relieved of the confidentiality obligations with respect to such information, and

nothing contained in any response to any Interrogatory should be considered an agreement to identify such information.

15.     Nothing contained in any response herein shall be deemed an admission, concession, or waiver by Defendant as to the validity of any claim or defense asserted by Marvel.

16.     All objections as to the relevance, authenticity, or admissibility of these responses and any information referenced therein are expressly reserved by Defendant.

17.     To the extent that Defendant responds to any of the Interrogatories, Defendant reserves the right to object on any grounds, at any time, to other discovery requests involving or relating to the subject matter of the Interrogatories that Defendant has responded to herein.

18.     Defendant reserves all objections to the use of these responses. All such objections may be interposed by Defendant at the time of trial or as otherwise required by the rules or order of the Court.

19.     Defendant's responses herein shall not in any way constitute an adoption of Marvel's purported "Definitions" of words or phrases or "Instructions" contained in the Interrogatories. Defendant objects to the Definitions, Instructions, and Interrogatories to the extent they: (i) are vague, ambiguous, compound, overbroad, unduly burdensome, and not reasonably tailored to avoid imposing undue burden and expense on Defendant; (ii) seek information for an undefined period of time or, if defined, cover and span an unreasonably long or burdensome time period, and therefore are burdensome and oppressive; (iii) are inconsistent with the ordinary and customary meaning of the words or phrases they purport to define; (iv) seek to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure or Local Rules; (v) include assertions of purported fact that are inaccurate or disputed by the parties to this action; and/or (vi) incorporate other purported defined terms that suffer from such defects. In

responding to the Interrogatories, Defendant has, where possible, employed what Defendant regards as the reasonable, common-sense interpretation of the Interrogatory in light of the relevant issues in the case.

20.    Defendant objects to each Interrogatory to the extent that it assumes the existence, relevance, materiality, truth, admissibility, or authenticity of any particular information, or assumes the validity of any claim or defense. In responding to these Interrogatories, Defendant does not make any admissions or waive any rights or objections, all of which are expressly preserved.

21.    Defendant objects to each Interrogatory to the extent that it requires Defendant to draw a legal conclusion.

22.    Defendant reserves the right to revise, amend, or supplement Defendant's objections, responses, and/or production, and to use in discovery and at trial any information that is omitted as a result of mistake, inadvertence, or oversight. Defendant notes that discovery is ongoing and that Defendant's responses are based on the information that is presently available and specifically known to Defendant.

23.    Defendant objects to Instruction No. 6 to the extent that it purports to require Defendant to log information, as though the Interrogatories are requests for production. Defendant does not agree to provide privileged information or a privilege log with respect to these Interrogatories.

24.    The fact that Defendant may reassert particular objections in responding to individual Interrogatories should not be construed as limiting the generality of the foregoing objections. The General Objections set forth herein are asserted with respect to each and every Interrogatory.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Identify the purported "pre-January 1, 1978 exclusive or non-exclusive grant of the transfer or license of the renewal copyright(s) in and to the" Works identified in Your Purported Termination Notices.

### RESPONSE TO INTERROGATORY NO. 1:

Defendant incorporates Defendant's Preliminary Statement and General Objections. Defendant further objects to this Interrogatory on the grounds that it contains multiple subparts and solicits a legal conclusion insofar as it seeks the identification of agreements constituting "exclusive or non-exclusive grants of the transfer or license of the renewal copyright(s) in and to the" Works. Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows: At the time Steve Ditko sold, and Marvel purchased, each of the Works or each portion of the Works authored by Steve Ditko, he granted Marvel the rights to exploit the material he had created. In the 1960s when the Works were published, Marvel placed a legend on the back of the checks that it issued to purchase Steve Ditko's material. The legends contained express purchase and assignment language, and in order to endorse and deposit Marvel's payments, Steve Ditko would necessarily have to endorse such check legends. Notwithstanding these check legends and, in any event, an implied assignment might be found due to Steve Ditko's acceptance of payment from Marvel for his material and Marvel's subsequent known exploitation of his material. On or about January 26, 1977, Steve Ditko, for the first time, entered into an employment agreement with Marvel, which formalized the explicit licensing of Steve Ditko's work to Marvel. Defendant reserves the right to conduct further inquiry with respect to this Interrogatory and further reserves the right to supplement this response.

-9-

**INTERROGATORY NO. 2:**

For each grant, if any, identified in response to Interrogatory No. 1 above, Identify: (a) the date and terms of the Agreement(s); (b) all facts upon which you base your response; (c) the names, addresses, and telephone numbers of all Persons who have knowledge of those facts; and (d) all Documents and Communications that support your response, Including the names, addresses, and telephone numbers of all Persons in possession, custody, and control of those Documents.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant incorporates Defendant's Preliminary Statement and General Objections. Defendant further objects to this Interrogatory on the grounds that it contains multiple subparts and solicits a legal conclusion insofar as it seeks the identification of Agreements constituting "exclusive or non-exclusive grants of the transfer or license of the renewal copyright(s) in and to the" Works. Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows: At the time Steve Ditko sold, and Marvel purchased, each of the Works or each portion of the Works authored by Steve Ditko, he granted Marvel the rights to exploit the material he had created. Each such grant took place at the time of each sale of the respective Works to Marvel. Defendant does not know the precise date of each transfer, but generally such purchases occurred five months before the date of publication of each of the Works, which dates are known by Marvel. The checks issued by Marvel made payable to Steve Ditko during the 1960s for his Works support this response. Defendant believes Marvel is in possession, custody, or control of such documents. The Declarations of Gene Colan, James Steranko, Neal Adams, Joe Sinnott, Richard Ayers, Mark Evanier, and John Morrow in the *Marvel Worldwide, Inc. v. Kirby*, 1:10-cv-00141-CM-KNF case also support this Response. Further, on or about January 26, 1977, Steve Ditko, for the first time, entered into an employment agreement with

Marvel, which formalized the explicit licensing of Steve Ditko's work to Marvel. *See* 2021MARVEL-0033530. Such documents are in the possession, custody, or control of Marvel. In addition, Steve Ditko, Martin Goodman, Sol Brodsky, and in some instances, Stan Lee, might have had knowledge of facts pertinent to this Interrogatory.

Defendant reserves the right to conduct further inquiry with respect to this Interrogatory and further reserves the right to supplement this response.

**INTERROGATORY NO. 3:**

Identify the element(s) of creative expression that Steve Ditko purportedly contributed to each Work.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant incorporates Defendant's Preliminary Statement and General Objections. Defendant further objects to this Interrogatory on the grounds that it contains multiple subparts. Defendant further objects to this Interrogatory on the grounds that it is overbroad and seeks information that is not relevant to either party's claims or defenses and imposes an undue burden on Defendant that is not proportional to the needs of the case. Defendant further objects to this Interrogatory on the grounds that it is vague and ambiguous as to the undefined term, "creative expression," and lacks sufficient precision to allow Defendant to formulate an appropriate response. Further responding, Defendant objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation. Further responding, Defendant objects to this Interrogatory because this information is already in Marvel's possession and is thus obtainable from a source other than Defendant that is more convenient and far less burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). For example, information responsive to

this Interrogatory could be found in the Works themselves, and Marvel's own databases and records regarding the Works Marvel published as to which Marvel credited Steve Ditko for his creative contributions to each Work.

Subject to and without waiving any of the foregoing general and specific objections, Defendant responds as follows:

- *Amazing Fantasy* Vol. 1, No. 15 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 1 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 2 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 3 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 4 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 5 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 6 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 7 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 8 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 9 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 10 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 11 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 12 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 13 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 14 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 15 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 16 – art and story plotting by Steve Ditko.
- *Amazing Spider-Man* Vol. 1, No. 17 – art and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 18 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 19 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 20 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 21 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 22 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 23 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 24 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 25 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 26 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 27 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 28 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 29 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 30 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 31 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 32 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 33 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 34 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 35 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 36 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 37 – art, dialogue, and story plotting by Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 38  – art, dialogue, and story plotting by Steve Ditko.

- *The Fantastic Four Annual* Vol. 1, No. 1, "The Fabulous Fantastic Four Meet Spider-Man!" – art and story plotting by Steve Ditko.

- *Strange Tales Annual* Vol. 1, No. 2, "On the Trail of the Amazing Spider-Man!" and "I Captured the Abominable Snowman!" – art and story plotting by Steve Ditko.

- *Amazing Spider-Man Annual* Vol. 1, No. 1 – art and story plotting by Steve Ditko.

- *Amazing Spider-Man Annual* Vol. 1, No. 2 – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 102, "Who Needs You?" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 103, "Jasper's Jalopy" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 104, "The Frog-Man!" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 105, "The Supernatural!" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 106, "Man on a Scaffold" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 107, "The Treasure of Planetoid" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 108, "The Iron Warrior" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 109, "Earth is Off Limits" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 110, "Doctor Strange Master of Black Magic!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 111, "Face-to-Face with the Magic of Baron Mordo!" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 112, "The Man Who Dared" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 113, "The Shoemaker's Strange Assistant" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 114, "The Return of the Omnipotent Baron Mordo" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 115, "The Origin of Dr. Strange" – art, dialogue, cover art, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 116, "Return of the Nightmare World!" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 117, "The Many Traps of Baron Mordo!" – art, dialogue, cover art, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 118, "The Possessed!" – art, dialogue, cover art, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 119, "Beyond the Purple Veil!" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 120, "The House of Shadows!" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 121, "Witchcraft in the Wax Museum" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 122, "The World Beyond" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 123, "The Challenge of Loki!" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 124, "The Lady from Nowhere" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 125, "Mordo Must Not Catch Me!" – art and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 126, "The Domain of the Dread Dormammu!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 127, "Duel With The Dread Dormammu!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 128, "The Demon's Disciple!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 129, "Beware… Tiboro! The Tyrant of the Sixth Dimension!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 130, "The Defeat of Doctor Strange" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 131, "The Hunter and the Hunted!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 132, "Face-to-Face at Last with Baron Mordo – art, dialogue, cover art, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 133, "A Nameless Land, a Timeless Time!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 134, "Earth Be My Battleground" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 135, "Eternity Beckons!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 136, "What Lurks Beneath the Mask?" – art, dialogue, cover art, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 137, "When Meet the Mystic Minds!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 138, "If Eternity Should Fail!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 139, "Beware…! Dormammu is Watching!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 140, "The Pincers of Power!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 141, "Let There be Victory!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 142, "Those Who Would Destroy Me!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 143, "With None Beside Me!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 144, "Where Man Hath Never Trod!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 145, "To Catch a Magician!" – art, dialogue, and story plotting by Steve Ditko.

- *Strange Tales* Vol. 1, No. 146, "The End – At Last!" – art, dialogue, and story plotting by Steve Ditko.

Defendant reserves the right to conduct further investigation in response to this Interrogatory and further reserves the right to supplement this response.

**INTERROGATORY NO. 4:**

For each element, if any, identified in response to Interrogatory No. 3, Identify: (a) the date of the contribution by Steve Ditko; (b) all facts upon which you base your response; (c) the names, addresses, and telephone numbers of all Persons who have knowledge of those facts; and (d) all Documents and Communications that support your response, Including the names, addresses, and telephone numbers of all Persons in possession, custody, and control of those Documents.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendant incorporates Defendant's Preliminary Statement and General Objections. Defendant further objects to this Interrogatory on the grounds that it contains multiple subparts. Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows: generally, the contributions made by Steve Ditko to each of the Works was made approximately five months prior to the publication date listed on each of the Works' respective covers. Such Works are in Marvel's possession, custody, or control and are otherwise publicly available. Steve Ditko would likely have known facts pertinent to this Interrogatory. Defendant reserves the right to conduct further inquiry with respect to this Interrogatory and further reserves the right to supplement this response.

**INTERROGATORY NO. 5:**

Identify the purported authors of the Works.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant incorporates Defendant's Preliminary Statement and General Objections. Defendant further objects to this Interrogatory on the grounds that it contains multiple subparts

-18-

and solicits a legal conclusion. Defendant further objects to this Interrogatory on the grounds that it is overbroad and seeks information that is not relevant to either party's claims or defenses and imposes an undue burden on Defendant that is not proportional to the needs of the case. Further still, Defendant objects to this Interrogatory on the grounds that it is vague and ambiguous as to the undefined term, "author" and lacks sufficient precision to allow Defendant to formulate an appropriate response. Further responding, Defendant objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation. Further responding, Defendant objects to this Interrogatory because this information is already in Marvel's possession and is thus obtainable from a source other than Defendant that is more convenient and less burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). For example, information responsive to this Interrogatory could be found in the Works themselves, and Marvel's own databases and records regarding the Works Marvel published.

Subject to and without waiving any of the foregoing general and specific objections, Defendant responds as follows:

- *Amazing Fantasy* Vol. 1, No. 15 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 1 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 2 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 3 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 4 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 5 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 6 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 7 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 8 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 9 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 10 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 11 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 12 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 13 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 14 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 15 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 16 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 17 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man* Vol. 1, No. 18 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 19 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 20 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 21 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 22 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 23 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 24 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 25 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 26 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 27 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 28 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 29 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 30 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 31 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 32 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 33 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 34 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 35 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 36 –  Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 37 – Steve Ditko.

- *Amazing Spider-Man* Vol. 1, No. 38  – Steve Ditko.

- *The Fantastic Four Annual* Vol. 1, No. 1, "The Fabulous Fantastic Four Meet Spider-Man!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales Annual* Vol. 1, No. 2, "On the Trail of the Amazing Spider-Man!" and "I Captured the Abominable Snowman!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man Annual* Vol. 1, No. 1 – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Amazing Spider-Man Annual* Vol. 1, No. 2 – Steve Ditko.

- *Strange Tales* Vol. 1, No. 102, "Who Needs You?" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 103, "Jasper's Jalopy" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 104, "The Frog-Man!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 105, "The Supernatural!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 106, "Man on a Scaffold" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 107, "The Treasure of Planetoid" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 108, "The Iron Warrior" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 109, "Earth is Off Limits" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 110, "Doctor Strange Master of Black Magic!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 111, "Face-to-Face with the Magic of Baron Mordo!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 112, "The Man Who Dared" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 113, "The Shoemaker's Strange Assistant" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 114, "The Return of the Omnipotent Baron Mordo" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 115, "The Origin of Dr. Strange" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 116, "Return of the Nightmare World!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 117, "The Many Traps of Baron Mordo!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 118, "The Possessed!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 119, "Beyond the Purple Veil!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 120, "The House of Shadows!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 121, "Witchcraft in the Wax Museum" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 122, "The World Beyond" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 123, "The Challenge of Loki!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 124, "The Lady from Nowhere" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 125, "Mordo Must Not Catch Me!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 126, "The Domain of the Dread Dormammu!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 127, "Duel With The Dread Dormammu!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 128, "The Demon's Disciple!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 129, "Beware… Tiboro! The Tyrant of the Sixth Dimension!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 130, "The Defeat of Doctor Strange" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 131, "The Hunter and the Hunted!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 132, "Face-to-Face at Last with Baron Mordo – Steve Ditko.

- *Strange Tales* Vol. 1, No. 133, "A Nameless Land, a Timeless Time!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 134, "Earth Be My Battleground" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 135, "Eternity Beckons!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 136, "What Lurks Beneath the Mask?" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 137, "When Meet the Mystic Minds!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 138, "If Eternity Should Fail!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 139, "Beware…! Dormammu is Watching!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 140, "The Pincers of Power!" – Steve Ditko, unknown as to other author(s), if any, of this work.

- *Strange Tales* Vol. 1, No. 141, "Let There be Victory!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 142, "Those Who Would Destroy Me!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 143, "With None Beside Me!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 144, "Where Man Hath Never Trod!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 145, "To Catch a Magician!" – Steve Ditko.

- *Strange Tales* Vol. 1, No. 146, "The End – At Last!" – Steve Ditko.

Defendant reserves the right to conduct further investigation in response to this Interrogatory and further reserves the right to supplement this response.

## INTERROGATORY NO. 6:

For each request in MCI's First Set of Requests for Admission served with these Interrogatories to which Your response is not an unqualified admission, Identify: (a) the number of the request; (b) all facts upon which you base your response; (c) the names, addresses, and telephone numbers of all Persons who have knowledge of those facts; and (d) all Documents and Communications that support your response, including the names, addresses, and telephone numbers of all Persons in possession, custody, and control of those Documents.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:

Defendant incorporates Defendant's Preliminary Statement and General Objections.

Defendant further objects to this Interrogatory on the grounds that it contains multiple subparts and because this Interrogatory seeks to circumvent the numerosity limit in Rule 33. Defendant objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Defendant further objects to this Interrogatory on the grounds that it is overbroad and imposes an undue burden on Defendant that is not proportional to the needs of the case. Subject to and without waiving any of the foregoing general and specific objections, Defendant responds as follows:

RESPONSE TO REQUEST FOR ADMISSION NO. 1

Defendant denied this Request because, as explained in Defendant's Responses and Objections to Plaintiff's First Set of Requests for Admission to Patrick S. Ditko (the "RFA Responses"), it is compound, overbroad, unduly burdensome, vague, ambiguous, and does not comply with F.R.C.P. 36(a)(2). Moreover, Marvel refused to limit or clarify which Marvel entity or Works it was referring to in its Request. Accordingly, Defendant reasonably construed the Request as inquiring whether Vista Publications, Inc. ("Vista"), Atlas Magazines, Inc. ("Atlas"), or Non-Pareil Publishing Corp. ("Non-Pareil") (collectively, the "Copyright Registrants") which were the copyright registrants of the *Strange Tales*, *Amazing Fantasy*, and *Amazing Spider-Man* issues in question, respectively. Defendant denied this Request because, without limitation, there is no evidence any of the Copyright Registrants ever made any payment to any freelance writer or artist at any time, including during the 1962 to 1966 period when the Works were created and published. Potential witnesses to this include Steve Ditko and Roy Thomas, who testified that Vista, for example, was nothing more than a name in the comic book "indicia." Mr. Thomas can be contacted through Marvel's counsel, who also represents him. Moreover, the evidence in the record shows that Magazine Management Company ("Magazine Management") was the only

entity that paid any freelance writer/artist from 1962 to June 1968, prior to its sale to Perfect Chemical and Film. Don Heck's ledger evidences this, and he would also have been a potential witness to this fact. The Declarations of Gene Colan, James Steranko, Neal Adams, Joe Sinnott, Richard Ayers, Mark Evanier, and John Morrow in the *Marvel Worldwide, Inc. v. Kirby*, 1:10-cv-00141-CM-KNF case also support this Response. Defendant reserves the right to supplement this Response.

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 2</u>

 Defendant denied this Request because, as explained in Defendant's RFA Responses, it is compound, overbroad, unduly burdensome, vague, ambiguous, argumentative, assumed and/or mischaracterized purported facts, and does not comply with F.R.C.P. 36(a)(2). Defendant denied this Request because neither the Copyright Registrants nor Stan Lee had the legal right to assign, as in "allocate a duty," a task to Steve Ditko, whose independent freelancer status in 1962-1966, when the Works were created and published, is undisputed. During this time, Steve Ditko's contributions to the Works (the "Ditko Material") were created "on spec," that is, he created the Ditko Material on his own volition in the hopes of selling that material to Marvel, who had the option to buy it or not. The 1974/1975 contracts between Roy Thomas and Marvel and Gene Colan and Marvel, respectively, evidence this. Further evidence shows that Steve Ditko pitched his concept of the "Spider-Man" character to Stan Lee, who decided to purchase Ditko's version, not Jack Kirby's, who had also pitched a version of the character. Given the vast differences between Ditko's and Kirby's versions of the "Spider-Man" character, it is clear that there was little or no concept of what the character was prior to Ditko's pitch. Steve Ditko's essays on the subject evidence this. In addition, Steve Ditko independently created the "Dr. Strange" character and sold it to Marvel. Correspondences from Steve Ditko and from Stan Lee evidence this

independent creation. Moreover, there is no evidence that Steve Ditko owed any duty or was

legally obligated to the Copyright Registrants, Stan Lee, or any other Marvel entity, in any

respect, during this time or that any of them had the legal right to "assign" him any work or task.

The Declarations of Gene Colan, James Steranko, Neal Adams, Joe Sinnott, Richard Ayers,

Mark Evanier, and John Morrow in the *Marvel Worldwide, Inc. v. Kirby*, 1:10-cv-00141-CM-

KNF case also support this Response. Potential witnesses to the above include Defendant, Mark

Ditko, and Steve Ditko.

RESPONSE TO REQUEST FOR ADMISSION NO. 3

      Defendant denied this Request because, as explained in Defendant's RFA Responses, it is

compound, overbroad, unduly burdensome, vague, ambiguous, and does not comply with

F.R.C.P. 36(a)(2). Defendant denied this Request because neither the Copyright Registrants nor

Stan Lee had any legal right to require Steve Ditko to change or otherwise control his creation of

the Ditko Material. The relevant publishing entities in the 1962-1966 period purposefully

avoided entering into a binding engagement contract with Steve Ditko for his creative services

and the financial commitment that would entail and instead chose to keep their options open. The

Copyright Registrants, by all accounts, were also shell companies with no employees, no

contract or contact with Steve Ditko. As explained in the deposition of Roy Thomas, Vista, for

example, was nothing more than a name in the comic book's indicia. Steve Ditko worked on

spec and created the Ditko Material at his own expense, in his own home/studio. Neither the

Copyright Registrants, Magazine Management, or separately, Stan Lee, had any legal right to

control Steve Ditko's creation of the Ditko Material or the Ditko Material prior to its sale to

Magazine Management by the page. After Steve Ditko sold and assigned the Ditko Material to

Magazine Management, he likely had no further involvement in how it was exploited. In other

words, after the Ditko Material had been purchased by and all rights therein had been granted to Magazine Management, it could modify, edit, or make changes to the Ditko Material it desired, but the Copyright Registrants, Magazine Management, or separately, Stan Lee, had no legal right to require that any changes be made or to make any changes before the Ditko Material had been purchased. The Declarations of Gene Colan, James Steranko, Neal Adams, Joe Sinnott, Richard Ayers, Mark Evanier, and John Morrow in the *Marvel Worldwide, Inc. v. Kirby*, 1:10-cv-00141-CM-KNF case also support this Response. Neither party has produced any contract which would have given the Copyright Registrants, Magazine Management, or Stan Lee the legal right to exercise control over the Ditko Material or Steve Ditko's creative contributions to the Works prior to any purchase of the Ditko Material. Potential witnesses to the above include Steve Ditko and Mark Ditko.

RESPONSE TO REQUEST FOR ADMISSION NO. 4

Defendant denied this Request because, as explained in Defendant's RFA Responses, it is compound, overbroad, unduly burdensome, vague, ambiguous, and does not comply with F.R.C.P. 36(a)(2). Defendant denied this Request because neither the Copyright Registrants nor Stan Lee had any legal right to require Steve Ditko to change or otherwise control his creation of the Ditko Material. The Copyright Registrants, by all accounts, were shell companies with no employees and had no contract or contact with Steve Ditko. As explained in the deposition of Roy Thomas, Vista, for example, was nothing more than a name in the comic book's indicia. Steve Ditko worked on spec and created the Ditko Material at his own expense, in his own home/studio. Neither the Copyright Registrants, Magazine Management, or separately, Stan Lee, had any legal right to control Steve Ditko's creation of the Ditko Material or the Ditko Material prior to its sale to Magazine Management. After Steve Ditko sold and assigned the Ditko

Material to Magazine Management, he likely had no further involvement in how it was exploited. In other words, after the Ditko Material had been purchased by and granted to Magazine Management, it could modify, edit, or make changes to the Ditko Material as it wished, but the Copyright Registrants, Magazine Management, or separately, Stan Lee, had no legal right to require that any changes be made or to make any changes before the Ditko Material was purchased. The Declarations of Gene Colan, James Steranko, Neal Adams, Joe Sinnott, Richard Ayers, Mark Evanier, and John Morrow in the *Marvel Worldwide, Inc. v. Kirby*, 1:10-cv-00141-CM-KNF case also support this Response. Neither party has produced any contract which would have given the Copyright Registrants, Magazine Management, or Stan Lee the legal right to exercise editorial control over the Ditko Material or Ditko's creative contributions to the Works prior to any purchase of the Ditko Material. Potential witnesses to the above include Mark Ditko and Steve Ditko.

RESPONSE TO REQUEST FOR ADMISSION NO. 5

Defendant denied this Request because, as explained in Defendant's RFA Responses, it is compound, overbroad, unduly burdensome, vague, ambiguous, and does not comply with F.R.C.P. 36(a)(2).

RESPONSE TO REQUEST FOR ADMISSION NO. 6

Defendant denied this Request because, as explained in Defendant's RFA Responses, it is compound, vague, and does not comply with F.R.C.P. 36(a)(2). Defendant denied that Magazine Management paid Steve Ditko for pages of his work that it declined to purchase from him in its sole discretion. Magazine Management only bought those pages it chose to accept in its sole discretion. Documents which support this exploitative practice include the contract of Roy Thomas and Gene Colan dated September 1, 1974 and March 22, 1975, respectively. The

Declarations of Gene Colan, James Steranko, Neal Adams, Joe Sinnott, Richard Ayers, Mark Evanier, and John Morrow in the *Marvel Worldwide, Inc. v. Kirby*, 1:10-cv-00141-CM-KNF case also support this Response. Potential witnesses include Steve Ditko, Mark Ditko, Nanci Solo, Erik Colan, and Gene Colan.

RESPONSE TO REQUEST FOR ADMISSION NO. 7

Defendant denied this Request because, as explained in Defendant's RFA Responses, it is compound, seeks legal conclusions, and does not comply with F.R.C.P. 36(a)(2). Defendant admitted that Steve Ditko is the sole author of the Ditko Material and that he is the sole author of, without limitation, the "Dr. Strange" character. The Works themselves evidence this authorship as well as correspondences from Steve Ditko and from Stan Lee. Steve Ditko was a witness to his authorship. Potential additional witnesses include Defendant and Mark Ditko.

RESPONSE TO REQUEST FOR ADMISSION NO. 9

Defendant denied this Request because, as explained in Defendant's RFA Responses, it is compound, overbroad, unduly burdensome, vague, ambiguous, and does not comply with F.R.C.P. 36(a)(2). Defendant denied this Request because neither the Copyright Registrants, Magazine Management, nor Stan Lee had the right to control Steve Ditko's creative choices with respect to the Ditko Material. Steve Ditko, whose independent freelancer status in 1962-1966, when the Works were created and published, is undisputed. During this time, the Ditko Material was created "on spec," that is, he created it on his own volition in the hopes of selling that material to Marvel, who had the option to buy it or not. The 1974/1975 contracts between Roy Thomas and Marvel and Gene Colan and Marvel, respectively, evidence this. Further, Steve Ditko independently created the "Dr. Strange" character and sold it to Marvel. Correspondences from Steve Ditko and from Stan Lee evidence this independent creation. Potential witnesses to

the above include Defendant, Mark Ditko, Gene Colan, and Steve Ditko.

RESPONSE TO REQUEST FOR ADMISSION NO. 10

Defendant denied this Request because, as explained in Defendant's RFA Responses, it is compound, overbroad, unduly burdensome, vague, ambiguous, and does not comply with F.R.C.P. 36(a)(2). Defendant denied this Request because neither the Copyright Registrants, Magazine Management, nor Stan Lee had the right to control Steve Ditko's creative choices with respect to the Ditko Material. Steve Ditko, whose independent freelancer status in 1962-1966, when the Works were created and published, is undisputed. During this time, the Ditko Material was created "on spec," that is, he created it on his own volition in the hopes of selling that material to Marvel, who had the option to buy it or not. The 1974/1975 contracts between Roy Thomas and Marvel and Gene Colan and Marvel, respectively, evidence this. Further, Steve Ditko independently created the "Dr. Strange" character and sold it to Marvel. Correspondences from Steve Ditko and from Stan Lee evidence this independent creation. Potential witnesses to the above include Defendant, Mark Ditko, Gene Colan, and Steve Ditko.

RESPONSE TO REQUEST FOR ADMISSION NO. 11

Defendant denied this Request because, as explained in Defendant's RFA Responses, it is compound, overbroad, unduly burdensome, vague, ambiguous, argumentative, and assumes and/or mischaracterizes purported facts, and does not comply with F.R.C.P. 36(a)(2). Defendant denied this Request because there is no evidence that the Copyright Registrants (or any other Marvel entity) or Stan Lee controlled Steve Ditko's creative choices with respect to the Ditko Material. Steve Ditko, whose independent freelancer status in 1962-1966, when the Works were created and published, is undisputed. During this time, the Ditko Material was created "on spec," that is, he created it on his own volition in the hopes of selling that material to Marvel, who had

the option to buy it or not. The 1974/1975 contracts between Roy Thomas and Marvel and Gene

Colan and Marvel, respectively, evidence this. Further, Steve Ditko independently created the

"Dr. Strange" character and sold it to Marvel. Correspondences from Steve Ditko and from Stan

Lee evidence this independent creation. Stan Lee further admitted on several occasions that

Steve Ditko was creating "Spider-Man" and "Dr. Strange" stories completely on his own and

that Steve Ditko refused to make changes that may have been asked of him, as was his right.

Potential witnesses to the above include Steve Ditko, Mark Ditko, and Gene Colan.

RESPONSE TO REQUEST FOR ADMISSION NO. 12

Defendant denied this Request because, as explained in Defendant's RFA Responses, it is

compound, overbroad, unduly burdensome, vague, ambiguous, seeks a legal conclusion, and

does not comply with F.R.C.P. 36(a)(2). Defendant denied this Request because neither the

Copyright Registrants (or any other Marvel entity) nor Stan Lee had any legal right to require or

control Steve Ditko's creation of the Ditko Material or to change such material before purchasing

it. In addition, the Copyright Registrants, by all accounts, were shell companies with no

employees and had no contract or contact with Steve Ditko. As explained in the deposition of

Roy Thomas, Vista, for example, was nothing more than a name in the comic book's indicia.

Steve Ditko, whose freelancer status is undisputed, worked "on spec," and created the Ditko

Material at his own expense, in his own home/studio. The Copyright Registrants, Magazine

Management, or Stan Lee only had to the right to either "accept" the pages comprising the Ditko

Material and buy it, or "reject" the Ditko Material and not buy it. As for modifications, neither

the Copyright Registrants, Magazine Management, nor Stan Lee had any legal right to edit, to

require him to revise, or to otherwise control Steve Ditko's creation of the Ditko Material or to

modify it prior to purchasing it. After Steve Ditko sold and assigned the Ditko Material to

Magazine Management, Steve Ditko likely had no further involvement in how it was exploited.

Once Magazine Management purchased the Ditko Material, it, of course, could modify, edit, or

make changes to the Ditko Material as it wished. Documents which support this are the contract

of Roy Thomas and Gene Colan dated September 1, 1974 and March 22, 1975, respectively. The

Declarations of Gene Colan, James Steranko, Neal Adams, Joe Sinnott, Richard Ayers, Mark

Evanier, and John Morrow in the *Marvel Worldwide, Inc. v. Kirby*, 1:10-cv-00141-CM-KNF

case also support this Response. Potential witnesses include Steve Ditko and Gene Colan.

RESPONSE TO REQUEST FOR ADMISSION NO. 13

Defendant denied this Request because, as explained in Defendant's RFA Responses, it is

compound, overbroad, unduly burdensome, vague, ambiguous, argumentative, and assumes

and/or mischaracterizes purported facts, seeks a legal conclusion, and does not comply with

F.R.C.P. 36(a)(2). Defendant denied this Request because neither the Copyright Registrants (nor

any other Marvel entity) nor Stan Lee had any legal right to control the manner in which Steve

Ditko created the Ditko Material. The Copyright Registrants, by all accounts, were shell

companies with no employees and had no contract or contact with Steve Ditko. As explained in

the deposition of Roy Thomas, Vista, for example, was nothing more than a name in the comic

book's indicia. Steve Ditko, whose freelancer status is undisputed, worked on spec and created

the Ditko Material at his own expense, on his own time, and in his own home/studio. The

Copyright Registrants, shell companies with no employees, Magazine Management, and/or Stan

Lee had no legal right to control how Steve Ditko created the Ditko Material. The Declarations

of Gene Colan, James Steranko, Neal Adams, Joe Sinnott, Richard Ayers, Mark Evanier, and

John Morrow in the *Marvel Worldwide, Inc. v. Kirby*, 1:10-cv-00141-CM-KNF case also support

this Response. Potential witnesses include Steve Ditko and Gene Colan.

RESPONSE TO REQUEST FOR ADMISSION NO. 14

Defendant denied this Request because, as explained in Defendant's RFA Responses, it is compound, overbroad, unduly burdensome, vague, and ambiguous. Defendant denied this Request because, the Copyright Registrants, by all accounts, were shell companies with no employees and had no contract or contact with Steve Ditko. As explained in the deposition of Roy Thomas, Vista, for example, was nothing more than a name in the comic book's indicia. Steve Ditko, whose freelancer status is undisputed, worked "on spec," and created the Ditko Material at his own expense, in his own home/studio. The Copyright Registrants, Magazine Management, or Stan Lee had complete discretion whether they Material or not, and therefore, Steve Ditko bore the risk that his pages might be rejected without compensation. Documents which support this are the contract of Roy Thomas and Gene Colan dated September 1, 1974 and March 22, 1975, respectively. The Declarations of Gene Colan, James Steranko, Neal Adams, Joe Sinnott, Richard Ayers, Mark Evanier, and John Morrow in the *Marvel Worldwide, Inc. v. Kirby*, 1:10-cv-00141-CM-KNF case also support this Response. Potential witnesses include Steve Ditko and Gene Colan.

Date: February 13, 2023              By: _____ */s/ Marc Toberoff* _____
                                          Marc Toberoff
                                     TOBEROFF & ASSOCIATES, P.C.
                                     *mtoberoff@toberoffandassociates.com*
                                     23823 Malibu Road, Suite 50-363
                                     Malibu, CA 90265
                                     Tel: (310) 246-3333; Fax: (310) 246-3101

                                     *Attorneys for Patrick S. Ditko, Administrator of the
                                     Estate of Stephen J. Ditko*

## **VERIFICATION OF INTERROGATORY RESPONSES**

I, Patrick S. Ditko, as Administrator of the Estate of Stephen J. Ditko and Defendant in this matter, declare, based on a diligent and reasonable inquiry, that the foregoing answers are true and correct to the best of my personal knowledge.

I verify under penalty of perjury that the foregoing is true and correct.


DATED: _FEB. 13, 2023_                    _[signature]_

                                                              Patrick S. Ditko

## <u>PROOF OF SERVICE</u>

I, Jaymie Parkkinen, declare:

I am over the age of eighteen years and not a party to the within action. I am a resident of or employed in the county where the service described below occurred. My business address is 23823 Malibu Road, Suite 50-363, Malibu, CA 90265. On February 13, 2023, I caused the following document:

**DEFENDANT DITKO'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S THIRD SET OF INTERROGATORIES TO PATRICK S. DITKO**

to be served as follows:

[ ]     **BY ELECTRONIC MAIL** - I caused the above-described document to be served by electronic mail transmission on the interested parties noted below, where an electronic mail address is indicated.

[x]     **BY MAIL** – I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence collected from me would be processed on the same day, with postage thereon fully prepaid and placed for deposit that day with the United States Postal Service. On February 13, 2023, I put a true and correct copy of the above-referenced document in a sealed envelope, with postage fully prepaid, and placed the envelope for collection and mailing today with the United States Postal Service in accordance with the firm's ordinary business practices, addressed as follows:

Daniel M. Petrocelli                          Allen W. Burton
dpetrocelli@omm.com                     aburton@omm.com
Molly M. Lens                                  O'MELVENY & MYERS LLP
mlens@omm.com                             Times Square Tower
Danielle Feuer                                 7 Times Square
dfeuer@omm.com                            New York, NY 10036
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067

Matthew Kaiser
mkaiser@omm.com
O'MELVENY & MYERS, LLP
400 South Hope St., 18th Floor
Los Angeles, California 90071


      I declare under penalty of perjury under the laws of the United States that the above is true

and correct. Executed on February 13, 2023, at Malibu, California.


                                    */s/ Jaymie Parkkinen*
                                      Jaymie Parkkinen