**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARVEL CHARACTERS, INC.,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>LAWRENCE D. LIEBER,<br><br>Defendant and Counterclaimant. | Case No.: 1:21-cv-7955-LAK<br>and consolidated cases<br>21-cv-7957-LAK and 21-cv-7959-LAK<br><br>Hon. Lewis A. Kaplan<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF AND COUNTERCLAIM-DEFENDANT MARVEL CHARACTERS, INC.'S MOTION TO EXCLUDE THE EXPERT REPORTS AND TESTIMONY OF MARK EVANIER**<br><br>Oral Argument Requested |
| MARVEL CHARACTERS, INC.,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>KEITH A. DETTWILER, in his capacity as Executor of the Estate of Donald L. Heck,<br><br>Defendant and Counterclaimant. | |
| MARVEL CHARACTERS, INC.,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>Defendant and Counterclaimant. | |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 5

    A.    Evanier's Opinions Should Be Excluded Because They Serve As Nothing More Than A Conduit For Inadmissible Hearsay. ......................................... 5

    B.    Evanier's Opinions Should Be Excluded Because They Provide A Mere Factual Narrative. .................................................................................................... 9

    C.    Evanier's Opinions Should Be Excluded Because He Improperly Opines On The Parties' Motives And Intent. ....................................................................... 11

    D.    Evanier's Opinions Should Be Excluded Because He Improperly Weighs The Evidence And Opines On The Credibility Of Witnesses. .................................... 12

    E.    Evanier Is Not Qualified To Testify Beyond His Purported Expertise On The "Creative" Side Of The Comic Book Industry. ................................................. 14

CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bourjaily v. United States*,
483 U.S. 171 S. Ct. 2775 (1987) ............................................................................................ 5

*CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*,
815 F. Supp. 2d 673 (S.D.N.Y. 2011) .................................................................................... 6

*DiBella v. Hopkins*,
403 F.3d 102 (2d Cir. 2005) ............................................................................................. 5, 10

*Highland Cap. Mgmt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008) ......................................................................... 9, 11, 14

*In re M/V MSC FLAMINIA*,
2017 WL 3208598 (S.D.N.Y. July 28, 2017) ...................................................................... 10

*In re Marvel Entertainment Group, Inc.*,
No. 97-638-RMM (D. Del.) ................................................................................................ 2, 8

*In re Rezulin Prod. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................................................... 9, 11

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
2021 WL 4810266 (S.D.N.Y. Sept. 30, 2021) ...................................................................... 9

*Kewazinga Corp. v. Microsoft Corp.*,
2021 WL 4066597 (S.D.N.Y. Sept. 1, 2021) ...................................................................... 11

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008) .................................................................................................. 5

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013) .......................................................................................... passim

*Marvel Worldwide, Inc. v. Kirby*,
777 F. Supp. 2d 720 (S.D.N.Y. 2011) ........................................................................... passim

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005) ................................................................................................ 13

*S.E.C. v. Tourre*,
950 F. Supp. 2d 666 (S.D.N.Y. 2013) .................................................................................. 10

*Siegel v. Warner Bros. Ent. Inc.*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ................................................................................. 8

*United States v. Amuso*,
21 F.3d 1251 (2d Cir. 1994) ................................................................................................ 10

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) ............................................................................. 5

*United States v. Dukagjini*,
   326 F.3d 45 (2d Cir. 2003) .................................................................................. 6

**Rules**

Fed. R. Evid. 702 ................................................................................................ 13

## PRELIMINARY STATEMENT

Having adduced no admissible evidence with which to oppose Marvel Characters, Inc.'s ("MCI") motion for summary judgment, Defendant proffers the purported expert opinions of Mark Evanier ("Evanier") hoping to inject inadmissible and irrelevant hearsay, as well as impermissible opinions, into the record to create material issues of fact where none exist.  This Court should reject the offer.  The Federal Rules of Evidence preclude Defendant from using Evanier: (1) to manufacture a factual narrative unsupported by the testimony of percipient witnesses or documents; or (2) to usurp the role of the factfinder by opining on the motives, intent, and credibility of witnesses with first-hand knowledge.

Defendant's proffer also ignores that this District and the Second Circuit rejected Evanier's claimed expert opinions—nearly identical in substance, structure, and even syntax to those here—in a case holding that the contributions of Marvel comic book artist Jack Kirby, made under virtually indistinguishable circumstances from those here, were works made for hire done at Marvel's instance and expense.  *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 729 (S.D.N.Y. 2011), *aff'd in relevant part sub nom. Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013).

In *Kirby*, the district court found that Evanier's "purported 'expert' report[]" (1) was a "mere[] factual narrative[]" that served as a thinly-veiled "conduit for introducing hearsay"; (2) addressed only "lay matters" that a factfinder would be readily "capable of understanding and deciding without the expert's help"; (3) drew improper inferences, ungrounded in expertise, "about the intent or motive of parties"; (4) speculated "without factual basis" about matters on which he "ha[d] no firsthand knowledge"; and (5) "improperly usurped the role of the jury" by "purporting to opine on the credibility" of testimony.  *Id.* at 729-30.  Because "any one" of these

"multiple reasons" was "sufficient" to render the report invalid, the court excluded it *in toto. Id.* at 730.  The Second Circuit agreed.  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135-36 (2d Cir. 2013).  And the *Kirby* decisions were themselves a replay of a late-1990s litigation concerning the work-made-for-hire contributions to Marvel by writer Marv Wolfman, in which Evanier's opinions were likewise proffered and squarely rejected by the presiding court.  *See In re Marvel Entertainment Group, Inc.*, No. 97-638-RMM (D. Del.).

Nothing has changed.  This is the third time Evanier has volunteered his ostensible expert opinions in a work-made-for-hire action against MCI and its predecessors and affiliates (collectively, "Marvel").  His testimony was stricken the first two times and should fare no better in this case, as it suffers the same litany of flaws.  Evanier may call himself an "advocate for truth" whose "aim is to set the record straight," but his opinions here—which stretch well beyond his purported expertise on the "creative" side of the business and into copyright law, corporate structure, and commercial transactions—are the same axe he has impermissibly been grinding for over two decades.  MCI's motion to exclude should be granted.

## EVANIER'S PROFFERED OPINIONS

Defendant asked Evanier "to help place the subject matter of the current action[] in [its] true historical context" by submitting a report on "the history of comic book publishing, the customs and practices in the comic book industry," and "the evolution of those customs and practices at Marvel."  Evanier's Opening Report ("Evanier Rep.") at 1.[1]  His opening report purports to trace the historical background of the comic book industry and Marvel beginning in the 1930s, the creation of the comics at issue in this case, and Marvel's purported reasons for

---

[1] Evanier's Opening and Rebuttal Reports are attached as Exhibits 1 and 2, respectively, to the Declaration of Molly M. Lens ("Lens Decl.").

returning original artwork to contributors in the 1970s.  Evanier Rep. at 7-25.  His rebuttal report further proffers unsupported opinions on Marvel's corporate structure and alleged historical practices, including speculating about Marvel's relationship with its contributors.  *See* Evanier's Rebuttal Report ("Evanier Rebuttal Rep.") at 2-16.

While Defendant offers Evanier's opinions under the auspices of "custom and practice" testimony, simply affixing that label does not make it so.  That "custom and practice" pretext—which Defendant employs because it would be the only arguable basis for admitting Evanier's opinions—is particularly unconvincing given that Evanier intermittently denies there even was a uniform custom and practice in the industry for dealing with talent, *see* Ex. 3 to Lens Decl., Deposition of Mark Evanier ("Evanier Dep. Tr.") at 92:22-93:5, and at other times tries to paint Marvel as an outlier from industry custom, such that any testimony on industry norms would have no bearing on Marvel's practices.  Unsurprisingly, Evanier's opinions largely focus on events at Marvel, rather than the customs and practices of the industry more generally.  But Evanier did not work at Marvel when the events at question occurred, and his opinions are based entirely on after-the-fact interviews and conversations with comic book creators, just like his opinions in *Kirby*.  *See* Evanier Rep. at 4; *see also Kirby*, 777 F. Supp. 2d at 729-30.

At his deposition, Evanier stated that he views himself as "an advocate for truth" who wants to "set the record straight"—a far cry from the ordinary province of an expert witness. Evanier Dep. Tr. at 50:1-7, 64:18-65:3.  He also freely admitted that he believes he is "helping repay a debt" to the comic book writers and artists he once knew (and from whose careers Evanier has benefited) by proffering his purported expert testimony.  *Id.* at 67:3-8; *see also id.* at 64:18-65.  In Evanier's own words, "[s]ometimes you do things in this world just because . . . you like somebody and you want to speak on their behalf."  *Id.* at 67:5-7.

3

Consistent with the outsized and far from objective role he has claimed for himself, and despite his lack of any first-hand knowledge, Evanier's reports not only recapitulate post hoc conversations and interviews with third parties, but also proffer his own personal commentary on the accuracy of witnesses with actual first-hand knowledge. These percipient witnesses include former Marvel contributor Larry Lieber, former Marvel editor Roy Thomas, and individuals in management positions at comic book publishers, who—in Evanier's personal opinion— purportedly advance "lies and misrepresentations" regarding works made for hire. *See id.* at 28:15-30:9, 107:14-17, 125:9-19.

Equally disqualifying, Evanier's reports reflect his personal opinions on the motivations, intent, and state of mind of Marvel and others. Through his biased lens, Evanier opines that Marvel altered the standard form of its credits "to placate some artists' complaints," Evanier Rep. at 12, and that Marvel publisher Martin Goodman was so "outraged" by another publisher's use of the moniker Captain Marvel that "he ordered the creation of a Marvel character by that name," Evanier Rep. at 22-23. And Evanier repeatedly opines on actions Marvel purportedly took on "purpose"—from "purposefully [keeping] it options open" to "purposefully avoid[ing] engagement agreements and the financial commitments contracts entailed." Evanier Rebuttal Rep. at 8, 11.

Having admitted he believes Ditko was "wronged" by Marvel, Evanier Dep. Tr. at 47:2-49:6, Evanier even impermissibly opines on the ultimate legal issue in the case, asserting that Marvel engaged in "revisionism" by attempting to "transmorph" work "which by its very nature had obviously been created" "on spec" into works made for hire. *See* Evanier Rep. at 17-18. But as Evanier admits, he is no lawyer, and does not even know the legal standard for work made

for hire.  Evanier Dep. Tr. at 16:3-6, 19:12-6, 117:5-8, 129:1-2.  Nor, if he did, would such testimony be proper.  *See United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991).

Evanier adheres to the same flawed template he followed in *Kirby*, where he similarly "purport[ed] to trace the background of the comic book industry, Marvel's origin, and Marvel's relationship with" creative contributors.  777 F. Supp. 2d at 729.  Entire passages of his opening report are lifted, barely changed, from the report rejected in *Kirby*.[2]  Put simply, based on no direct personal knowledge, Evanier once again proffers an "expert" opinion that boils down to little more than his disagreement with the facts.

## ARGUMENT

"[T]he district court functions as the gatekeeper for expert testimony, whether proffered at trial or in connection with a motion for summary judgment."  *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (citation omitted).  The court has broad discretion to exclude expert testimony, *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005), and it is the burden of the party *offering* the expert testimony to establish its admissibility by a preponderance of the evidence, *see Bourjaily v. United States*, 483 U.S. 171, 175, 107 S. Ct. 2775, 2778 (1987).  Like other objectionable evidence, "[a]n expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate material for consideration on a motion for summary judgment."  *Major League Baseball*, 542 F.3d at 311.

### A.    Evanier's Opinions Should Be Excluded Because They Serve As Nothing More Than A Conduit For Inadmissible Hearsay.

Lacking any admissible evidence to defeat Marvel's motion for summary judgment, Defendant improperly seeks to use Evanier's supposed expert testimony as a means to introduce

---

[2] Evanier's Opening Report from *Kirby* is attached as Exhibit 4 to the Lens Declaration.

hearsay evidence into the record—and to use that hearsay to manufacture factual disputes where there are none.  The law, however, is clear:  Expert testimony cannot substitute for an absence of fact evidence.

Under Rule 703, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Kirby*, 726 F.3d at 136; *see also CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 678 (S.D.N.Y. 2011) ("While an expert may rely on hearsay in forming his opinion, he may not 'simply transmit that hearsay to the jury' to prove the truth of the matter asserted.").[3]  Rather, "[t]he appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events"—not through an expert's second-hand account.  *Kirby*, 726 F.3d at 136.

Evanier's opinions, however, are based on—and largely regurgitate—post hoc accounts from hearsay declarants.  Indeed, he admits that he wants to put what he "heard" and what he "was told" into "the public record" and to "speak for people who are not here to speak for themselves."  Evanier Dep. Tr. at 64:18-65:3; *see also id.* at 49:13-19 ("I have been fortunate enough to meet most of these people, to talk with them, to have access, sometimes, to information that – that satisfied – satiated a curiosity I had about it, and I feel that I have a duty to share the record and set things straight sometimes when people get it wrong.").  He similarly admits that his "expertise" is primarily gleaned from interviews and other after-the-fact conversations with contributors in the comic book industry.  *See, e.g.*, Evanier Rep. at 4

---

[3] Where appropriate, an expert may *rely* on hearsay in rendering his opinion—but of course, that is distinct from serving as a vessel for it.  And even then, experts may rely on hearsay only "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."  *United States v. Dukagjini*, 326 F.3d 45, 51 (2d Cir. 2003).  Defendant cannot make this showing either.

(explaining that Evanier's knowledge is gleaned primarily from "conducting hundreds of interviews of the creators of comic books published in the 1960s and 1970s," as well as from his "relationships with freelance artists and writers and Marvel staffers"); Evanier Dep. Tr. at 9:13-10:12.

Evanier repeatedly seeks to introduce into the record that inadmissible hearsay. *See, e.g.*, Evanier Rebuttal Rep. at 8 ("Joe [Orlando] told me and others that he had to draw more than 30 pages in order to get paid for the 22 pages that Marvel published in each *Daredevil* issue."); Evanier Dep. Tr. at 57:1-59:3 (Evanier "believe[s] there were verbal promises made" to some contributors that were broken based on his conversations with contributors), 156:20-157:17 (Jack Kirby and Steve Ditko told Evanier that the Marvel Method was used to reduce costs, which "was kind of an assumption"). While he does so under the guise of his supposed expert opinion, Evanier does not add even a modicum of expertise to the narrative he constructs from these second-hand "facts." Nor does he have any personal knowledge of these purported facts—they are pure hearsay.

The *Kirby* Court excluded Evanier's proffered opinions for this very reason, concluding that they were "by and large undergirded by hearsay statements, made by freelance artists in both formal and informal settings, concerning Marvel's general practices towards its artists during the relevant time period." 726 F.3d at 136. In *Kirby*, Evanier drew on hearsay to reconstruct an impermissible "factual narrative" based on his review of "secondary sources and interviews that attempt to reconstruct events" about which Evanier had no personal knowledge. 777 F. Supp. 2d at 729. He is doing the same thing here.

The *Kirby* Court was not the only court to reject Evanier's impermissible hearsay testimony about Marvel's practices. On a closely analogous and unsuccessful work-made-for-

hire claim by Marv Wolfman against Marvel, the court excluded Evanier's testimony that sought to introduce hearsay based on his prior conversations with contributors to Marvel.  *See* Transcripts of November 16, 1999 Proceedings in *In re Marvel Entertainment Group, Inc.*, No. 97-638-RMM (D. Del.), attached as Lens Decl., Ex. 5, at B-211:5-15, B-213:1-214:2, B-240:12-19; *see also, e.g.*, *Siegel v. Warner Bros. Ent. Inc*., 542 F. Supp. 2d 1098, 1122-23 (C.D. Cal. 2008) (rejecting Evanier's proffered expert opinion as unhelpful).

The *Wolfman* Court explained that Evanier, as a purported expert witness, was not "in a position to testify about what third parties told him for the purposes of [the Court] taking it as being the truth."  Ex. 5 at B-211:5-15.  And that:

- The Court could not "rely on [Evanier] for the purpose of finding as a matter of fact that the events he testified to in fact happened, in part because the other side has no real ability to cross-examine the principal actors," *id.* at B-213:1-214:2;

- The Court could not "cite [Evanier's] testimony for the purpose of making [a] finding" of fact, *id.* at B-240:12-19; and

- It was "not consistent with the Rules of Evidence" for the Court to "rely on what [Evanier] is saying . . . happened in particular instances for the purpose of determining that it in fact did happen," *id*.

Evanier and his proponents cannot try the same ploy over and over again and expect a different result.  Because Evanier's opinions improperly attempt to introduce inadmissible hearsay into the record—just as he tried to do in *Kirby* and in *Wolfman*—his opinions should be excluded.

8

**B.      Evanier's Opinions Should Be Excluded Because They Provide A Mere Factual Narrative.**

Evanier's opinions should also be excluded for the independent reason that they fail to assist the factfinder, and instead simply attempt to present a narrative of Defendant's case. Experts may not be used to piece together a "narrative of the case which a [layperson] is equally capable of constructing." *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (Kaplan, J.) (excluding expert testimony that offered a "historical commentary of what happened"). An expert witness may not "act as a vehicle to present a factual narrative of interesting or useful documents for a case, in effect simply accumulating and putting together one party's 'story.'" *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2021 WL 4810266, at *16 (S.D.N.Y. Sept. 30, 2021). "Such material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence"—not expert witnesses. *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 551; *see also Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008) ("an expert's factual narrative is unnecessary").

Evanier's reports do not even try to conceal their bare factual narratives. For example, consistent with his assignment to provide a "history of comic book publishing" and an overview of the "evolution" of business and creative practices at Marvel, his opening report begins by recounting the "Historical Background of the Comic Book Business and Marvel," and then proceeds to reconstruct the "Creation of Certain Comics by the Creators," including the works allegedly created by Steve Ditko. Evanier Rep. at 1, 7-18, 20-21. Based on second-hand accounts and intermittent documents, he narrates events that took place long before he first visited Marvel's offices in 1970, Evanier Dep. Tr. at 121:4-9, and recreates an ostensible historical account as told to him piecemeal by others. *See, e.g.*, Evanier Rep. at 23-24 (narrating

9

the reasons why Marvel allegedly began returning original artwork to contributors); Evanier

Rebuttal Rep. at 4-5 (narrating Marvel's alleged copyright registration practices and alleged use

of "shell corporations"); *id.* at 8-9 (narrating Marvel's alleged practices as to rejected pages).

The effect is to "supplant the role of the fact-finder by reciting factual narratives"—which is an

improper use for expert testimony. *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *4

(S.D.N.Y. July 28, 2017); *see also S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013)

(finding it "inappropriate for experts to become a vehicle for factual narrative" and adding that

"[m]ere narration . . . fails to fulfill *Daubert*'s most basic requirements").

Evanier's opinions thus fail to satisfy the most foundational prerequisite to expert

testimony: that it "must be helpful to the jury in comprehending and deciding issues beyond the

understanding of a layperson." *DiBella*, 403 F.3d at 121. Indeed, "[a] district court may commit

manifest error by admitting expert testimony where . . . the subject matter of the expert's

testimony is not beyond the ken of the average juror." *United States v. Amuso*, 21 F.3d 1251,

1263 (2d Cir. 1994). A bare factual narrative, like the one Evanier proffers here, does not

concern matters that a reasonable factfinder could not understand on his or her own. As such, it

is not admissible.

Not surprisingly, then, the *Kirby* Court found Evanier's recitation of a factual narrative to

be another strike against his parallel testimony there. 777 F. Supp. 2d at 728-30 (Evanier's

reports are "mere[] factual narratives based on [his] review of secondary sources and interviews

that attempt[ed] to reconstruct events about which" he had no "first-hand knowledge."); *see also

id*. at 729 ("Nothing . . . Evanier . . . says concerns technical or scientific matters that lay jurors

need help to understand. [His] proffered testimony therefore is inadmissible[.]"). The same

holds here.

**C.    Evanier's Opinions Should Be Excluded Because He Improperly Opines On The Parties' Motives And Intent.**

Evanier also improperly opines on the parties' motives and intent throughout his reports and testimony, which is yet another independent reason to exclude his opinions.  The case law is clear:  "Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."  *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 547; *see also Highland Cap. Mgmt.*, 551 F. Supp. 2d at 182-83 (an expert's "belief about a party's state of mind is an improper subject for expert testimony and cannot be saved by couching his opinion as 'industry custom and practice'"); *Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 4066597, at *15 (S.D.N.Y. Sept. 1, 2021) ("Because science has not yet invented a way to read minds, 'inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.'").

Factfinders "must answer questions of intent with the lay tools that they always have: examination of testimony and documents, and assessment of credibility."  *Kewazinga*, 2021 WL 4066597, at *15.  Nevertheless, Evanier persistently invades the factfinder's province by opining on the parties' intent, motive, and state of mind.  For example, he asserts that Stan Lee "was known to put his name on most everything Marvel published . . . *and did so to enhance his own reputation and receive all, or a portion of, the writer's share of the page-rate.*"  Evanier Rebuttal Rep. at 15 (emphasis added).  As another example, he contends that Marvel changed how it doled out credits in the mid-1960s in an effort "*to placate some artists' complaints.*"  Evanier Rep. at 12 (emphasis added).  Similarly, he claims that "Marvel *purposefully* avoided engagement agreements and the financial commitments contracts entailed," in addition to many similar contentions.  Evanier Rebuttal Rep. at 11 (emphasis added).  To be clear, Evanier's opinions on the parties' motives, intent, and state of mind are not limited to these examples—his

reports are riddled with them.  *See, e.g.*, Evanier Rep. at 7, 10, 11, 12, 17, 18, 22-24; Evanier Rebuttal Rep. at 8, 11, 13, 15.

Again, the *Kirby* Court excluded Evanier's report for crossing this same line, holding that Evanier's "opinions" "about the intent or motivations of Marvel and individuals who worked at Marvel" reached "outside the bounds of expert testimony."  *Kirby*, 777 F. Supp. 2d at 729-30; *see also Kirby*, 726 F.3d at 136 (Evanier improperly "speculate[d] as to the motivations and the intentions of certain parties").

In fact, Evanier proffers many of the same impermissible claims about motive that he proffered in *Kirby*.  *E.g.*, *compare Kirby*, 777 F. Supp. 2d at 729-30 ("Evanier also opined that 'it is extremely doubtful that either Marvel or freelance artists, such as Jack Kirby, . . . had any understanding or intent that their freelance material . . . was somehow work made for hire."), *with* Evanier Rep. at 18 ("it is extremely doubtful that either Marvel, Stan Lee, or pure freelancers such as Steve Ditko . . . had any cause to believe their freelance material . . . was 'work made for hire.'"); *compare* Evanier *Kirby* Rep. at 10 ("Some artists working this way felt that they were co-writing the comics without pay or credit, and sometimes doing more than cowriting."), *with* Evanier Rep. at 12 ("Some artists working this way felt that they were co-writing the comics without pay or credit, and sometimes doing even more than merely 'co-writing.'").  Evanier's speculation about intent or motive is no more admissible here than it was in *Kirby*.

### D.    Evanier's Opinions Should Be Excluded Because He Improperly Weighs The Evidence And Opines On The Credibility Of Witnesses.

Evanier's opinions also warrant exclusion because they usurp the role of the factfinder by weighing the evidence and opining on witnesses' credibility.  The Second Circuit "has consistently held that expert opinions that constitute evaluations of witness credibility, even

when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702." *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005). This is because expert testimony on the credibility of witnesses "does not 'assist the trier of fact,' Fed. R. Evid. 702, but rather 'undertakes to tell the jury what result to reach,' and 'attempts to substitute the expert's judgment for the jury's.'" *Id.*; *see also Kirby*, 726 F.3d at 136 ("[T]he jobs of judging these witnesses' credibility and drawing inferences from their testimony belong to the factfinder.").

But Evanier's opinions are nothing more than impermissible credibility determinations cast as expert opinions. Indeed, Evanier expressly aims to "place the subject matter of the actions in their true historical context." Evanier Rep. at 1. This is consistent with his repeated emphasis on his desire to "set the record straight" and advocate for his version of contested history. *See* Evanier Dep. Tr. at 50:1-17, 49:17-19, 67:20-68:10.

Evanier's reports only confirm that he is trying to serve as a juror, but from the expert witness's chair. His attempt to reconstruct the relevant events based on after-the-fact interviews and conversations—as in *Kirby*—necessarily requires Evanier to weigh the evidence in the case. Some of his opinions even do so expressly, reaching a conclusion based on nothing more than Evanier's personal estimation. *See, e.g.*, Evanier Rep. at 20 (explaining that "legend has it" that Spider-Man was inserted in the final issue of *Amazing Fantasy* "as a kind of experiment"—but opining that "a more likely scenario," according to Evanier, is that Goodman made the decision to cancel *Amazing Fantasy* later).

Still, Evanier does not stop there. He also improperly opines on the credibility of specific witnesses. For example, at his deposition, Evanier testified that he has "never read an interview with [former Marvel editor] Roy Thomas"—a witness in this case testifying on behalf of Marvel—that he "didn't disagree with something in." Evanier Dep. Tr. at 107:14-17. Even

further, Evanier testified that he believes he has been "lied to" or "misled" by "people who were in positions of responsibility" at comic book publishers. *Id.* at 17:10-19:18, 29:5-30:9. By contrast, Evanier could not think of an instance in which he believes that he has been lied to by a creator who was not in a management position at a comic book publisher. *Id.* at 29:16-23.

Evanier's opinions usurp the role of the factfinder by opining on witnesses' credibility and weighing evidence—which was yet another reason Evanier was excluded in *Kirby*. *Kirby*, 777 F. Supp. 2d at 730 ("Finally, by purporting to opine on the credibility of [Stan Lee's] testimony, Evanier has improperly usurped the role of the jury."). Evanier's opinions should be excluded here for this reason as well.

### E. Evanier Is Not Qualified To Testify Beyond His Purported Expertise On The "Creative" Side Of The Comic Book Industry.

Evanier's opinions are also inadmissible to the extent they reach beyond his purported expertise. Evanier is a self-described "comic book historian," Evanier Rep. at 2, whose experience centers on the "creative" rather than the "business" side of the industry, Evanier Dep. Tr. at 91:5-9. Yet many of Evanier's opinions are unmoored from his background and cross into legal opinion, corporate structure, and commercial transactions. Evanier cannot admissibly opine on any of those topics.

Most troublingly, Evanier's reports offer legal opinions, including the ultimate issue of whether the works in this case are works made for hire. "Even if his testimony is couched in terms of industry practices, the expert still may not, under any circumstances, opine on the ultimate legal issue in the case." *Highland Cap. Mgmt.*, 551 F. Supp. 2d at 181. Evanier's proffered reports contravene that rule. For example, he opines that Marvel engaged in "revisionism" and "strained to retroactively fit within the new Copyright Act's explicit work-for-

hire provisions" by "having freelancers sign 'work-for-hire' releases."[4]  Evanier Rep. at 17.

According to Evanier, Marvel attempted to "transmorph" work "which by its very nature had

obviously been created" "on spec" into works made for hire.  *Id.* at 18.

      Evanier's opinion essentially reduces to his contention that the works at issue were not

works made for hire.  Not only is this an inadmissible opinion on the ultimate issue, but it is

particularly unfounded, given that Evanier admits that he is unfamiliar with the work-made-for-

hire standard and the instance-and-expense test.  *See, e.g.*, Evanier Dep. Tr. at 16:3-6 ("My

opinion is that I have heard so many different definitions of works for hire over the years that I

don't know which one to follow."), 19:12-16 ("I've seen the definitions shift so much at the

convenience of whoever was trying to claim ownership of something that I don't know what

standard to apply to these cases . . . .").

      Nor is Evanier—whose experience was in the creative rather than business side of the

comic book industry—qualified to opine on topics related to corporate structure or commercial

transactions.  Nevertheless, he proffers opinions that Marvel allegedly used "shell corporations"

and likens Marvel's payment of contributors to "ordinary commercial transaction[s]."  Evanier

Rebuttal Rep. at 4-6, 11.  Yet none of his experiences or credentials even relates to that category

of opinion.  Evanier's opinions thus stretch far beyond any arguable realm of expertise that even

he claims to have.

---

[4] Evanier similarly attempts to opine about the legal significance of language that Marvel allegedly included on the back of checks, an area well outside his purported expertise.  Evanier Rep. at 16-17 ("Notably, the language on the back of even these 1974/1975 Marvel freelance checks is still language of purchase and assignment."); Evanier Rebuttal Rep. at 16 ("Even as late as 1974 and 1975, Marvel's checks still contained this pure assignment language.").

**<u>CONCLUSION</u>**

For all these reasons, MCI respectfully requests that the Court exclude the expert reports and testimony of Mark Evanier in their entirety.

Dated:  May 19, 2023

**O'MELVENY & MYERS LLP**

By:        */s/ Daniel M. Petrocelli*
           Daniel M. Petrocelli

Daniel M. Petrocelli*
dpetrocelli@omm.com
Molly M. Lens
mlens@omm.com
Matthew Kaiser*
mkaiser@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

Allen Burton
aburton@omm.com
Danielle Feuer
dfeuer@omm.com
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

* Admitted *pro hac vice*

*Attorneys for Marvel Characters, Inc.*